IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| In re: | MDL Docket No. 4:03CV1507 WRW |
| PREMPRO PRODUCTS LIABILITY LITIGATION | ALL CASES |

**WYETH'S RESPONSE RE
PROPOSED NEW LEAD COUNSEL AND
NEW MEMBERS OF PLAINTIFFS' STEERING COMMITTEE**

**Introduction**

Lead Counsel have once again invited the Court to take an unwise, unprecedented and (in this instance) premature step. By letter dated December 4, 2003, they have proposed that the Court appoint Ms. Zoe Littlepage as a third Lead Counsel, and that it add Ms. Kathleen Dailey and Messrs. James Morris, Richard Lewis, Robert Jenner, and Ken Suggs as members of the Plaintiffs' Steering Committee. To our knowledge, Ms. Dailey, Mr. Lewis, Mr. Jenner, and Mr. Suggs are not counsel of record in *any* hormone therapy case. And although Ms. Littlepage and Mr. Morris are counsel in cases subject to Conditional Transfer Orders, they have opposed the transfer of such cases to this Court and insisted, moreover, that the cases should be remanded to state court. In sum, Lead Counsel have nominated to the leadership of this litigation one group of lawyers who have no clients or cases and another group who have both clients and cases, but who have taken the position that they want no part of this MDL proceeding.

**Argument**

Wyeth submits that three principles should guide leadership appointments (whether on plaintiffs' or defendants' side): (1) that the nominee-lawyer should be counsel of record in pending MDL cases; (2) that the nominee-lawyer should intend to prosecute his/her

cases in the MDL proceeding; and (3) that the nominee-lawyer should be willing to coordinate the state court cases in which s/he may be involved with the MDL proceedings so as to reduce duplication and further efficiency and economy. The nominees put forward by Lead Counsel do not satisfy these principles. At best, the nominations of Ms. Littlepage and Mr. Morris are premature and should be considered only after the Court has decided their motions to remand (in the case of Ms. Littlepage, should her two cases eventually be transferred to this proceeding).

The Court should defer consideration of these nominees for the following reasons:

1. **Prematurity and the Question of Remand.** Of the 151 personal injury cases subject to Conditional Transfer Orders, 95 have been brought by just two law firms acting together as co-counsel, Johnson, Ferguson, Pipken & Phillips and Shrader & Williamson.[1] In the past week, those firms have advised Wyeth that they no longer wish to pursue these cases, that they will withdraw, and that Mr. Morris will enter an appearance in their place. To date, the position taken by plaintiffs in those cases has been that they do not belong in this proceeding. They have moved to vacate Conditional Transfer Orders Nos. 5, 6, 7, and 8 on the ground that many of the cases involve Premarin, not Prempro; they have argued that, whether or not the cases are transferred here, they should be remanded straightaway to state court because diversity of citizenship is lacking; and they have complained that the Court has not already remanded cases transferred to it.[2] Perhaps the nomination of Mr. Morris to the Plaintiffs' Steering

---

[1] Counsel has moved to dismiss two of these cases. *Watkins v. Wyeth*, No. 4:03-cv-00832 (E.D. Ark.), and *Reeves v. Wyeth*, No. 4:03-cv-00932 (E.D. Ark.).

[2] Plaintiffs advised the Panel that "the MDL court has yet to rule on any motion to remand. With additional lawsuits in the pike, involving different drugs, manufacturers and local defendants, it is unlikely that court would be able to rule on many motions to remand for years." Brief in Support of Plaintiffs' Motion to Vacate the Conditional Transfer Order (CTO-6), p. 11. Plaintiffs never complied with paragraph 5.1 of Practice and Procedure Order No. 1, which provides that the "parties must advise the Court of any pending

Committee means that he intends to change course, either withdrawing the pending motions to vacate Conditional Transfer Order Nos. 5, 6, 7, and 8 or else, if the motions are denied, withdrawing the pending motions to remand – i.e., in either case, committing to prosecute his cases in this MDL proceeding. If that is the case, then there may be no cause to question his participation on the Plaintiffs' Steering Committee.[3]

On the other hand, if Mr. Morris intends to argue that his 93 cases subject to Conditional Transfer Order Nos. 5, 6, 7, and 8 should be remanded to state court, then it is premature to consider his nomination to the Plaintiffs' Steering Committee. The first order of business should be to resolve the motions to remand.[4] If the Court denies the motions to remand, and Mr. Morris has scores of MDL cases, then he may well be an appropriate candidate for the Plaintiffs' Steering Committee. But if the Court grants the motions to remand, and Mr. Morris has no stake in this proceeding, then he will not be an appropriate candidate for the reasons stated in Wyeth's Memorandum in Support of Motion for Reconsideration of Orders Dated November 12 & 14, 2003.

The same problem of prematurity attaches to the nomination of Ms. Littlepage as additional Lead Counsel. She has no cases that have been transferred to MDL-1507. Three cases in which she is counsel of record are subject to Conditional Transfer Orders. She has filed motions to vacate those Orders as to two cases, however, and also motions to remand the two

---

Continued . . .
   motions, filed in the transferor court, that require decision. Absent such notice, the Court will not consider motions pending at the time of transfer."

[3] *But see* ¶ 3, *infra*, concerning the willingness to coordinate state cases with the MDL proceeding.

[4] Although the number of motions is large, they present almost identical issues, and the briefing is almost verbatim from case to case. Decision of the first two or three motions will effectively decide the remaining motions.

cases to state court.[5] Here, too, the rule of decision should be "first things first." If the Judicial Panel on Multidistrict Litigation denies her motion to vacate and transfers her case here, then this Court should address her motion to remand. Only if the Court denies that motion, and Ms. Littlepage is forced to be counsel of record in an MDL case, will her nomination as Lead Counsel be ripe.

Mr. Morris and Ms. Littlepage at least have cases in the MDL pipeline. Ms. Dailey, Mr. Lewis, Mr. Jenner and Mr. Suggs cannot even say that. We recognize how easy it would be for current counsel to associate these nominees as co-counsel in an MDL case. The point, however, is whether the leadership of the Plaintiffs' Steering Committee should be made up of bystanders rather than players. Players have clients and must be responsive to clients' interests.

2. **The Rationale for New Members**. That consideration of these nominees is premature does not mean that either the interests of personal injury plaintiffs are being ignored or that "merits" discovery is not going forward. Such is the implication of Lead Counsel's letter, but that premise for adding members to the Plaintiffs' Steering Committee is suspect. Lead Counsel say that "there are now a significant number of personal injury cases that have been removed from state court and are currently being transferred to your Court,"[6] as if this were a new development. But of the six cases initially transferred by the Judicial Panel on Multidistrict Litigation in March 2003, three contained personal injury claims. When on May 29, 2003, Lead Counsel submitted the names for the Plaintiffs' Steering Committee, 16 of the 22 pending MDL cases contained personal injury claims. In early October, when the Court was considering the

---

[5] The transferor court in one of the cases, *Fitzpatrick v. Wyeth, Inc.*, deemed the motion to remand withdrawn. It remains to be seen whether plaintiff will seek to renew it.

[6] Letter to Hon. William R. Wilson from Jan P. Helder, Jr., December 4, 2003.

composition of the Plaintiffs' Steering Committee, 39 of the 49 pending MDL cases contained personal injury claims. And of the 27 cases that were then subject to Conditional Transfer Orders (but whose transfer had been delayed due to objections), *all* contained such claims. Personal injury cases, then, have always accounted for a significant part of this proceeding's actual and anticipated caseload. Presumably that is why three members of the Plaintiffs' Steering Committee, as presently constituted, are lawyers who have brought personal injury cases. And Mr. Mills, one of the Lead Counsel, is counsel of record in an MDL case that seeks as relief a fund to pay "medical treatment costs, loss of earnings *and other damages* that may be incurred by the class members in the future with respect to actual injuries that manifest as a result of the use of the Product."[7]

One must also question Lead Counsel's statement that they were led to proposing new members of the Steering Committee in order to "give[] these [personal injury] cases the attention they deserve."[8] As they note, their job is to "facilitat[e] pre-trial and discovery proceedings."[9] That job is the same whether the cause of action is for personal injury, medical monitoring or restitution, and whether the rubric is a class action or an individual claim, because all plaintiffs are seeking to prove that Wyeth exposed them to a product that was defectively designed or warned about. For that reason, as they develop their purported case for liability, Lead Counsel and the current Plaintiffs' Steering Committee are necessarily giving the personal injury cases "the attention they deserve." If they are not, the situation will not be improved by

---

[7] Class Action Complaint and Request for Jury Trial, *Favela v. Wyeth, Inc.*, No. 4:03-cv-00206 (E.D. Ark.) (emphasis added).

[8] *Id.*

[9] *Id.*

entrusting the task to counsel who, even as of the date of their nomination, have no cases or who are actively seeking to extricate their cases from this MDL proceeding.

3. **The Commitment to Coordination.** The purpose of multidistrict consolidation is to further efficiency and economy, both for the benefit of the parties and the courts. The leadership of the plaintiffs' and defendants' steering committees should be committed to that goal. The Manual for Complex Litigation (Third) recognizes that where there is related litigation pending in federal and state courts, the judge should consider the feasibility of coordination among counsel. *See* § 20.225 at 31. It may be possible, the Manual notes, to create common committees of counsel for the federal and state cases, or to enter joint or parallel orders. Or, the Manual says, "the judge may direct counsel to coordinate with the attorneys involved in the other cases to reduce duplication and potential conflicts and to further efficiency and economy through coordination and sharing of resources." *Id.* That is, the MDL court may direct MDL counsel to coordinate with counsel in related, state cases.

*A fortiori*, where MDL counsel and state counsel are one and the same – and where that counsel applies to participate as Lead Counsel or as a member of the Plaintiffs' Steering Committee – the MDL court should expect and require such counsel to coordinate their state cases with this proceeding. That is so for two reasons. First, it does not advance the objective of multidistrict consolidation for Lead Counsel of Plaintiffs' Steering Committee members to argue in state court, for example, (i) that the MDL Confidentiality Order should not be used (thus creating inconsistent standards for the handling of the same documents)[10] or (ii)

---

[10] Ms. Littlepage did just that in a Texas court hearing on October 14, 2003, advising the state court judge that he should not enter the MDL Confidentiality Order (before allowing her to review documents at the Wyeth depository) because "it's our position that the MDL is not a personal injury MDL. In fact, it was specifically set up for the class action." Transcript of Hearing, October 14, 2003, p. 5, *Zanter v. Wyeth Pharmaceuticals, Inc.*, No. 2003-1315-3 (74th Dist. – McLennan Co.).

that a different form of privilege log from that approved by the MDL court should be employed (thus creating make-work) or (iii) that a different schedule for document production from that adopted in the MDL should be established (thus creating possibly inconsistent obligations or negating the longer, carefully developed schedule) or that a witness deposed in the MDL subject to guidelines permitting the participation of state counsel should be deposed again on the same subject (thus duplicating effort, increasing expense and exhausting key witnesses).

Second, it is not fair for Lead Counsel or Plaintiffs' Steering Committee members – particularly counsel whose cases who largely or entirely in state court – to use the MDL proceeding to impose unilateral requirements on Wyeth, heedless of any reciprocal obligations. The proposed Practice and Procedure Order No. 4, for example, seeks to impose an onerous – indeed, impossible – document production schedule on Wyeth, at the same time remaining silent about any corresponding obligation of the personal injury plaintiffs to produce their medical records. Even if the Court were to impose that reciprocal obligation, however, it would be of no concern at all to Mr. Millrood, for example; all his clients and cases are in Pennsylvania state court. Or take the issue of document preservation. Counsel like Mr. Millrood or Ms. Littlepage (who takes the position that all her state cases should be remanded) can take a "free shot" at Wyeth in the MDL, seeking an expensive and burdensome preservation order without worry that they will be faced with any corresponding obligation to preserve their clients' voicemails, emails, Palm Pilot data, or documents in the hands of doctors and third parties.

There are counsel in state cases who want nothing to do with MDL proceedings and (sadly) state judges who have no interest in coordination with MDL proceedings. Counsel of record in MDL cases, however – particularly those who step forward to apply for leadership positions – have a responsibility to advance the broader goals of consolidation and coordination.

The Court should expect a commitment to that effect and should direct Lead Counsel and members of the Plaintiffs' Steering Committee to fulfill it.

### Conclusion

It is premature to confirm any of the proposed nominees. To the extent that the Court elects to do so, however, it should direct such counsel (and all counsel in leadership positions) to coordinate their actions in related, state cases with these proceedings.

Respectfully submitted,

*/s/ Lyn P. Pruitt*

Lyn P. Pruitt

MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201-3525
(501) 688-8800


John W. Vardaman, Jr.
Stephen L. Urbanczyk, Esq.
F. Lane Heard III, Esq.

WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005-5901
(202) 434-5000

DATED: December 8, 2003                 *Attorneys for Wyeth*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December 2003 a true and correct copy of the foregoing Wyeth's Response Re Proposed New Lead Counsel and New Members of Plaintiffs' Steering Committee, was forwarded by first-class mail, postage prepaid, to the parties listed on the attached Service List.

_____
Lyn P. Pruitt

## SERVICE LIST

### STEERING COMMITTEE MEMBERS

Mr. Marc Coulter
Mr. Aaron Rihn
PEIRCE, RAIMOND & COULTER
2500 Gulf Tower
606 Grant Street
Pittsburgh, Pennsylvania 15219

Mr. Shawn Khorrami
Ms. Patricia Mitchell
LAW OFFICES OF SHAWN KHORRAMI
14550 Haynes Street, Third Floor
Van Nuys, CA 91411

Mr. Tobias Millrood
SCHIFFRIN & BARROWAY, LLP
Three Bala Plaza East
Suite 400
Bala Cynwyd, Pennsylvania 19004

Mr. Willie Singleton
SINGLETON LAW FIRM
4050 Linwood Avenue
Shreveport, Louisiana 71108

Mr. Clint Krislov
Mr. Jason Stiehl
KRISLOV & ASSOCIATES, LTD.
Civic Opera Building
20 North Wacker Drive
Suite 1350
Chicago, Illinois 60606

Ms. Eileen L. McGeever
RUSHALL & McGEEVER
1903 Wright Place
Suite 250
Carlsbad, California 92008

Mr. Paul Odenwald
CLARK & ODENWALD
3929 Tulane Avenue
New Orleans, Louisiana 70119

Mr. Hank Wallace
WALLACE, CHAPUS & ASSOCIATES
2220 Grant Building
Pittsburgh, Pennsylvania 15219

### LEAD AND LIAISON COUNSEL

Mr. Jan P. Helder, Jr.
Mr. Brian J. Madden
STEUVE HELDER SIEFEL, LLP
330 West 47th Street
Suite 250
Kansas City, Missouri 64112

Mr. Russell D. Marlin
Mr. Gary Holt
GARY EUBANKS & ASSOCIATES, LTD
708 West Second Street
P.O. Box 3887
Little Rock, Arkansas 72203-3887

Mr. Michel Mills
PERONO, LANDER, BECK, LALLANDE & SERBIN
300 East San Antonio Drive
P.O. Box 7948
Long Beach, California 90807-0948