```
                    IN THE UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF ARKANSAS
                             WESTERN DIVISION


   IN RE:  PREMPRO PRODUCTS LIABILITY     MDL No. 4:03CV01507 WRW
           LITIGATION                     ALL CASES


        Tuesday, May 20, 2008 - Little Rock, Arkansas - 2:00 p.m.


                 TRANSCRIPT OF TELEPHONE CONFERENCE
              BEFORE THE HONORABLE WILLIAM R. WILSON, JR.,
                      UNITED STATES DISTRICT JUDGE


   APPEARANCES:

   On Behalf of the Plaintiffs (By Telephone):

        MR. EUGENE C. BROOKS, IV
          Brooks Law Firm
          Post Office Box 9545
          Savannah, Georgia   31412


        MS. ZOE LITTLEPAGE
          Littlepage Booth
          1012 West Alabama
          Houston, Texas   77006


   On Behalf of the Defendants (By Telephone):

        MR. BRIAN A. TROYER
          Thompson Hine
          3900 Key Center
          127 Public Square
          Cleveland, Ohio   44114-1291




        Proceedings reported by machine stenography; transcript
   prepared utilizing computer-aided transcription.

                    Eugenie M. Power, RMR, CRR, CCR
                       United States Court Reporter
```

```
 1                    P R O C E E D I N G S
 2            COURTROOM DEPUTY:  This is Mary in Judge Wilson's
 3   office.  I'm going to do a quick roll call and then call the
 4   case and we'll be ready.
 5        Mr. Brooks?
 6            MR. BROOKS:  Yes, ma'am.
 7            COURTROOM DEPUTY:  Mr. Troyer?
 8            MR. TROYER:  Yes, I'm here.
 9            COURTROOM DEPUTY:  Ms. Littlepage?
10            MS. LITTLEPAGE:  Yes, ma'am.
11            COURTROOM DEPUTY:  Thank you.  This is In Re:  Prempro
12   Products Liability Litigation.  It's the master case, MDL Docket
13   No. 4:03CV01507 WRW.
14            THE COURT:  All right.  We're having an on-the-record
15   telephone conference with respect to a motion for a protective
16   order against notice of a 30(b)(6) deposition, Docket No. 1767.
17   The notice of deposition was served on April the 21st, and the
18   motion for a protective order was filed yesterday, after 5 p.m.
19        Why was this motion for a protective order filed so late?
20            MR. TROYER:  Judge, this is Brian Troyer for Solvay.
21   I've been in communication with Mr. Brooks on behalf of the
22   plaintiffs about this deposition notice over the period of time
23   since it was served, and I advised him -- we discussed that I
24   needed to establish what Solvay's position would be on some of
25   the issues in the notice.  I did that as rapidly as I was able
```

1  to do.  I contacted him early last week, I believe it was on
2  Monday, and explained our position on the various issues, what
3  issues we felt were appropriate and what we didn't feel is
4  appropriate, and he advised me at that time that we would need
5  to file a motion for a protective order.  And so we proceeded to
6  do that.
7           THE COURT:  Well, if you didn't have a
8  Johnny-on-the-spot judge presiding, you'd be in a lot of trouble
9  filing one after working hours yesterday, it seems to me.  But
10 let's move on -- let's see.  The clinical studies of
11 methyltestosterone -- I can't pronounce that word.
12          MR. TROYER:  Methyltestosterone, Judge.
13          THE COURT:  I'll call it MT for the purposes of this
14 hearing.  I understand that the defendant has told plaintiff
15 that there are no studies on it beyond those covered in a
16 previous deposition.  And my indication is that plaintiff will
17 not accept defendant's assurance on this point.  Is that
18 correct?  I believe I need to address that to Mr. Brooks.
19          MR. BROOKS:  Your Honor, yes.  This is Gene Brooks.
20          THE COURT:  All right.
21          MR. BROOKS:  And we did try --
22          THE COURT:  Just a minute.  Just a minute.  Just a
23 minute.
24          MR. BROOKS:  We did try to address this with --
25          THE COURT:  Just a minute.

```
 1            MR. BROOKS:  Okay.
 2            THE COURT:  You said yes, you did not trust him.  What
 3   do you want, just in a very brief form?  Apparently, I can't
 4   trump you all.  I don't know what's wrong with the sound system.
 5            MR. BROOKS:  Does this help at all?  I had it on
 6   speakerphone.
 7            THE COURT:  Turn off the speakerphone so you can hear
 8   me.  I'm liable to get high blood pressure.
 9       What is it you want besides assurance of counsel?
10            MR. BROOKS:  We want somebody on the record to say
11   there's been --
12            THE COURT:  Can you not hear me?  Is there something
13   wrong with this?
14            MR. TROYER:  I can hear.
15            COURTROOM DEPUTY:  Mr. Brooks, are you off of your
16   speakerphone?
17            MR. BROOKS:  Yes.
18            THE COURT:  Can you not hear me when I try to
19   interrupt you?
20            MR. BROOKS:  I didn't, Your Honor.
21            THE COURT:  Okay.  There's something wrong with my
22   machine then, I reckon.  We need to get somebody on that,
23   Ms. Johnson.
24       Mr. Troyer, are you willing to say here on the record that
25   there's no other studies?
```

1          MR. TROYER:  I'm willing to say that.  I have said it,
2   and I'm willing to say it, and if we ever learn anything to the
3   contrary, we would alert the plaintiffs --
4          THE COURT:  Whoa, whoa, whoa.  That's not good enough.
5   Can you give a definitive answer that there have been no other
6   studies?
7          MR. TROYER:  Yes.
8          THE COURT:  That's all I'm needing to know.  If one
9   comes up, notify them.  We've got that No. 1 out of the way.
10      Unfinished study reports.  Solvay contends that plaintiffs
11  are not entitled to drafts of reports and that when the reports
12  are finalized, Solvay will provide them to plaintiff.  And then
13  plaintiff says these reports have been unfinished for two years
14  and he thinks that maybe Solvay is dragging its feet.
15      What does Mr. Troyer say to the allegation that your client
16  may be dragging its feet?
17         MR. TROYER:  I think I can clear up something about
18  that.  The specific draft report that Mr. Brooks is talking
19  about, he is correct that there's testimony in 2005 that this
20  report was in the process of being drafted.  And it is the case
21  that it's not finished at this time still in 2008.  The reason
22  for that has nothing to do with what Mr. Brooks says in his
23  brief, the assertion that it is either finished and we're hiding
24  it and/or Solvay is dragging its feet.  The explanation is much
25  more pedestrian than that.  Our witness in the prior deposition,

1   Mr. Allgood, was prepared to explain this, but, frankly,
2   Mr. Brooks didn't really ask him the questions to elicit this.
3            THE COURT:  I'll tell you what to do.  Get an
4   affidavit from that witness explaining why it's not finished yet
5   and provide it to plaintiffs, and if that doesn't satisfy them,
6   they can file some other kind of motion.
7       All right.  Let's go to No. 3, clinical trials or studies
8   of drugs marketed by foreign affiliates.  The defendant says
9   this is not relevant to a claim or defense of parties in this
10  litigation, and, also, this request is not limited to HRT drugs.
11      All right.  What says the plaintiff to that, very briefly?
12           MR. BROOKS:  Your Honor, the two -- can you hear me
13  okay?
14           THE COURT:  Briefly.
15           MR. BROOKS:  Okay. Two issues.  One, whether they did
16  any testing of the methyltestosterone or the hormone drugs,
17  which we feel SPI, that being the subsidiary, may be
18  artificially isolating their testing from that done by the
19  international group of which they're a part, of which
20  Dr. Allgood explained in his last deposition.  Secondly, it
21  would be relevant to jurisdictional arguments concerning the
22  international Solvay group, which is now known as Solvay
23  Pharmaceutical Group, and several other people we deposed so far
24  have global positions, such as Dr. Brennan has one now and
25  Dr. Perkins has had one in the past.

```
 1                THE COURT:  All right.  What says the defense to that?
 2                MR. TROYER:  Well, first, the request is --
 3                THE COURT:  Is this Mr. Brooks?
 4                MR. TROYER:  I'm sorry.  This is Mr. Troyer.
 5                THE COURT:  Mr. Troyer, I'm sorry.
 6                MR. TROYER:  The request, the topic in the notice is
 7   not limited to MT or hormone drugs or menopause drugs, and I --
 8                THE COURT:  Let's solve that right now.  That's all
 9   you want, isn't it, Mr. Brooks?
10                MR. BROOKS:  Yes, sir.
11                THE COURT:  All right.  So that's solved.  We've
12   narrowed it down to those drugs.  So go ahead.
13                MR. TROYER:  Can I have a slightly more specific
14   definition of "that" to be hormone therapy drugs used to treat
15   menopausal symptoms?
16                MR. BROOKS:  Well, I mean, we can do that in regards
17   to the --
18                THE COURT:  Is this Mr. Brooks speaking now?
19                MR. BROOKS:  Yes, this is Mr. Brooks.  In regards to
20   the issues of the hormone testing, would that still -- that
21   still raises the issue of jurisdiction, unless you say testing
22   by any of the drugs by the Solvay Pharmaceutical Group which has
23   been done here in the U.S. would be relevant to jurisdictional
24   issues concerning the international Solvay group.
25                MR. TROYER:  Well, this is Mr. Troyer again.  We
```

```
 1  certainly don't agree with that second point.  I don't think
 2  that the fact that a drug of some kind might have been tested by
 3  Solvay Pharmaceuticals in the U.S. shows anything about --
 4          THE COURT:  I'll tell you what.  I'm going to reserve
 5  a ruling on the international issue.  You all can file
 6  simultaneous briefs of no more than five pages, letter briefs,
 7  and you'll have to do it after the deposition.  I'll give you a
 8  week to do it.  That will be by 5:00 p.m. a week from today,
 9  which will be --
10          COURTROOM DEPUTY:  May the 27th.
11          THE COURT:  -- May the 27th, by 5:00 p.m.,
12  simultaneous letter briefs no more than five pages on the
13  international issue.  I think that takes care of the third,
14  since we've narrowed it, and we've got that international -- I'm
15  not real strong on international issues.  I'm hell on domestic
16  local rules, local issues.  Wait a minute.  I should have said
17  "hades."  Strike that.
18      Let's go to No. 4, publications on MT.  And defendant says
19  plaintiff is seeking discovery that's already in the public
20  domain, equally available to plaintiff.
21      What do you say to that, Mr. Brooks, is it equally
22  available to you in the public domain?
23          MR. BROOKS:  Well, it certainly is.  There are
24  articles in the public domain.  We have not been able to find
25  anything that says MeT is what they call an aromatase inhibitor,
```

Eugenie M. Power, RMR, CRR, CCR
United States Court Reporter

1  which means it may reduce breast cancer, and that is one of the
2  theories that Solvay has been advancing.  So we're trying to
3  find out if there's anything anywhere that anybody has that
4  confirms that.
5          THE COURT:  Do you have any problem with identifying
6  those public realm, public domain articles, or whatever it is,
7  Mr. Troyer?
8          MR. TROYER:  I don't have a problem, I guess,
9  identifying them to the extent that we know of any.  I will say
10 right here, I don't know off the top of my head whether there's
11 a published article on that subject.
12         THE COURT:  What are you talking about being in the
13 public realm?  What is it that you suggest is in the public
14 realm?
15         MR. TROYER:  Well, the request is for any publications
16 about MT, and specifically two aspects of MT, behavior -- I
17 didn't go check.  We didn't go check because we didn't think it
18 was our job to go check.
19         THE COURT:  You can solve that, can't you, with a
20 phone call or an e-mail to your client?
21         MR. TROYER:  I can find out what they know.
22         THE COURT:  Yeah, that's what I'm talking about.
23 Well, get on the phone with them this afternoon, or e-mail or
24 the Ouija board or something, and get an answer, and give
25 whatever answer you get to Mr. Brooks tomorrow morning.  Are you

1   with me?
2           MR. TROYER:  Yes, I'm with you.
3           THE COURT:  All right.  You don't sound like you're
4   very happy, but as long as you're with me --
5           MR. TROYER:  It's not that I'm unhappy with the
6   ruling, Judge, it's only that I just try to keep in mind that
7   sometimes when you need to reach a particular scientist or
8   person at one of these companies, they may not be in the office
9   that day.
10          THE COURT:  Well, they almost never were in the
11  afternoon when I needed settlement authority from them back when
12  I was practicing law.  But you can run them down in the morning,
13  I'm sure.  You kind of impress me as somewhat of a detective, so
14  I believe you'll be able to find them.
15       Let's move to No. 5, the epidemiological studies of MT.
16  Solvay says this is unreasonably cumulative and burdensome.
17  Tell me why it's unreasonably cumulative and burdensome,
18  Mr. Troyer?  By the way, are you located in Cleveland?
19          MR. TROYER:  Yes.
20          THE COURT:  Where are you located, Mr. Brooks?
21          MR. BROOKS:  In Savannah.
22          THE COURT:  Savannah, Georgia?
23          MR. BROOKS:  Yes, sir.
24          THE COURT:  Are you familiar with SCAD?
25          MR. BROOKS:  I sure am.

Eugenie M. Power, RMR, CRR, CCR
United States Court Reporter

```
 1              THE COURT:  My youngest stepdaughter was admitted
 2   there this fall and decided not to go, much to my
 3   disappointment.  That is not relevant to the issues before us,
 4   so we'll move on.
 5       Tell me why it is unreasonably cumulative and burdensome,
 6   Mr. Troyer.
 7              MR. TROYER:  This one, Judge, if we're talking about
 8   topic 6 of the notice, this is one where we had agreed to make
 9   inquiry to try to obtain the information that Mr. Brooks is
10   asking for.  We did say that we object to it and we don't think
11   it's really appropriate, but we're willing to make an
12   accommodation.  So we're not standing on an objection on this
13   one.
14              THE COURT:  Well, that sounds like it's solved to me.
15        What do you say, Mr. Brooks?
16              MR. BROOKS:  Sounds like it's resolved too.
17              THE COURT:  All right.  I'll tell you what.  It's been
18   wholly a pleasure visiting with y'all.  I'm going to rulify it
19   moot.  Anything else you want to bring up?
20              MR. BROOKS:  No, sir.  We can delay the hearing until
21   the Court rules on the other matters.  That would be fine with
22   us, if that would be --
23              THE COURT:  Talking about the international matter?
24              MR. BROOKS:  The international matter.  I think
25   Allgood is going to get us an affidavit explaining why --
```

Eugenie M. Power, RMR, CRR, CCR
United States Court Reporter

1            THE COURT:  Oh, he'll have that affidavit before
2   Friday.  Well, I don't have any objection if y'all want to
3   postpone the depositions, if it suits both of you.  Let's get a
4   date right now, while we're on the phone, for the deposition.
5        Does that suit you, Mr. Troyer?
6            MR. TROYER:  It may.  I have to ask first, based on
7   the disposition of all the issues, I'm not sure what's left for
8   the deposition.
9            THE COURT:  Well, all right.  Why don't we postpone it
10  for a couple of weeks so I can rulify on all the issues and
11  you'll know what's left.  How does that sound?
12           MR. TROYER:  If I am to get an affidavit about the
13  draft safety report, I don't know whether -- I would hope that
14  will satisfy Mr. Brooks at that point.  Maybe it will, maybe it
15  won't.
16           THE COURT:  Y'all get your calendars out right now,
17  and get your Ouija boards out, and let's set it two weeks from
18  now, and I'll rule quickly on this.
19       Two weeks will be what date?
20           COURTROOM DEPUTY:  Tuesday, June 3.
21           THE COURT:  Can you all take his deposition on June 3?
22           MR. BROOKS:  Yes, sir.  This is Mr. Brooks.  I can do
23  it.
24           MR. TROYER:  This is Mr. Troyer.  I'm available on
25  that day.

                    Eugenie M. Power, RMR, CRR, CCR
                       United States Court Reporter

1           THE COURT:  All right.  That sounds wonderful.  Let's
2    just start it at -- both of y'all are on Eastern time, aren't
3    you?
4           MR. BROOKS:  Yes.
5           MR. TROYER:  Yes, sir.
6           THE COURT:  Why don't you start it at 9 o'clock in the
7    morning, or 10.  Which suits you best?
8           MR. BROOKS:  Brian, how about you make the call?  I'll
9    probably take it by telephone.
10          MR. TROYER:  10 would suit me fine.
11          THE COURT:  10 o'clock Eastern Standard Time on the
12   10th day of June, this year of the Lord.  And if you're not of
13   the Christian faith, it is just 2008.
14       All right.  Is there anything else?
15          MR. BROOKS:  I don't think so, Your Honor.
16          THE COURT:  Mr. Brooks --
17          MR. TROYER:  I've got one other issue, Your Honor.  I
18   just was able to quickly look at Mr. Brooks' opposition filing
19   before the call, and I have a concern about whether some
20   material designated confidential is filed without being placed
21   under seal.  I've asked some folks at my office to take a look
22   at that.
23          THE COURT:  Check that out, and if you need a
24   telephone conference, call Ms. Johnson of my office at
25   (501) 604-5144.  That's (501) 604-5144.

                    Eugenie M. Power, RMR, CRR, CCR
                       United States Court Reporter

```
 1          All right.  Is there any other matter we need to take up?
 2                  MR. TROYER:  That's all for me, Your Honor.
 3                  THE COURT:  I need to ask Mr. Brooks an irrelevant
 4   question, irrelevant to this lawsuit.  I really like Savannah,
 5   and I've been to the Mighty Eighth Museum there, and I liked
 6   that.  But one thing I don't like that a lot of people like, I
 7   didn't like that book Midnight in the Garden of Good and Evil,
 8   whatever it was.  I didn't like the emphasis on Chablis.  What's
 9   your view of it?
10                  MR. BROOKS:  Well, I think it -- I never finished the
11   book.  I started it, but never finished it.  I think it's a real
12   tourist pull, for some reason.  I don't know.  The hotels and
13   restaurants sure like the book.
14                  THE COURT:  Well, I would like it too if I was a
15   Savannahian.  What about the guy, the lawyer that furnishes the
16   bulldogs for Georgia, is he still practicing law there?
17                  MR. BROOKS:  Sonny Seiler.  I don't see him that
18   often, but he's still practicing down at the Bouhan Williams
19   firm.
20                  THE COURT:  I was interested in his bulldogs.  They're
21   pretty handsome dogs.
22       Mr. Troyer, the main person I know from Cleveland was --
23   I'm going to give you a quiz here.  A book was written about him
24   called Titan.  Have you read Titan?
25                  MR. TROYER:  I have not read it, but I believe that
```

Eugenie M. Power, RMR, CRR, CCR
United States Court Reporter

1   was Mr. Rockefeller.
2           THE COURT:  That's the original John D. Rockefeller.
3   It is a fascinating book.  He was a fascinating fellow.  I
4   highly recommend it to you.  I recommend it to anybody.
5           MR. TROYER:  I'll try to put that on my book pile.
6           THE COURT:  All right.  It's been wholly a pleasure.
7   Y'all have a good evening.
8           MR. TROYER:  Thank you, Your Honor.
9           MR. BROOKS:  Thank you, Your Honor.
10       (Whereupon, the hearing concluded at 2:20 p.m.)
11                          C E R T I F I C A T E
12      I, Eugenie M. Power, Official Court Reporter, do hereby
13  certify that the foregoing is a true and correct transcript of
14  proceedings in the above-entitled case.
15
16
17  /s/ Eugenie M. Power, RMR, CRR, CCR        Date:  May 21, 2008
    United States Court Reporter
18
19
20
21
22
23
24
25

                    Eugenie M. Power, RMR, CRR, CCR
                      United States Court Reporter