IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | : | MDL Docket No. |
| | : | 4:03CV1507WRW |
| | : | |
| PREMPRO PRODUCTS LIABILITY | : | ALL CASES |
| LITIGATION | : | |
| | : | |
| | : | |

**REPLY TO WYETH'S: (1) OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO ADMIT PLAINTIFFS GENERAL CAUSATION EVIDENCE ON ESTROGEN-ONLY HORMONE THERAPY REGIMENS AND BREAST CANCER
AND
MEMORANDUM IN OPPOSITION TO (2) CROSS-MOTION *IN LIMINE*
TO EXCLUDE CERTAIN OPINIONS OFFERED BY PLAINTIFFS' EXPERTS**

This dispute is about one issue only: Does estrogen therapy cause breast cancer? The issue is not which estrogens are the most harmful, what minimum prescribed dose is carcinogenic, how long the drug must be taken to cause cancer or myriad other questions that courts will face in individual cases.[1] Yet, in its desperate zeal to avoid the plethora of evidence condemning estrogen therapy, Wyeth attempts to reframe the question. Wyeth says the motion should focus on conjugated equine estrogen, in its most common dose, for average duration of use, as ingested by an ordinary woman without significant risk factors. If every woman's ingestion of estrogen fit into Wyeth's perfect scheme, the world might be a safer place.

If E-only therapy causes breast cancer under any circumstance, general causation exists. The evidence consistently establishes that high doses of estrogen, or common doses administered long-term (and certainly in excess of 10 years) substantially increases the risk of breast cancer.[2]

I.      **The Plaintiffs' Steering Committee ("PSC") Has Taken No Position on Whether E-Alone Causes Breast Cancer.**

Wyeth asserts that the lawyers and experts representing the PSC have unequivocally stated that E-alone does not cause breast cancer. The PSC has never designated experts in this litigation. Only individual plaintiffs with trial-set cases have. The fact that some of those plaintiffs are represented by lawyers on the PSC is irrelevant. Further, the PSC has taken no position on this issue. Individual lawyers who happen to be on the PSC may have taken positions on behalf of clients they represented in trial-set cases. It is axiomatic that a lawyer's representations about the facts of a case are binding in only that case.[3] Finally, Wyeth misstates the positions taken by various experts. For instance, Dr. Don Austin has repeatedly testified that E-alone causes breast cancer. He simply acknowledged that the risk from E+P is greater.[4]

---

[1]   Wyeth is fond of noting that any substance, including water, can be toxic in certain amounts. But those amounts would not be recommended by physicians. The participants in the studies plaintiffs cite received prescribed doses of E.

[2]   Long-term estrogen ingestion is the focus of plaintiff's experts' testimony (Deposition of Dr. Jasenka Demirovic (Exh. 1) at 125:21-126:18; Deposition of Dr. C. Marcelo Aldaz (Exh. 2) at 37:5-24, 38:1-39:13).

[3]   In fact, in other lawsuits, even the client on whose behalf a lawyer makes a representation is not bound by the lawyer's statement. *See U.S. ex. re. Ervin & Assocs., Inc. v. Hamilton Securities Group, Inc.*, 370 F. Supp. 2d 18, 44 n. 14(D.D.C. 2005)(citation omitted).

[4]   Trial Transcript, Case No. 04-1169, *Scroggin v. Wyeth* (Exh. 5) at 227:19-228:2; 237:15-238:1.

## II. Plaintiff's Experts Are Qualified to Render Their Opinions about Estrogen Therapy Based on the Totality of the Evidence.

### --- Dr. Jasenka Demirovic

Dr. Demirovic, who earned a PhD in epidemiology, taught that subject for 20 years at prominent U.S. medical schools.[5] She has been an investigator in numerous epidemiological studies, including one on cardiovascular disease and hormonal contraceptives. She has served as an advisor to the World Health Organization on hormonal contraceptives and heart disease.[6] Her articles on epidemiology have been published in respected, peer-reviewed journals.[7] Dr. Demirovic was a member of an advisory committee on cancer and served on government agencies involved in cancer when she worked in Yugoslavia.[8] Dr. Demirovic's current work involves writing a chapter for the book, "The History of Cardiovascular Disease Epidemiology."[9] She provided consulting services as an epidemiologist on the controversial painkiller, Vioxx.[10]

### --- Dr. Marcelo Aldaz

Dr. Aldaz was a tenured professor in molecular carcinogenesis at the M.D. Anderson Cancer Center in Houston. He is now an independent researcher specializing solely in cancer causation. His research focuses almost exclusively on breast cancer. His laboratory was one of the first to study the effects of estradiol (natural estrogen) on global gene expression in hormone-dependent breast cancer. His lab has cloned and characterized numerous genes that estrogen induces. He has studied the effects of estrogen-blocking drugs, including resistance to Tamoxifen in the treatment of breast cancer.[11] Dr. Aldaz has published over 100 articles in the most respected peer-reviewed publications and 12 book chapters on cancer biology.[12]

Dr. Aldaz has conducted his own studies on E's effect on breast cancer.[13] He has authored multiple papers analyzing samples taken from breast tumors, including analysis of the

---

[5] Expert Report of Dr. Jasenka Demirovic (Exh. 3) at 1.
[6] Exh. 3 at 1-2.
[7] Exh. 1 at 246:14-23.
[8] Exh. 1 at 326:5-327:6.
[9] Exh. 1 at 40:18-41:9.
[10] Exh. 1 at 14:2-8.
[11] Expert Report of Dr. Marcello Aldaz (Exh. 4) at 1.
[12] Exh. 2 at 32:15-33:14, 46:5-18; Exh. 4 at 1-2.
[13] Exh. 2 at 147:11-148:1.

biomarkers associated with cancer progression.[14] He has taught courses in hormonal carcinogenesis.[15] He is a cell biologist specializing in cancer biology.[16] Multiple federal agencies seek Dr. Aldaz's advice and counsel on cancer issues, particularly those involving the breast.

Wyeth claims that Dr. Aldaz's testimony should be disallowed because he is not an epidemiologist. Dr. Aldaz is an expert on the biologic plausibility that E causes breast cancer and the experimental and real world data supporting the conclusion. Dr. Demirovic was retained to analyze, defend and criticize epidemiological studies. Dr. Aldaz, however, is certainly qualified to discuss the results of epidemiological studies as they relate to the issues he has studied.[17]

Wyeth claims that that neither expert is qualified to testify because the expert's prior work has involved causes of disease other than drugs. There is no *Daubert* requirement that would make prior drug work a prerequisite to testimony about epidemiological and experimental data on such a product. Because both experts have analyzed precisely the types of studies at issue here in multiple contexts, they are qualified. As Dr. Aldaz explained, Wyeth's characterization of what he lacks in drug experience is true of 90 percent of hormone therapy researchers. Few have served on FDA advisory boards or been asked to advise on the safety of Premarin.[18]

III.   **Abundant Evidence Supports the Carcinogenic Effect of Estrogen on the Breast.**

    A.   **Epidemiological Data Consistently Establishes Increased Incidence of Breast Cancer with Long-Term Use of E.**

Epidemiological studies support general causation if they show a greater than 1.0 relative risk AND the findings are deemed statistically significant. Above 1.0, there is increased incidence of the disease among product users. Whether the increase is statistically significant becomes the key inquiry for researchers. A doubling of the risk is required only to establish specific causation; that is, a 2.0 relative risk can show it is more likely than not that a particular

---

[14] Exh. 2 at 28:5-21.
[15] Exh. 2 at 27:7-12.
[16] Exh. 2 at 31:23-32:14.
[17] *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (permitting accountant and not just economist to testify to damages caused by termination of franchise agreement because "anyone with relevant expertise enabling him to offer responsible opinion testimony helpful to judge or jury may qualify as an expert witness.").
[18] Exh. 2 at 30:14-31:15.

person's cancer was caused by a drug. No such showing is required for general causation.[19] Nevertheless, <u>at least 33 epidemiological studies have shown a greater than 2.0 relative risk of breast cancer from estrogen-alone therapy</u>.[20] The experts discussed a number of these studies by deposition.[21] The largest study in the world, the Million Women Study (MWS), revealed a 2.45 relative risk for tubular breast cancer.[22] One would be hard-pressed to identify other litigation with so many epidemiological studies showing such a high relative risk.

In addition to studies showing a doubling of the risk, numerous studies (including the MWS for all tumors) show a statistically significant increase in risk.[23] The evidence is consistent.[24] A minority of studies shows no relationship.[25]

Wyeth argues that many of these studies are not on conjugated equine estrogen (CEE), which is derived from the urine of pregnant mares and makes up Wyeth's Premarin product. Initially, the motion at issue is not limited to any type of estrogen, as explained above.[26] Second, studies have consistently shown that those treated with CEE are the ones disproportionately suffering from breast cancer. As Dr. Lippert wrote in his review of studies:

> One striking fact that emerges from a review of the literature is that almost all the patients in whom an increase in breast cancer had been noted had been treated with products containing conjugated equine oestrogens.[27]

Third, CEE is converted to estradiol upon entering the human body, making Wyeth's (erroneous) claim that estradiol is more potent meaningless.[28] Fourth, U.S. studies have focused on Premarin

---

[19] *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1136-37 (9th Cir. 2002). In this circuit, epidemiological data is not even required to establish causation. *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 992 (8th Cir. 2001).

[20] See chart of studies, attached as Exh. 6.

[21] Among these studies are Hoover, Rosenberg, Lyytinen, Briton, Woolkott and Henderson (Exh. 1 at 344:20-346:2); Exh. 4 at 5, 7.

[22] Gillian K. Reeves, *Hormonal therapy for menopause and breast-cancer risk by histological type: a cohort and meta-analysis*, Lancet Oncol. 2006, 7: 910-18, Table 3 (attached as Exh. 10).

[23] Exh. 3 at 7, 11-20; Exh. 2 at 292:2-17.

[24] Exh. 2 at 95:16-96:21 (discussing Colditz 1998 in J OF NAT'L CANCER INST.), 251:19-253:8; Exh. 1 at 124:24-125:20.

[25] Exh. 2 at 245:18-246:3.

[26] The experts thus did not limited their analysis to Premarin (Exh. 2 at 14:5-15:2, 225:60-12, 226:18-227:21).

[27] Theodor H. Lippert, et al, Special Clinicopharmacological features of conjugated equine, oestrogens: Is there nowadays any justification for their continued use for postmenopausal hormone replacement therapy? Artneimitteltherapie, 1999, 17, 362-264 (Exh. 7) at 2-6; Exh. 1 at 63:21-64:14 (CEE is most potent estrogen in terms of breast cancer risk). CEE is the most potent estrogen form in terms of breast cancer risk (Exh. 1 at 63:21-64:14).

(Wyeth's CEE product), which is the predominant U.S. product, even though the investigators sometimes did not identify the type of estrogen studied.[29] Fifth, all estrogens interact with the estrogen receptor, thereby triggering proliferation.[30] In fact, estrogen exerts a class effect. That is, all estrogens have essentially the same effect in causing cell growth and multiplication.[31] Wyeth's FDA-approved label confirms the class effect.[32] Even animal studies have shown that equilin, an estrogen in CEE, causes breast cancer.[33] Significantly, the MWS compared results among the types of estrogen, including CEE, and found no difference on breast cancer risk.[34]

Apparently recognizing the strength of the evidence indicting CEE, Wyeth contends the experts have not focused on the 0.625 mg. dose, the most common dose of Premarin prescribed. Initially, higher doses are prescribed as well. For instance, in the *Scroggin* case, as Wyeth concedes, the plaintiff's doctor took the plaintiff off Prempro (which has a 0.625 mg dose of Premarin) and put her back on separate pills so he could increase the dose of the Premarin component.[35] If higher doses cause breast cancer, general causation has been proven. Furthermore, the experts have identified multiple studies that established the breast cancer risk with the standard dose.[36] Among these are Brinton 1981, Brinton 1986, the Collaborative Group Meta-Analysis, Newcomb, Colditz 1990 and the NIA-AARP Study.[37] Finally, many studies simply fail to specify the dose studied.[38] Yet, the bulk of such evidence comes from studies after 2000, when 0.625 mg had long been the standard dose.[39] Wyeth's expert ultimately conceded that studies like the Collaborative Group analysis establish a statistically significant risk from 0.625 mg. of Premarin, simply saying she disagrees with the finding.[40]

---

[28] Exh. 4 at 70:20-71:10, 81:7-82:3, 227:23-228:19.
[29] Exh. 1 at 202:15-22; 203:11-205:3.
[30] Exh. 2 at 69:3-70:1.
[31] Exh. 1 at 61:14-62:1, 62:13-63:7, 79:15-80:7, 89:16-91:6, 200:3-9.
[32] Premarin Label (Exh. 9).
[33] Exh. 1 at 117:4-118:7.
[34] Exh. 12 at 38:24-39:21; MWS article (Exh. 13).
[35] Exh. 5 at 125:23-126:4.
[36] Exh. 2 at 187:6-19.
[37] Exh. 2 at 306:24-315:15.
[38] Exh. 1 at 306:24-307:13.
[39] Exh. 1 at 54:23-55:13, 70:10-22, 82:7-14.
[40] Exh. 12 at 50:13-52:12.

Wyeth contends plaintiff's experts "cherry-picked" the studies they considered. To the contrary, the experts looked at all studies, discussing the strengths and weaknesses of those on both sides. Dr. Demirovic relied on studies based on their sample size, design and other reliability factors,[41] highlighting the weaknesses of studies on both sides.[42] Dr. Aldaz did the same.[43]

Wyeth supports its "cherry-picking" allegation by claiming the experts failed to account for WHI. Yet, both experts pointed out multiple flaws in the WHI clinical trial. First, the study was too short. WHI's premature termination meant it could not evaluate long-term risk.[44] The WHI investigators stated that the data failed to establish risk for seven years of use, which is less than the 10 years that many studies say definitely generates risk.[45] The study's own data suggests WHI would have supported causation had it continued. The study showed a greater than 2.0 relative risk of Proliferative Breast Disease, a precursor to breast cancer, in E-only users.[46] Second, the women studied were too old; the study says nothing about the risk to women just entering menopause.[47] In fact, the WHI investigators, who conducted the WHI observational study during and after the WHI clinical trial, concluded that, controlling for the lag time between onset of menopause and the initiation of hormone therapy, the WHI clinical trial reveals numbers comparable to the MWS and Collaborative Group studies that found a substantial risk, as Wyeth's expert concedes.[48] Third, the study was not large enough to quantify a rare risk like breast cancer.[49] As a result, the study generated too few breast cancer cases in the E and placebo groups.[50] Part of the problem is that it is unethical to design a clinical trial to measure a risk

---

[41] Exh. 1 at 23:4-24:16, 117:5-23, 121:1-18, 123:15-124:8.
[42] Exh. 1 at 146:5-147:1. Among the studies she indicted as unreliable are Moorman, Jick, WISDOM, Tannen and Zhang (Exh. 1 at 207:2-208:15, 211:19-22, 214:19-215:20, 216:10-217:11, 219:21-221:5, 222:7-223:1.
[43] Exh. 2 at 16:19-17:19; Exh. 4 at 6-7.
[44] Exh. 1 at 135:16-136:9, 141:17-142:8, 255:15-256:8; Exh. 2 at 251:19-253:8.
[45] Exh. 1 at 262:4-263:2, 263:5-16; Exh. 2 at 300:17-23.
[46] Exh. 3 at 22; Exh. 4 at 8-9.
[47] Exh. 1 at 292:4-15; Exh. 2 at 205:4-206:20; Exh. 3 at 21.
[48] Prentice article (attached as Exh. 11) at 1413; Deposition of Patricia Thompson-Carino (Exh. 12 at 28:13-33:5, 38:24-39:21, 50:13-52:12).
[49] Exh. 1 at 74:1-76:3, 220:21-221:5.
[50] Exh. 1 at 223:170-224:18, 252:8-18, 291:14-292:3.

because such would constitute deliberate exposure of participants to harm. Thus, the WHI was neither designed, nor powerful enough, to quantify the breast cancer risk.[51] Researchers concluded that WHI's anomalous finding on E-alone should be rejected in favor of consistent observational, experimental and animal data.[52]

### B. Extensive Ecological, Experimental and Animal Data Support the Causal Link.

Both sides agree that a woman's endogenous estrogen causes breast cancer. Studies consistently show that higher estrogen levels in the blood increase breast cancer risk.[53] Removal of the ovaries (which shuts down estrogen production) causes breast tumors to regress.[54] Tamoxifen therapy substantially reduces breast cancer risk by blocking estrogen from receptors.[55] Wyeth provides no biologically plausible explanation for why exogenous estrogen, that relieves menopausal symptoms caused by lack of estrogen, would not also increase that risk.

Ecological evidence supports causation as well. Use of E-alone dropped dramatically after the endometrial cancer crisis of the 1970s. As a result, breast cancer rates dropped dramatically as well. This is similar to the decline in breast cancer that occurred when the sale of both E and E+P dropped after the WHI results were announced.[56] When E use plummets, so do breast cancer rates. Multiple studies on animals reveal that E-alone causes breast cancer.[57] Wyeth's own website acknowledges that long-term use of E-alone increases the breast cancer risk.[58] And Wyeth's Premarin label long acknowledged studies showing a 1.3 to 2.0 relative risk of breast cancer.[59] The epidemiological, experimental, animal and ecological data is overwhelming.

---

[51] Exh. 1 at 117:24-119:14; Exh. 2 at 254:4-255:7.
[52] Exh. 3 at 8.
[53] Exh. 4 at 18.
[54] Exh. 2 at 22:13-24:13; Exh. 4 at 3.
[55] Exh. 4 at 3-4.
[56] Exh. 1 at 16:11-17:11; Exh. 2 at 152:22-155:13; Exh. 3 at 6.
[57] Exh. 2 at 22:13-24:13, 102:11-103:3; Exh. 4 at 11-13.
[58] PX10555 (attached as Exh. 8) at 4.
[59] Premarin Label (attached as Exh. 9).

Respectfully submitted,

/s/ Alex D. McLaughlin
Alex D. McLaughlin (WVSB # 9696)
Angela Cartmill Reese, (WVSB# 4235)
Melissa H. Luce (WVSB # 4256)
W. Stuart Calwell, Jr.  (WVSB # 595)
**THE CALWELL PRACTICE, PLLC**
Law and Art Center, West
500 Randolph Street
Charleston, West Virginia  25302
(304)343-4323
(304)344-3684 (fax)
amclaughlin@calwelllaw.com
*ATTORNEYS FOR THE PLAINTIFFS*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| **In re:** | : | **MDL Docket No.** |
| | : | **4:03CV1507WRW** |
| | : | |
| **PREMPRO PRODUCTS LIABILITY LITIGATION** | : | **ALL CASES** |
| | : | |
| | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August, 2010, a true and correct copy of the foregoing REPLY TO WYETH'S: (1) OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO ADMIT PLAINTIFFS GENERAL CAUSATION EVIDENCE ON ESTROGEN-ONLY HORMONE THERAPY REGIMENS AND BREAST CANCER AND MEMORANDUM IN OPPOSITION TO (2) CROSS-MOTION *IN LIMINE* TO EXCLUDE CERTAIN OPINIONS OFFERED BY PLAINTIFFS' EXPERTS was electronically filed with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

Ralph M. Cloar, Jr ralph.cloar@cloarlawfirm.com, lynn.cooper@cloarlawfirm.com

Gail O. Matthews rsanders@msslawfirm.com

William Gary Holt HoltG@garyholtlaw.com, flournoya@garyholtlaw.com, walasb@garyholtlaw.com

Alston Jennings, Jr ajenningsjr@wlj.com, bstafford@wlj.com

Janet L. Pulliam jpulliam@williamsanderson.com, dguss@williamsanderson.com, jguess@williamsanderson.com

Glenn W. Jones gjones@barberlawfirm.com, mandress@barberlawfirm.com, theresa.billingsley@barberlawfirm.com

Jim L. Julian jjulian@cnjlaw.com, chelmich@cnjlaw.com, mbrewer@cnjlaw.com

Elizabeth Robben Murray murray@fridayfirm.com, TMiller@fridayfirm.com, cbedsole@fridayfirm.com

James Gerard Schulze gschulze@ebslawfirm.com, dbaker@ebslawfirm.com, gerrysch@aol.com, gerrysch@yahoo.com, kstacy@ebslawfirm.com

Steven W. Quattlebaum quattlebaum@qgtb.com, khove@qgtb.com, troberts@qgtb.com

Lyn Peeples Pruitt lpruitt@mwlaw.com, bhopper@mwlaw.com

Gail Ponder Gaines debbie.griffith@barberlawfirm.com, mandress@barberlawfirm.com

Richard M. Barnes hrtedar@kayescholer.com, rmb@gdldlaw.com

Thomas N. Sterchi sterchi@bscr-law.com, hale@bscr-law.com

Sam Berry Blair, Jr sblair@bakerdonelson.com, afrymire@bakerdonelson.com, cgraddy@bakerdonelson.com

Deborah S. Denton ddenton@wdt-law.com, jbryant@wdt-law.com

James Andrew Vines avines@wlj.com, mmitchell@wlj.com

Frederick W. Morris frederick.morris@leonard.com, alan.vickery@sdma.com, craig.bratsch@leonard.com, kathryn.engebrit@leonard.com, kristine.remjeske@leonard.com

Jay Phillip Mayesh maoedar@kayescholer.com

James A. Morris, Jr (Terminated) contact@jamlawyers.com

Brian P. Cuthbertson brian.cuthbertson@mylanlabs.com

Dan K. Webb dwebb@winston.com, esnapp@winston.com

Michel F. Mills (Terminated) lagunalaw@hotmail.com

F. Lane Heard, III lheard@wc.com, cholmes@wc.com, lmullins@wc.com

John W. Vardaman, Jr jvardaman@wc.com

Stephen L. Urbanczyk surbanczyk@wc.com, inocho@wc.com

Clayborne S. Stone cstone@williamsanderson.com, jcartwright@williamsanderson.com

Brandon B. Cate bcate@qgtb.com, pcooper@qgtb.com, sjackson@qgtb.com

Sarah E. Greenwood sarah.greenwood@hmrmlaw.com, paula.golleher@hmrmlaw.com

Joseph P. Thomas jthomas@ulmer.com

Michael L. Hardy Mike.hardy@thompsonhine.com

Maibeth J. Porter mporter@maynardcooper.com, cfountaine@maynardcooper.com, htmdl@wc.com, sladuke@maynardcooper.com

Erik Brett Walker erik@hkhlaw.com, cheri@hkhlaw.com, erickson@hkhlaw.com, thardin2@hkhlaw.com

Charles R. Houssiere, III choussi@hdhtex.com, rkauffman@hdhtex.com

Shawn F. Khorrami skhorrami@kpalawyers.com, bbarlow@kpalawyers.com, bdejban@kpalawyers.com, dpollard@kpalawyers.com, jkenna@kpalawyers.com, rlk@kbklawyers.com

Patricia Mitchell atlafhrug9@aol.com

Tobias L. Millrood TMillrood@pbmattorneys.com, amachak@pbmattorneys.com, bsharma@pbmattorneys.com, mleckman@pbmattorneys.com

Robert K. Jenner rjenner@medlawlegalteam.com

Richard S. Lewis rlewis@hausfeldllp.com

Kenneth M. Suggs ksuggs@medlawlegalteam.com

Zoe B. Littlepage zoe@littlepagebooth.com, april@littlepagebooth.com, natasha@littlepagebooth.com

Jay H. Henderson jhenderson@hbelaw.com, delmore@crusescott.com, dmartin@crusescott.com, hpack@crusescott.com

Mary Hunnell Smith mhs@smithsmithlaw.com

Karen R. Bennett krbennett@germer.com

Robert W. Sparks robert.sparks@dechert.com, debra.ogorman@dechert.com

Matthew V. Brammer mbrammer@ulmer.com

Alan R. Vickery alan.vickery@sdma.com

G. Dawn Shawger dawn.mccord@sdma.com, arron.fox@sdma.com, gail.fountain@sdma.com

Linda S. Svitak lsvitak@faegre.com, dboehme@faegre.com

Amy R. Fiterman afreestone@faegre.com, shanscom@faegre.com

James A. O'Neal joneal@faegre.com, bzabawa@faegre.com, shanscom@faegre.com

Russell G. Thornton rthornton@strlaw.net, ekinslow@strlaw.net

John D. Winter jwinter@pbwt.com, rseitz@pbwt.com

Steven J. Glickstein arothman@kayescholer.com, maoedar@kayescholer.com

Charles P. Goodell, Jr hrtedar@kayescholer.com, cpg@gdldlaw.com

Michael L. Williams mwilliams@wdolaw.com, esullivan@wdolaw.com

Tor A. Hoerman thoerman@simmonscooper.com

Steven D. Davis sdavis@torhoermanlaw.com, jselke@torhoermanlaw.com

John P. Borger jborger@faegre.com, bzabawa@faegre.com, sbeety@faegre.com

Eugene C. Brooks, IV gbrooks@brooks-law.com, rbrinkley@brooks-law.com

Gina M. Saelinger gsaelinger@ulmer.com, mboden@ulmer.com

Steve M. Faries sfaries@jamlawyers.com

Kerry Carson Green kc.green@dinslaw.com

David Michael Macdonald dmacdonald@macdonalddevin.com, csanderson@macdonalddevin.com, jleblanc@macdonalddevin.com

Irwin B. Levin Ilevin@cohenandmalad.com

Brian A. Troyer brian.troyer@thompsonhine.com

James D. Robenalt matthew.liebson@thompsonhine.com

Robert F. Ware rob.ware@thompsonhine.com

Jane E. Bockus jeb@ctw.com, kwe@ctw.com, mp2@ctw.com

Robert Allen Schwartz bschwartz@galyen.com, rlafont@galyen.com

Paul S. Penticuff penticuff@bscr-law.com, quick@bscr-law.com

Alan M. Winchester awinchester@harrisbeach.com, amwinchester@gmail.com, sslade@harrisbeach.com

Susan M. Sharko susan.sharko@dbr.com, timothy.fraser@dbr.com

Gale Diane Pearson attorneys@outtech.com

Stuart M. Feinblatt sfeinblatt@sillscummis.com, cfalletta@sillscummis.com, vlodato@sillscummis.com

M. King Hill, III mkhill@venable.com, dcbitzelberger@venable.com

Joseph P. H. Babington jpb@helmsinglaw.com, cer@helmsinglaw.com

Russell C. Buffkin rcb@helmsinglaw.com, cer@helmsinglaw.com

Amy S. Harris aharris@macdonalddevin.com, pmikula@macdonalddevin.com

John B. Tally, Jr jtally@rumberger.com

F. M. Haston, III hrtedar@kayescholer.com, thaston@babc.com

Patrick Lysaught lysaught@bscr-law.com, singleton@bscr-law.com

Alan E. Rothman arothman@kayescholer.com, asolow@kayescholer.com, hrtedar@kayescholer.com, maoedar@kayescholer.com

Clem C. Trischler cct@pietragallo.com, bill.rodgers@mylan.com, brian.cuthbertson@mylan.com, ejh@pietragallo.com, tak@pietragallo.com

Leslie W. O'Leary bsteinle@wdolaw.com, loleary@wdolaw.com

Gina Bardwell Tompkins gsaelinger@ulmer.com, gina.tompkins@pmp.org

Jodi B. Kalagher jkalagher@goodwinprocter.com

Debra D. O'Gorman debra.ogorman@dechert.com, luis.lopez@dechert.com

Andrew H. Myers hrtedar@kayescholer.com, myers@wtotrial.com

Jack Edward Urquhart jeu@ctw.com, kc2@ctw.com, led@ctw.com, slm@ctw.com

Jill M. Ondos bill.rodgers@mylanlabs.com

Christopher T. Kirchmer ckirchmer@provostumphrey.com, aarceneaux@provostumphrey.com, alee@provostumphrey.com, bcopeland@provostumphrey.com

Shawna N. Pinkerton spinkerton@stebbinsandpinkerton.com,

bhager@stebbinsandpinkerton.com

Leo Gerard Daly ldaly@grogangraffam.com, cfitzpatrick@grogangraffam.com

Joseph C. Gjonola jgjonola@girardikeese.com

Sandra Jane Wunderlich gsaelinger@ulmer.com, mboden@ulmer.com

Thomas G. Wilson wilsonlaw@suddenlink.net, tina@wilsonlawpllc.com, tom@wilsonlawpllc.com

John J. Carey jcarey@careydanis.com, hcarey@careydanis.com, tmarko@careydanis.com

Benjamin A. Bertram benbertram@bertramgraf.com, jferguson@bertramgraf.com, jkeen@bertramgraf.com

Bonnie J. Beavan hrtedar@kayescholer.com, bjb@gdldlaw.com

Daniel W. Sigelman bpratt@cohenmilstein.com

Christopher L. Goodman cgoodman@foleymansfield.com, rlorey@foleymansfield.com

James A. Frederick jaf@gdldlaw.com, bbb@gdldlaw.com

/s/ Alex D. McLaughlin
Alex D. McLaughlin (WVSB # 9696)
**THE CALWELL PRACTICE, PLLC**
Law and Art Center, West
500 Randolph Street
Charleston, West Virginia 25302
(304)343-4323
(304)344-3684 (fax)
amclaughlin@calwelllaw.com
*ATTORNEY FOR THE PLAINTIFFS*

## SERVICE LIST

### STEERING COMMITTEE MEMBERS

Mr. Richard Lewis
HAUSFELD, LLP
1700 K Street NW, Suite 650
Washington, DC 20005

Mr. Shawn Khorrami
KHORRAMI POLLARD & ABIR, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, CA 90071

Christopher T. Kirchmer
PROVOST UMPHREY
490 Park Street
P.O. Box 4905
Beaumont, Texas 77704

James A. Morris, Jr.
MORRIS LAW FIRM
11614 Bee Caves Road, Suite 220
Austin, Texas 78738

Mr. Robert K. Jenner
JANET, JENNER & SUGGS
1829 Reisterstown Road, Suite 320
Baltimore, MD 21208
Mr. Tobias L. Millrood

POGUST BRASLOW MILLROOD
8 Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428

Mr. Ken Suggs
JANET, JENNER & SUGGS
500 Taylor Street
Columbia, SC 29201

Mr. Mike Williams
WILLIAMS DAILEY O'LEARY CRAINE
AND LOVE, P.C.
9755 SW Barnes Road, Suite 450
Portland, OR 97225-6681

Mr. Ralph M. Cloar Jr.
Suite 640
1501 N. University Avenue
Little Rock, AR 72201

Mr. Irwin B. Levin
COHEN & MALAD, LLP
One Indian Square, Suite 1400
Indianapolis, IN 46204

### LEAD AND LIASON COUNSEL

Mr. Gary Holt
GARY EUBANKS & ASSOCIATES, LTD
708 West Second Street
P.O. Box 3887
Little Rock, Arkansas 72203-3887

Ms. Zoe Littlepage
LITTLEPAGE BOOTH
2043A W. Main Street
Houston, TX 77098