**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | : | **MDL Docket No. 4:03-cv-01507-BRW** |
| | : | |
| **PREMPRO PRODUCTS LIABILITY** | : | *Mitchell v. Wyeth* |
| **LITIGATION** | : | **4:05-cv-01295-BRW** |
| | : | |

**MEMORANDUM IN SUPPORT OF WYETH'S MOTION TO EXCLUDE ANY
GENERAL AND SPECIFIC CAUSATION OPINION THAT PREMPRO CAUSES
ESTROGEN-RECEPTOR-POSITIVE / PROGESTERONE-RECEPTOR-NEGATIVE
(ER+/PR–) BREAST CANCER**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

PROCEDURAL POSTURE .................................................................................... 7

STATEMENT OF FACTS ...................................................................................... 7

I.     Background on ER+/PR– Breast Cancer ......................................................... 7

     A.     Growth Pathways and Normal Breast Cell Development ....................... 8

     B.     Breast Cancer Development ................................................................. 9

     C.     Breast Cancer That Is Negative for Progesterone Receptors .............. 11

II.     The PSC's Prior Positions and Theories ...................................................... 14

III.     Mitchell Case Facts ...................................................................................... 17

PLAINTIFF'S EXPERT EVIDENCE .................................................................. 19

IV.     Undisputed Methodological Principles ......................................................... 19

     A.     Formulation ....................................................................................... 19

     B.     Totality of Evidence .......................................................................... 21

     C.     Statistical Significance ....................................................................... 23

     D.     Specific Causation Methodology Outside of Litigation ..................... 24

V.     The PSC's Experts ....................................................................................... 26

     A.     Dr. Kathleen Pritchard ...................................................................... 26

     B.     Dr. Graham Colditz ........................................................................... 30

     C.     Dr. Vijayakrishna K. Gadi ................................................................ 33

     D.     Dr. Paul Michaels .............................................................................. 35

     E.     Dr. Elizabeth Naftalis ........................................................................ 37

LEGAL ARGUMENT .......................................................................................... 39

VI.     THE COURT SHOULD EXCLUDE ANY OPINION THAT PREMPRO
     CAUSES ER+/PR– BREAST CANCER ...................................................... 40

     A.     The PSC's Experts Ignored Differences in Formulation .................... 40

     B.     The PSC's Experts Cherry-Picked Studies to Support Their Views ... 43

     C.     The Prempro Studies the PSC's Experts Rely on Lack Statistical
     Significance ....................................................................................... 44

# TABLE OF CONTENTS
### (continued)

**Page**

D.     The Relevant Epidemiological Studies Do Not Provide Any Reliable Evidence That Prempro Increases the Risk of ER+/PR– Breast Cancer ............ 46

     1.     WHI Shows No Increased Risk of ER+/PR– Breast Cancer ................... 47

     2.     The Relevant Observational Studies Show No Increased Risk of ER+/PR– Breast Cancer................................................................................ 47

VII.     THE COURT SHOULD EXCLUDE ANY OPINION THAT PREMPRO CAUSED OR OTHERWISE CONTRIBUTED TO MS. MITCHELL'S BREAST CANCER ................................................................................................. 50

A.     Dr. Naftalis's Menopausal Symptoms Methodology Is Not Valid Here ............ 50

     1.     There Is No Reliable Basis to Conclude That Ms. Mitchell's ER+/PR– Breast Cancer Was "Hormone-Dependent" ............................ 51

     2.     Dr. Naftalis Now Concedes That Only Women With No Detectable Estrogen Lack Sufficient Internal Estrogen to Develop ER+ Breast Cancer................................................................................. 52

     3.     The Presence of Menopausal Symptoms Cannot Reliably Identify Women Who Have No Detectable Estrogen ........................................... 55

         a)     Hot Flashes................................................................................... 57

         b)     Vaginal Atrophy.......................................................................... 57

CONCLUSION.................................................................................................................... 58

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barber v. United Airlines, Inc.*,
    17 F. App'x 433 (7th Cir. 2001) ............................................................................43

*Caraker v. Sandoz Pharms. Corp.*,
    188 F. Supp. 2d 1026 (S.D. Ill. 2007)...................................................................45

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)................................................................................... *passim*

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)..............................................................................................44

*Glastetter v. Novartis Pharms. Corp.*,
    252 F.3d 986 (8th Cir. 2001) ...............................................................................40

*Hollander v. Sandoz Pharms. Corp.*,
    289 F.3d 1193 (10th Cir. 2002) ...........................................................................40

*In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.*,
    524 F. Supp. 2d 1166 (N.D. Cal. 2007) ...............................................................43

*In re Prempro Prods. Liab. Litig.*,
    586 F.3d 547 (8th Cir. 2009) ..................................................................... *passim*

*In re Prempro Prods. Liab. Litig.*,
    738 F. Supp. 2d 887 (E.D. Ark. 2010)....................................................... *passim*

*In re Prempro Prods. Liab. Litig.*,
    ___ F. Supp. 2d ___, 2011 WL 178574 (W.D. Ark. Jan. 19, 2011) ...................3, 40

*In re Seroquel Prods. Liab. Litig.*,
    6:06-md-1769, 2009 WL 3806434 (M.D. Fla. June 18, 2009)..............................45

*McClain v. Matabolife Int'l, Inc.*,
    401 F.3d 1233 (11th Cir. 2005) ........................................................................3, 40

*Norris v. Baxter Healthcare Corp.*,
    397 F.3d 878 (10th Cir. 2005) .............................................................................43

*Pritchard v. Dow Agro Scis.*,
    705 F. Supp. 2d 471 (W.D. Pa. 2010)...................................................................44

*Soldo v. Sandoz Pharms. Corp.*,
    244 F. Supp. 2d 434 (W.D. Pa. 2003)......................................................................................45

*Wagner v. Hesston Corp.*,
    450 F.3d 756 (8th Cir. 2006) ...............................................................................................40

*Wells v. SmithKline Beecham Corp.*,
    601 F.3d 375 (5th Cir. 2010) ...............................................................................................44

**OTHER AUTHORITIES**

Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE
    (2nd Ed. 2000) ...........................................................................................................22, 23, 24

Wyeth submits this brief in support of its motion to exclude any expert opinion that Prempro causes estrogen-receptor-positive/progesterone-receptor-negative (ER+/PR–) breast cancer and to exclude any specific causation opinion that Prempro caused Plaintiff Bobbie Mitchell's ER+/PR– breast cancer.

## PRELIMINARY STATEMENT

Throughout this litigation, the Plaintiffs' Steering Committee ("PSC") and its experts have based their claims on a theory that Prempro causes breast cancer that is positive for *both* estrogen receptors and progesterone receptors (ER+/PR+).[1]  PSC attorneys have told judges and juries that "the presence of *both estrogen and progesterone receptors* in a tumor indicates that the tumor can and does respond to estrogen"[2] and that if a plaintiff "has an *ER/PR+ cancer*, that means it's being fueled by the drugs."[3]  The PSC's leading general causation expert, Dr. Graham Colditz, testified that the specific type of breast cancer that Prempro allegedly causes is "estrogen receptor/progesterone receptor positive breast cancer":

> Q.     And the type of breast cancer that you believe E-plus-P
>        combination therapy causes is what?
>
> A.     E plus P causes *estrogen receptor/progesterone receptor-
>        positive* breast cancer.[4]

Dr. James Beck, a practicing oncologist and recent MDL expert for the PSC, agrees:

---

[1]    *See, e.g.,* Plaintiff's Closing Statement, *Reeves v. Wyeth*, Sept. 11, 2006 ("*Reeves* Closing") at 3534:9-15 (excerpts attached as Ex. 1).

[2]    Plaintiff's Closing Statement, *Wilson v. Wyeth*, Oct. 19, 2010 ("*Wilson* Closing") at 1863:4-6 (emphasis added) (excerpts attached as Ex. 2).

[3]    Plaintiff's Opening Statement, *Foust v. Wyeth*, Jan. 27, 2010 ("*Foust* Opening") at 63:17-19 (excerpts attached as Ex. 3).

[4]    Tr. Test. of Dr. Graham Colditz, *Reeves v. Wyeth*, Aug. 23, 2006 ("Colditz Test. 8/23/06") at 414:20-23 (emphasis added) (excerpts attached as Ex. 4).

Q.   Must a breast cancer cell have evidence of estrogen and progesterone receptors on it in order for Prempro to have a harmful effect on that cell?

A.   *Yes.*[5]

Estrogen and progesterone receptors act as attachment points on a cell for the hormones estrogen and progesterone, respectively.  The PSC's current experts concede that estrogens (including the estrogen component of Prempro) cannot act on a cell that has no estrogen receptors.[6]  The same is true of progesterone receptors and progesterone.  If progesterone receptors are not present, then progesterone (including the progesterone component of Prempro) cannot act on that cell.[7]  Or, as Dr. Colditz puts it, "the physiological effects of progesterone are completely dependent on the presence of the human PGR [progesterone receptor]."[8]

Consistent with these positions, the PSC's experts have focused on estrogen and progesterone receptor percentages as the foundation of their medical causation methods.  For example, in *Scroggin*, Mrs. Scroggin's breast cancer was 100% positive for both receptors, meaning that 100% of the tumor cells stained positive for both estrogen and progesterone receptors.  *See In re Prempro Prods. Liab. Litig.*, 586 F.3d 547, 566 (8th Cir. 2009) ("Both the left and right tumors were one hundred percent positive for estrogen and progesterone

---

[5]   Deposition of James Foster Beck, M.D., *Wilson v. Wyeth*, Sept. 16, 2010 ("Beck Dep.") at 133:16-20 (emphasis added) (excerpts attached as Ex. 5).

[6]   Deposition of Dr. Baljit Singh, May 8, 2011, ("Singh Dep.") at 154:5-8 ("Q.  In any case, in order for estrogen to act on a cell, the cell needs to have an estrogen receptor. Right?  A. Yes.") (attached as Ex. 6); Deposition of Dr. Vijayakrishna K. Gadi, May 7, 2011 ("Gadi Dep") at 150:14-17 ("Q.  And having estrogen receptors is a necessary but not a sufficient condition for a cell to respond to estrogen, as well?  A. Generally, yes.") (attached as Ex. 7).

[7]   Singh Dep. at 154:9-12.

[8]   De Vivo, Colditz, et al. CANCER RES. 2003;63:5236-38 ("De Vivo 2003") at 5236 (attached as Ex. 8).

receptors."). Thus, based in part on the fact that Mrs. Scroggin's breast cancer was 100% positive for both receptors, the Eighth Circuit permitted Dr. Naftalis to infer that Mrs. Scroggin's breast cancer was "hormone dependent." *Id.*

Because Ms. Mitchell's breast cancer shows no evidence of progesterone receptors, the PSC's experts now claim that such evidence is not necessary to establish a reliable foundation for their opinions. To support this claim, the PSC submitted reports from five experts: Dr. Kathleen Pritchard, Dr. Graham Colditz, Dr. V.K. Gadi, Dr. Paul Michaels, and Dr. Elizabeth Naftalis. These reports are largely duplicative. For instance, whole paragraphs in Dr. Pritchard's and Dr. Colditz's reports are virtually identical, with both experts making the same spelling and citation errors. More importantly, all of these reports fail to satisfy the reliability requirements of *Daubert* and Rule 702, and violate many of the scientific tenets recognized by this Court in its previous *Daubert* rulings on estrogen-only and short-term use.

The PSC's experts fail to cite *a single study* showing a statistically significant relationship between exposure to Prempro and ER+/PR– breast cancer. Instead, they rely on methodologies and data that are plagued with the following reliability problems.

***Disregarding Formulation Differences.*** As this Court has held, "when an expert summarily attributes the effects of one substance to another similarly classified substance, the expert's methodology is not reliable." *In re Prempro Prods. Liab. Litig.*, ___ F. Supp. 2d ___, 2011 WL 178574, at *10 (W.D. Ark. Jan. 19, 2011); *see also In re Prempro Prods. Liab. Litig.*, 738 F. Supp. 2d 887, 893 (E.D. Ark. 2010) (excluding expert opinion that "did not distinguish between CEE and estradiol, nor explain how the substances were equivalent"). Despite the Court's prior rulings on this issue and despite conceding that the most relevant data is from studies of Prempro—as opposed to other hormone therapy formulations—the PSC's experts

ignored the majority of Prempro studies in favor of European studies involving different hormone therapy formulations taken at different doses.

**Cherry Picking Studies and Ignoring Contrary Data.**   In the Premarin-only decision, this Court admonished one expert who "selected study data that best supported her opinion, while downplaying contrary findings or conclusions." *In re Prempro*, 738 F. Supp. 2d at 891-92. The PSC's experts do the same here.  Despite agreeing that decisions about drug safety should be based on the totality of evidence, the PSC's experts admit that they did not conduct a thorough review of the literature, that they do not know how many total studies have evaluated Prempro use and ER+/PR– breast cancer, and that they do not know how many of those studies show no increase in breast cancer risk.  In lieu of an actual analysis of the data, the PSC's experts simply chose studies that allegedly support their conclusions and ignored the rest.

**Reliance on Non-Statistically Significant Data.**   As stated by this Court, an expert's reliance on data that is not statistically significant is grounds to question the scientific reliability of his or her opinions.  *In re Prempro*, 738 F. Supp. 2d at 892 (where expert "partially relied on data that is not statistically significant," this among other concerns "significantly undermine[s] the reliability of her proposed testimony.").  In this proceeding, the PSC's experts rely on non-significant findings from studies to suggest that Prempro "may" cause ER+/PR– breast cancer.[9] They concede, however, that these results are not reliable evidence of an increased risk, but are merely "hypothesis-generating."[10]  This does not pass muster under *Daubert*.

---

[9]   Deposition of Dr. Elizabeth Naftalis, May 11, 2011 ("Naftalis Dep.") at 91:17-21, 155:15-22, 173:22-175:5, 177:10-178:18 (attached as Ex. 9); Gadi Dep. at 256:7-257:11; Deposition of Dr. Kathleen Pritchard, Apr. 26, 2011 ("Pritchard Dep.") at 193:6-10 ("those are suggestive, that that group, there *may* be some effect in that group") (emphasis added) (attached as Ex. 10).

[10]   Gadi Dep. at 256:7-257:17.

*No Specific Causation Opinions.*   Whether a reliable methodology exists that can determine the cause of a ER+/PR– breast cancer is a common question in every ER+/PR– case. The parties selected four bellwether plaintiffs, one of whom is Ms. Mitchell, to test any such methodology.   Dr. Naftalis is the only PSC expert to put forward a specific causation methodology.   Unlike other cases, however, Dr. Naftalis never reviewed Ms. Mitchell's case facts or medical records, and therefore any specific causation opinions should be excluded on that basis alone.

*Symptoms Methodology Is Unreliable Based on the Mitchell Facts and Current Scientific Record.*   In connection with this *Daubert* proceeding, the PSC served Dr. Naftalis's specific causation report from a remand case pending in Alabama, *Scharff v. Wyeth,* 2:10-cv-220-WKW-WC.  The specific causation methodology set forth in that report cannot reliably be applied to the facts of the *Mitchell* case.   Unlike *Scroggin*, which involved an ER+(100%)/PR+(100%) tumor that Dr. Naftalis claimed to be "hormone-dependent," there is no evidence that Ms. Mitchell's ER+(99%)/PR–(0%) tumor was dependent on internal estrogen, internal progesterone, or Prempro for its growth.[11]

In *Scroggin*, the Eighth Circuit also found that "[t]here was no dispute at trial that hormone-receptor-positive tumors are dependent upon hormones for their growth." *Id*.  Here, based on this record, Wyeth does dispute that Ms. Mitchell's tumor was in any way dependent on hormones, and the PSC's own experts concede that breast cancers like Ms. Mitchell's do not need estrogen to grow, and that breast cancers can grow via multiple growth pathways:

> Q.   Do you believe that all ER-positive breast cancers require estrogen to grow?

---

[11]   Sept. 25, 2002 Record of Dr. L. Gene Singleton, Pathology Labs of Arkansas, BMitchell-TSCCA-000039-40 (all medical records herein are attached as Ex. 11).

A.     *No.  Some clearly can live without it.*[12]

The menopausal symptoms methodology also fails based on the state of the science today, which Dr. Naftalis concedes is rapidly evolving.[13]  Accumulating scientific evidence shows that menopausal symptoms—whether hot flashes, vaginal atrophy, or other symptoms— do not reliably predict whether a woman has insufficient internal hormones to get ER+/PR– breast cancer.  The PSC's experts also concede this point, directly contradicting Dr. Naftalis:

> Q.     My question is, you used the term "estrogen deficiency," and you defined that by making reference to a number of symptoms.  Do you believe that a person who has menopausal symptoms has insufficient estrogen to stimulate a breast cancer tumor?
>
> A.     *I did not say that, nor do I think that.*  I did not say that. That wasn't any part of my answer.[14]

Moreover, the very studies relied on by Dr. Naftalis in this proceeding prove why her methodology cannot reliably be applied to the facts of this case.  For example, based on her own foundational data, Dr. Naftalis now admits that any detectable amount of internal estrogen is carcinogenic and capable of causing ER+ breast cancer.[15]  At the same time, she concedes that the presence of menopausal symptoms, including vaginal atrophy, do not reliably predict

---

[12]   Gadi Dep. 300:12-14 (emphasis added); *see also* Singh Dep. at 154:13-14.

[13]   Naftalis Dep. at 281:9-283:9.

[14]   Supplemental Deposition of Dr. Paul Michaels, *Torkie-Tork v. Wyeth*, Sept. 25, 2010 ("Michaels *Torkie-Tork* Supp. Dep.") at 67:12-19 (emphasis added) (excerpts attached as Ex. 12).

[15]   Deposition of Dr. Elizabeth Naftalis, *Spinelli v. Wyeth*, Nov. 10, 2010, ("Naftalis *Spinelli* Dep.") at 39:6-41:5 (attached as Ex. 13); see also Naftalis Dep. at 20:7-22:12 ("Q. Is endogenous estrogen capable of causing breast cancer?  A. Yes, endogenous hormones can cause cancer.  Q. And are endogenous hormones or – carcinogenic?  A. In that case, what you're talking about, yes, they would be considered carcinogenic.").

whether a woman has internal hormone levels that are below the level of detection.[16]   Many

other studies, which Dr. Naftalis ignored in her analysis, further establish that menopausal

symptoms cannot be used as a basis to rule out internal hormones as the cause of Ms. Mitchell's

breast cancer.   Absent reliable evidence ruling out Ms. Mitchell's internal hormones as an

independent cause of her ER+/PR– breast cancer, Dr. Naftalis's specific causation methodology

cannot reliably be applied in this case.

Accordingly, for the reasons below, the Court should exclude any general causation

opinion that Prempro causes ER+/PR– breast cancer and any specific causation opinion that

Prempro caused Ms. Mitchell's ER+/PR– breast cancer.

## PROCEDURAL POSTURE

This motion is submitted as part of Wyeth's *Daubert* challenge involving HER2+ and/or

ER+/PR– breast cancer.   As part of that challenge, the parties selected eight bellwether cases:

four  HER2+  plaintiffs  and  four  ER+/PR–  plaintiffs.[17]   Ms. Mitchell is one of the ER+/PR–

bellwether plaintiffs.   As noted above, her tumor was ER+(99%) and PR–(0%).

## STATEMENT OF FACTS

**I.      BACKGROUND ON ER+/PR– BREAST CANCER**

The following background information is based on the testimony of the PSC's experts or

undisputed authoritative sources.

---

[16]   Naftalis *Spinelli* Dep. at 99:6-102:10.

[17]   *See* Wyeth's Mem. In Support of Mot. to Strike as Late the Second Expert Report of Dr.
Vijayakrishna K. Gadi at 1-2, MDL Doc. No. 2670.

A.       Growth Pathways and Normal Breast Cell Development

Growth factors and growth pathways allow healthy breast cells to grow and divide in an orderly and regulated manner.[18]  Growth factors are chemical messengers that help regulate the function of healthy breast cells.[19]   There are dozens of known growth factors (including hormones, insulin-like growth factor, human growth hormone, prolactin, and androgens) and many others that are as yet unknown.[20]  Growth factors typically exert their effects by interacting with specific receptors on breast cells, thereby stimulating (or inhibiting) one of many growth pathways present in the cells.[21]  The expression of growth factor receptors and the activity of the growth pathways are controlled by genes contained in the breast cell's DNA.[22]

Each growth pathway acts on a breast cell in a unique and complex manner.  In a healthy cell, no single pathway is responsible for regulating the cell's growth or activity, nor are all pathways always functional.[23]  Different growth pathways interact with each other, working together to ensure that breast cells grow and develop in an orderly and regulated manner.[24]

---

[18]   Deposition of Dr. Graham Colditz, *In re Hormone Therapy Litig.*, Dec. 18, 2006 ("Colditz Dep. 12/18/06") at 145:5-19 (attached as Ex. 14); Gadi Dep. at 209:23-210:1.

[19]   Gadi Dep. at 208:8-209:22; Testimony of Dr. Elizabeth Naftalis, *Esposito v. Wyeth Frye* Hearing, Apr. 8, 2010 ("Naftalis *Esposito* Hr'g") at 135:11-14 (excerpts attached as Ex. 15).

[20]   Colditz Dep. 12/18/06 at 145:20-147:20; Gadi Dep. 209:18-22.

[21]   Gadi Dep. at 209:2-10.

[22]   Gadi Dep. at 210:2-10.

[23]   Gadi 210:20-211:5.

[24]   Gadi Dep. at 209:23-210:1, 210:20-211:5, 317:19-25.

B.     **Breast Cancer Development**

While the precise manner in which a normal breast cell becomes a cancer cell is still poorly understood, it is generally accepted in the scientific community that the transformation from a normal cell to a cancerous cell begins or "initiates" when a mutation occurs in the cell's DNA.[25]   DNA contains a cell's genetic code, a set of instructions that determine how the cell functions.[26]   A mutation alters the genetic code in one of a number of ways.[27]   Even today, medical science knows very little about what causes mutations.[28]   The PSC and its experts concede, however, that Prempro does not "initiate" cancer or cause genetic mutations.[29]

Breast cell mutations regularly occur throughout every woman's life, from the time she is in the uterus until the day she dies.[30]   Most mutations are repaired by the body or do not affect critical parts of the genetic code and, thus, do not result in meaningful alteration in the cell's function.[31]   Mutations affecting parts of the genetic code that control growth cause a previously healthy cell to begin growing and dividing uncontrollably.   A cell that grows and divides

---

[25]   Singh Dep. at 88:22-89:18.

[26]   Gadi Dep. at 22:20-25.

[27]   Gadi Dep. at 23:14-25.

[28]   Singh Dep. at 89:19-90:14.

[29]   Expert Report of Dr. Elizabeth Naftalis, Mar. 15, 2011 ("Naftalis Rep.") at 27 (attached as Ex. 16); Colditz Dep. 12/18/06 at 212:14-213:23.

[30]   National Cancer Institute, *Acquired Mutations*, available at: http://www.cancer.gov/ cancertopics/understandingcancer/genetesting/page12 (last visited May 27, 2011) (attached as Ex. 17).

[31]   *Id*.

uncontrollably is by definition a cancer cell.[32]  The transition from a normal cell to a cancer cell

is known as "malignant transformation."[33]

Dr. Graham Colditz and other PSC experts have testified that the initial mutations that

lead to the development of breast cancer likely occur early in a woman's life, during her teenage

years or even while she is in the womb:

> Q. So was that a yes, that it takes approximately 28 years from the time the tumor is initiated from that first damage until the time it is detected as a breast cancer?
>
> A. Yes, approximately.
>
> Q. Okay. Fair enough. And it is your opinion that breast cancer starts, then, very early in life, long before a woman ever enters menopause, correct?
>
> A. Correct.
>
> Q. In fact, you think a lot of the real initiating events can happen while you're in utero, before you're born?
>
> A. It absolutely can start then and anywhere through to late life.[34]

Over the course of a woman's life, additional mutations can occur that complete the transition

from normal breast cell to breast cancer.[35]  On average, a cancer must have a billion cells before

it can be clinically detected, meaning that it had to double in size at least 30 times before it is big

---

[32]  Singh Dep. at 85:3-8.

[33]  Naftalis Dep. at 128:16-23.

[34]  Tr. Test. of Dr. Graham Colditz, *Nelson v. Wyeth*, Sept. 14, 2006 ("Colditz Test. 9/14/06") at 21:9-22 (attached as Ex. 18); Pritchard Dep. at 324:19-325:8 ('Women who develop breast cancer on Prempro have probably had those breast cancers initiated at some long-distant time, probably at least in their pre-menopausal years, maybe even prior to that, and I think that in that setting, the Prempro acts as a promoter."); Gadi Dep. 117:21-118:8.

[35]  Gadi Dep. at 18:10-19:10; Naftalis Rep. at 15.

enough to be clinically detectable.[36]  Although it is impossible to know when any particular cancer first developed, PSC expert Dr. Elizabeth Naftalis concedes that the first cancer cells can be present for 15 to 20 years before the cancer reaches a size that can be clinically detected.[37] Thus, by the time a woman like Ms. Mitchell is diagnosed with breast cancer, the cancer was likely present in her body for many years or even decades.[38]

### C.  Breast Cancer That Is Negative for Progesterone Receptors

Breast cancer is a heterogeneous disease.[39]  Different types of breast cancers, which can be classified as different "phenotypes," have distinct characteristics including different prognoses, treatments, and risk factor profiles.[40]  One of the ways doctors classify different types of breast cancer is based on the presence or absence of certain receptors in the cells of a tumor. The three primary receptors tested for are the estrogen receptor ("ER"), progesterone receptor ("PR"), and Human Epidermal growth factor Receptor 2 ("HER2").[41]  The results of these tests can provide information about how the breast cancer developed and the best way to treat it.[42] The PSC's experts concede that ER+/PR– tumors represent a distinct phenotype of the disease.[43]

---

[36]  Singh Dep. at 26:23-27:3.

[37]  Deposition of Dr. Elizabeth Naftalis, *Finn v. Wyeth*, June 18, 2010 ("Naftalis *Finn* Dep.") at 103:7-14 (attached as Ex. 19); Gadi Dep. at 21:25-22:19, 303:5-22; Beck Dep. at 53:5-19.

[38]  Pritchard Dep. at 236:1-13.

[39]  Gadi Dep. at 17:14-25.

[40]  Gadi Dep. at 198:13-199:4, 200:20-201:10.

[41]  Gadi Dep. at 172:24-173:2.

[42]  Singh Dep. at 193:2-23.

[43]  Gadi Dep. at 204:4-10 ("So we talked about phenotypically how they're different, and it also would seem that their outcomes are different. Patients who have those tumors tend to have a worse prognosis overall.").

One of the PSC's experts, based on his own research, has stated that "[i]ncidence rates and risk factors for breast cancer differ according to ER and PR status."[44]   ER+/PR– breast cancers generally have different risk factors, a worse prognosis, and are less responsive to treatment with anti-estrogen therapy than ER+/PR+ breast cancers.[45]

Estrogen and progesterone receptors act as binding sites in a cell for estrogen and progesterone, respectively.[46]   Hormones like estrogen and progesterone (as well as other growth factors) serve as the body's messengers, acting on breast cells to control growth, development, and cell function.[47]   Although the presence of receptors does not necessarily indicate that a particular growth pathway is active, the PSC's experts concede that receptors must be present in a cell for their respective hormones to take effect on that cell.  As Dr. Colditz explained:

> Q.   Let's say you have these hormones, estrogen and progesterone, but the cell doesn't have a receptor.
>
> A.   Well then, nothing happens to that cell.

[44]   Colditz, et al., J. NAT'L CANCER INST. 2004;96:218-28 ("Colditz 2004") at 218 ("Incidence rates and risk factors for breast cancer differ according to ER and PR status.  Thus, to accurately estimate breast cancer risk, breast cancer cases should be divided according to ER and PR status of the tumor.") (attached as Ex. 20).

[45]   Singh Dep. at 66:23-67:3 ("Q.  So an ER positive/PR negative cancer has a worse prognosis than an ER positive/PR positive breast cancer. Is that correct? MR. ABNEY: Object to the form.  A.  That is correct. That is how I understand it."); *see also* Singh Dep. at 69:22-70:10; Deposition of Dr. Paul Michaels, May 8, 2011 ("Michaels Dep.") at 112:8-15 ("I think PR positive/PR negative, there's definitely a difference in how those tumors behave. PR negative/ER positive tumors tend to behave a little worse") (attached as Ex. 21); Colditz 2004 at 218; Naftalis Dep. at 183:7-23; Gadi Dep. at 204:4-10 ("Q.  Do ER-positive/PR-negative tumors have distinct clinical and biological characteristics compared to ER-positive and PR-positive tumors?  A.  Yes. So we talked about phenotypically how they're different, and it also would seem that their outcomes are different. Patients who have those tumors tend to have a worse prognosis overall.").

[46]   Gadi Dep. at 68:14-23.

[47]   Gadi Dep. at 67:11-15.

> Q.     Okay. So is the only way the message can get to the cell is if the cell has the receptor?
>
> A.     Right. That's the link between the hormones that are circulating in the blood and the action in the cells that are specific.[48]

In other words, if estrogen receptors are not present, then the PSC's experts concede that estrogen cannot act on that cell.[49] The same is true for progesterone receptors.[50] As Dr. Colditz stated, "the physiological effects of progesterone are completely dependent on the presence of the human PGR [progesterone receptor]."[51]

The PSC's experts also concede that the absence of progesterone receptors indicates that the estrogen receptor pathway is dysfunctional.[52] This is because progesterone receptors are the byproduct of an active estrogen receptor pathway.[53] Outside of litigation, Dr. Pritchard's research has concluded that "[t]he progesterone receptor (PgR) is an important biomarker as its expression is estrogen-dependent, and, therefore, indicative of an intact ER signaling

---

[48]   Colditz Test. 8/23/06 at 396:8-15.

[49]   Singh Dep. at 154:5-8 ("Q.  In any case, in order for estrogen to act on a cell, the cell needs to have an estrogen receptor. Right?  A.  Yes."); Gadi Dep. at 150:14-17 ("Q.  And having estrogen receptors is a necessary but not a sufficient condition for a cell to respond to estrogen, as well?  A.  Generally, yes.").

[50]   Singh Dep. at 154:9-12.

[51]   De Vivo 2003 at 5236.

[52]   Deposition of Dr. Thomas Brown, May 10, 2011 ("Brown Dep.") at 66:23-67:3 ("Q.  And another potential explanation for PR negativity in ER positive breast cancers would be a nonfunctional estrogen receptor pathway, correct?  A.  I believe that would be another scenario.") (attached as Ex. 22); Gadi Dep. at 111:5-23; Colditz Dep. 12/18/06 at 157:21-158:7 ("Q.  So, the mere presence of the receptor doesn't tell you that the receptor is functioning, correct? A.  Correct.").

mechanism."[54]   In other words, when the estrogen receptor pathway is fully functional, one expects to see a significant number of progesterone receptors in the cell.[55]   Conversely, when there are no progesterone receptors present in a cell, then it suggests that the estrogen receptor pathway is not active.[56]

## II.    THE PSC'S PRIOR POSITIONS AND THEORIES

Throughout this litigation, the PSC and its experts have based their causation opinions on a theory that Prempro causes breast cancer that is positive for *both* estrogen and progesterone receptors.   In courtrooms around the country, PSC lawyers have told judges and juries that Prempro causes ER+/PR+ breast cancer and that both ER and PR are required for Prempro to cause breast cancer:

- "Estrogen is the water, progestin is the fertilizer. And what's interesting is that it only promotes the lesions that are sensitive to the drugs, the *ER/PR-positive* tumors."[57]

- "[T]he presence of *both estrogen and progesterone receptors* in a tumor indicates the tumor can and does respond to estrogen"[58]

---

[53]   Naftalis Rep. at 18; Singh Dep. at 198:19-199:13; Gadi Dep. at 131:19-23 ("Q.  And a breast cancer cell with functional estrogen receptors would -- normally you would expect to see high levels of both estrogen receptors and progesterone receptors; correct?  A.  Yes.").

[54]   Goss, Pritchard et al., J. CLIN. ONCOL. 2007;25:2006-11 (attached as Ex. 23).

[55]   Naftalis Rep. at 18; Singh Dep. at 198:19-199:13; Gadi Dep. at 131:19-23 ("Q.  And a breast cancer cell with functional estrogen receptors would -- normally you would expect to see high levels of both estrogen receptors and progesterone receptors; correct?  A.  Yes.).

[56]   Brown Dep. at 66:23-67:3 ("Q.  And another potential explanation for PR negativity in ER positive breast cancers would be a nonfunctional estrogen receptor pathway, correct?  A.  I believe that would be another scenario."); Gadi Dep at 111:5-23; Colditz Dep. 12/18/06 at 157:21-158:7 ("Q.  So, the mere presence of the receptor doesn't tell you that the receptor is functioning, correct? A.  Correct.").

[57]   *Reeves* Closing at 3534:12-15.

- "And so this low estrogen woman, who gets high levels of these hormones in her breast every month for five years develops a particular type of cancer, a particular type of breast cancer, and it's a type of breast cancer that is called hormone receptive positive, *estrogen and progesterone receptor positive*."[59]

- "If she has an *ER/PR+* cancer, that means it's being fueled by the drugs, or it's being fueled by estrogen and progestin."[60]

A central element of this causation opinion has been the PSC's concession, based on the findings of WHI and accumulating data, that "estrogen alone is not a cause of breast cancer."[61] As a result of this concession, the PSC lawyers necessarily had to implicate the progesterone component of Prempro, arguing that this additional factor acted on the progesterone receptor and somehow caused breast cancer.[62]   The PSC's choice of trial exhibits (such as the examples below) reflect this approach.  They illustrate that the use of Prempro (which the PSC short-hands as "E+P") allegedly leads to an individual plaintiff who "got ER+ & PR+ breast cancer."[63]

---

[58]  *Wilson* Closing at 1863:4-6; *see also* Elizabeth Naftalis, Demonstratives, *Wilson v. Wyeth*, Oct. 5, 2010 ("Naftalis Demonstrative") (excerpt attached as Ex. 24).

[59]  Plaintiff's Opening Statement, *Barton v. Wyeth*, Sept. 16, 2009 ("*Barton* Opening") at 61:16-22 (emphasis added) (excerpts attached as Ex. 25).

[60]  *Foust* Opening at 63:17-19 (emphasis added).

[61]  Plaintiff's Opening Statement, *Scroggin v. Wyeth*, Feb. 5, 2008 ("*Scroggin* Opening") at 88:13-15 (excerpts attached as Ex. 26); *see also* Plaintiff's Closing Statement, *Foust v. Wyeth*, Feb. 23, 2010 ("*Foust* Closing") at 59:10-11 ("We know that Premarin doesn't cause breast cancer.") (excerpts attached as Ex. 27).

[62]  *Scroggin* Opening at 88:13-17 ("Now, what we know about estrogen today, after years of study, we know that estrogen alone is not a cause of breast cancer. Estrogen alone is not a cause of breast cancer. *It is the combination of estrogen and progesterone that causes breast cancer.*") (emphasis added).

[63]  *See, e.g.*, Naftalis Demonstrative.   The PSC also argues that the SEER data shows an increased risk of ER+/PR+ breast cancer.  *Reeves* Closing at 3537:10-20.



    The PSC's experts have adopted the same position that Prempro causes breast cancer that is positive for *both* estrogen and progesterone receptors.[64]  When determining whether Prempro played a role in a plaintiff's breast cancer, the PSC's experts have repeatedly used the presence of PR as the evidence that the ER was activated and that hormones were the "driving force for development of the tumor."[65]  The PSC's experts considered it "most important" "that [the tumor] [wa]s estrogen *and* progesterone receptor positive" when determining whether Prempro had an effect on a woman's breast cancer.[66]  That is because they defined a "hormone sensitive"

---

[64]   Colditz Test. 8/23/06 at 414:20-23 (emphasis added).

[65]   Report of Dr. Michael Wertheimer, *Lescinski v. Wyeth*, Nov. 9, 2009 at 28-29 (attached as Ex. 28); *see also* Beck Dep. at 33:19-22 ("And the other thing that tells me that it probably has a hormone basis is if the estrogen and progesterone receptors are present on the tumor cells.").

[66]   Deposition of Dr. Elizabeth Naftalis, *Trevino v. Wyeth*, May 31, 2007 ("Naftalis *Trevino* Dep.") at 46:11-25 (emphasis added) (excerpts attached as Ex. 29); Deposition of Dr. Elizabeth Naftalis, *Scroggin v. Wyeth*, July 10, 2007 at 38:19-39:20 ("Naftalis *Scroggin* Dep.") (excerpts attached as Ex. 30) ("These cells are susceptible to estrogen and progesterone.  They have estrogen and progesterone receptors, and the combination hormone therapy attaches to those receptors and promotes the cells to cancer cells").

or "hormone dependent" tumor as one that was estrogen receptor *and* progesterone receptor positive.[67]

Now, the PSC's experts here—some new and some veterans in this litigation—opine that Prempro can cause breast cancers that test negative for the progesterone receptor.

## III.   *MITCHELL* CASE FACTS

Plaintiff Bobbie J. Mitchell was born on November 23, 1939.[68]  Her medical history is notable a family history of cancer.  She had one paternal uncle with lung cancer, one paternal uncle with brain cancer, and a third paternal uncle with prostate cancer.[69]  At age 49, Ms. Mitchell went through menopause,[70] and she experienced hot flashes, mood swings and irritability.[71]  Medical records suggest that she took hormone replacement therapy, including Prempro, from about 1991 until 2002.[72]

---

[67]   Colditz Test. 8/23/06 at 424:24-425:25; Report of James Beck, M.D., *Wilson v. Wyeth*, Sept. 10, 2010 at 4 ("Beck Rep.") ("Breast cancer that has estrogen and progesterone receptors is regarded as hormone dependent.") (attached as Ex. 31); Tr. Test. of Dr. Elizabeth Naftalis, *Wilson v. Wyeth*, Oct. 6, 2010 ("Naftalis Test. 10/6/10") at 636:21-637:3 (excerpts attached as Ex. 32).

[68]   Plaintiff's Supplemental Fact Sheet for Bobbie Mitchell, Nov. 19, 2010 ("PFS") at 4, BMitchell-PHPFS4-000079-115 (attached as Ex. 33).

[69]   Oct. 16, 2002, Dr. Balagopalan A. Nair, Baptist Medical Center, BMitchell-GSSmart-000901-902.

[70]   PFS at 13.

[71]   Sept. 10, 1991 Record of Dr. Greg Smart, Medical Center of South Arkansas, BMitchell-GSSmart-001046.

[72]   *Id.*; July 10, 2002 Record of Dr. Greg Smart, BMitchell-GSSmart-000935.

On September 3, 2002, a right mammogram showed that Ms. Mitchell had a one centimeter tumor in her right breast.[73]   An ultrasound confirmed an area that was highly suspicious for malignancy.[74]   The next day, a biopsy revealed invasive ductal cancer.[75]   On October 16, 2002, Ms. Mitchell underwent a mastectomy to remove her breast cancer.[76] According to the medical records, her tumor was ER+(99%) but PR–(0%).[77]

After her mastectomy, Ms. Mitchell's cancer was treated with chemotherapy,[78] then radiation, and five years of Arimidex (anti-estrogen therapy).[79]   In September 2006, four years after her initial diagnosis, Ms. Mitchell was diagnosed with metastases to her bones,[80] and in 2007 a new lesion appeared in her liver.[81]   She underwent more chemotherapy to treat these metastases, but the treatment was unsuccessful.   In April 2009, Ms. Mitchell's medical records

---

[73]   Sept. 3, 2002, Dr. Diana T. Jucas, Medical Center of South Arkansas, BMitchell-GSSmart-000927-29.

[74]   *Id*.

[75]   Sept. 4, 2002 Record of Dr. Michael B. Anreder, Associated Pathologists' Laboratory, P.A., BMitchell-GSSmart-000914-915;

[76]   Oct. 16, 2002 Record of Dr. James Hagans, III, Baptist Medical Center – Little Rock, BMitchell-BHMC-LR-MD-000133-134.

[77]   Sept. 25, 2002 Record of Dr. L. Gene Singleton, Pathology Labs of Arkansas, BMitchell-TSCCA-000039-40.

[78]   Jan. 15, 2003 Record of Dr. Balan Nair, Little Rock Hematology/Oncology, BMitchell-LRHOA-000081-82.

[79]   Mar. 26, 2003 Record of Dr. Balan Nair, Little Rock Hematology/Oncology, BMitchell-LHROA-000071-72; May 30, 2003 Record of Dr. Srini Vasan, Medical Center of South Arkansas Radiation Therapy, BMitchell-GSSmart-000857.

[80]   Sept. 19, 2006 Record of Little Rock Hematology/Oncology Imaging Services, BMitchell-LRHOA-000218.

[81]   June 12, 2007 Record of Little Rock Hematology/Oncology Imaging Services, BMitchell-LRHOA-000263-265.

indicate that her symptoms suggested the cancer had spread to her brain.[82]  On April 16, 2009,

Ms. Mitchell passed away.[83]

**PLAINTIFF'S EXPERT EVIDENCE**

**IV.     UNDISPUTED METHODOLOGICAL PRINCIPLES**

The PSC has put forward five experts who opine that Prempro causes ER+/PR– breast

cancer.  They are Dr. Pritchard, Dr. Colditz, Dr. Gadi, Dr. Naftalis, and Dr. Michaels.[84]  The

following methodological principles come entirely from the testimony of the PSC's own experts

in this proceeding or from undisputed authoritative sources.

**A.     Formulation**

The PSC's experts concede that formulation matters.  When assessing the safety of a

particular medication, the most relevant studies are those that evaluate the specific medication

and the relevant dose at issue—not those that study other medications and other doses.[85]  This is

because different medications have different effects at different doses.[86]  This is particularly true

in the context of hormone replacement therapy.  As Dr. Colditz put it, "[l]umping all hormones

---

[82]  Apr. 27, 2009 Record of Dr. Greg Smart, Medical Center of South Arkansas, BMitchell-
UnionMC-MD-000061.

[83]  PFS at 2.

[84]  Dr. Thomas Brown and Dr. Baljit Singh offer no opinions regarding ER+/PR– breast cancer.
*See generally* Expert Report of Dr. Thomas Brown, Apr. 11, 2011("Brown Rep.") (attached
as Ex. 34); Expert Report of Dr. Baljit Singh, Apr. 12, 2011 ("Singh Rep.") (attached as Ex.
35); *see also* Brown Dep. at 7:19-8:4, 14:17-15:7; Singh Dep. at 76:12-77:13.

[85]  Gadi Dep. at 189:17-190:2.

[86]  Gadi Dep. at 136:2-143:24; Singh Dep. at 127:17-19; Pritchard Dep. at 81:23-82:22.

and all cancer together is really not biologically relevant [to] understanding [] the causes of breast cancer."[87]

As this Court recognized in the Premarin-only decision, and as conceded by the PSC's experts, there are many different types of estrogen.[88]  Each is a different molecular compound, with a different chemical structure, different pharmacokinetic profile, different absorption rate, different metabolization rate, and different effects depending on the dose.[89]  There are also many different types of progestins, the class of hormones in which progesterone belongs.   Like estrogens, different progestins have different effects at different doses.[90]  In fact, outside of litigation, Dr. Colditz published a study finding that different progestins have different effects.[91]

Prempro is one type of combination hormone therapy medication, which consists of conjugated equine estrogens ("CEE") and medroxyprogesterone acetate ("MPA").[92]  Other formulations of hormone therapy medications, particularly those in Europe, consist of different estrogen and progestin components.  Accordingly, just as different estrogens and progestins exert different effects, the PSC's experts also concede that different combination hormone therapy products are different molecular compounds with different chemical structures, different

---

[87]   Deposition of Dr. Graham Colditz, *In re Prempro Prods. Liab. Litig.*, Dec. 29, 2006 ("Colditz Dep. 12/29/06") at 526:7-22 (attached as Ex. 36).

[88]   Deposition of Dr. Kathleen Pritchard, *Scharff v. Wyeth*, May 9, 2011 ("Pritchard *Scharff* Dep.") at 71:21-72:16 (excerpts attached as Ex. 37).

[89]   Naftalis Dep. at 99:17-104:15; Gadi Dep. at 154:14-157:20.

[90]   Colditz Test. 9/14/06 at 78:8-79:12; Gadi Dep. at 136:2-143:24.

[91]   Hunter, Colditz et al., CANCER EPIDEMIOL. BIOMARKERS PREV. 2010;19:2496-2502 ("Colditz 2010") at 2502 (attached as Ex. 38).

[92]   Prempro Label, May 2010 at 1 (attached as Ex. 39).

pharmacokinetic profiles, and different effects on the body at different doses.[93] The PSC's experts likewise concede that different formulations of hormone therapy differ in terms of safety, efficacy, and breast cancer risk.[94] For this reason, the PSC's experts themselves have testified that it is important to "to be precise when we refer to the hormone combination we're trying to evaluate."[95] Similarly, when evaluating studies conducted in countries outside the United States, it is important to take into account the particular combination of hormone therapy used because "[t]he formulations in different countries do differ."[96] Thus, the PSC's experts agree that the best methodology is to focus on studies that used the specific drug in question.[97]

### B. Totality of Evidence

When making drug safety determinations, the PSC's experts also admit that it is important to analyze the totality of the evidence for the medication in question.[98] An examination of the totality of the evidence requires consideration of all data that address the issue in question. The PSC's experts agree that randomized controlled trials offer the best

---

[93] Singh Dep. at 146:25-150:23; Deposition of Dr. Elizabeth Naftalis, *Davidson v. Wyeth*, Dec. 17, 2010 ("Naftalis *Davidson* Dep.") at 119:2-120:5 (excerpts attached as Ex. 40); Gadi Dep. at 194:16-195:14; Pritchard *Scharff* Dep. at 71:13-19.

[94] *See supra* notes 91, 92, 93.

[95] Colditz Dep. 12/29/06 at 768:22-769:18.

[96] Tr. Test. of Dr. Graham Colditz, *Nelson v. Wyeth*, Jan. 17, 2007 ("Colditz Test. 1/17/07") at 57:10-15 (excerpts attached as Ex. 41); *see also* Naftalis *Davidson* Dep. at 118:9-24 (testifying that many of the brands of hormone therapy used by women in studies outside the United States do not contain the same formulations as Prempro).

[97] Singh Dep. at 150:19-23.

[98] Colditz Dep. 12/29/06 at 796:3-800:3; Singh Dep. at 34:5-11; Gadi Dep. at 205:15-207:5; Pritchard Dep. at 19:15-23:8.

evidence of causation.[99]   Randomized controlled trials provide the most reliable evidence of causation because they are "as free from bias as [researchers] can possibly get."[100] Observational studies, while helpful, are "much further down" on the evidence hierarchy.[101] This is because observational studies lack the controls of randomized controlled trials[102] and are limited in their ability to control for bias and confounding.[103]   In the context of hormone therapy and breast cancer, observational study data is limited by confounders such as family history, smoking, race, body mass index, and frequency of mammography screening.[104]

When looking across the totality of the evidence, the PSC's experts acknowledge that replication and consistency are critical methodological principles.[105]   The Federal Judicial Center's REFERENCE MANUAL ON SCIENTIFIC EVIDENCE states that "[i]n science, 'reliability' refers to reproducibility of results" and "[c]onsistency in these findings is an important factor in making a judgment about causation."[106]   Likewise, Dr. Colditz has written outside litigation that replication and consistency are critical for determining whether an observed effect is real:  "It is

---

[99]   Gadi Dep. at 121:22-124:1; Singh Dep. at 42:12-20; Colditz Dep. 12/18/06 at 241:13-244:9.

[100]   Singh Dep. at 280:5-294:9.

[101]   Deposition of Dr. Elizabeth Naftalis, *Esposito v. Wyeth*, June 19, 2008 ("Naftalis *Esposito* Dep.") at 89:11-23 (excerpts attached as Ex. 42).

[102]   Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE at 339-240 (2nd Ed. 2000) ("REF. MAN.") (excerpts attached as Ex. 43).

[103]   Pritchard Dep. at 34:3-36:6; Gadi Dep. at 165:16-171:8.

[104]   Gadi Dep. at 166:7-171:8; *see* Hennekens & DeMets, JAMA 2011;305:1134-35 at 1135 ("[A]ll observational analytic studies, no matter how well designed, conducted, analyzed, and interpreted, are hypothesis formulating as their inherent uncontrolled and uncontrollable confounding can be as big as the effect sizes.") (attached as Ex. 44).

[105]   Singh Dep. at 38:18-39:15; Gadi Dep. at 120:14-121:21.

only when the evidence from a number of studies is compiled and seen to be consistent that one can reach firm conclusions about a given epidemiologic relationship."[107]   In other words, if a statistical difference reflects a real biological effect, that statistical difference should be seen consistently across the total body of relevant evidence.

Given the importance of considering the totality of relevant evidence, the PSC's experts also acknowledge that cherry-picking statistical differences from one or two studies that support a position and ignoring other studies that contradict that position is scientifically inappropriate.[108] Scientific conclusions should be "based on the totality of the evidence, not picking out one statistical difference to use that as the sole source of evidence on the topic."[109]

### C.    Statistical Significance

Statistical significance is a pre-specified threshold used to determine whether a perceived association between two events (*e.g.*, taking a drug and getting a side effect) is real or whether the association is merely due to chance.[110]   It is measured in the context of p-values and confidence intervals.[111]   A p-value represents the probability that the observed difference

---

[106] *See* REF. MAN. at 102, 377.

[107] Hankinson, Colditz, et al., HEALTHY WOMEN, HEALTHY LIVES 504 (2001) (attached as Ex. 45).

[108] Naftalis *Davidson* Dep. at 110:1-8; Pritchard Dep. at 23:22-26:16; Colditz Dep. 1/17/07 at 19:13-20:17; Gadi Dep. at 205:15-207:5.

[109] Colditz Test.. 1/17/07 at 19:13-20:17.

[110] Deposition of Dr. Graham Colditz, *In re Prempro Prod. Liab. Litig.*, May 2, 2006 ("Colditz Dep. 5/2/06") at 161:8-162:22 (excerpts attached as Ex. 46).

[111] REF. MAN. at 121-25.

between two events will arise by chance alone if the study is repeated.[112]  In scientific research, the standard p-value is .05[113]  A confidence interval represents the "range of values calculated from the results of a study, within which the true value is likely to fall."[114]  "If the confidence interval crosses unity, the number 1 – in other words, it includes the number 1 in the middle of those two numbers – then the group is not statistically different from the control group."[115]

The PSC's experts rely on statistical significance testing when conducting their own studies.[116]  Indeed, "[t]he assessment of statistical significance is standard practice."[117]  Dr. Gadi, a practicing oncologist, testified that he only relies on statistically significant results when treating patients and that non-statistically significant results are merely hypothesis generating.[118]

### D.      Specific Causation Methodology Outside of Litigation

With the exception of Dr. Elizabeth Naftalis, the PSC's experts in this proceeding have testified that there is no reliable methodology to determine the cause of an individual woman's ER+/PR– breast cancer.[119]  For instance, Dr. Pritchard, a practicing oncologist, testified that she

---

[112]  *Id*. at 122.

[113]  Colditz Dep. 5/2/06 at 161:8-162:22; Gadi Dep. at 187:2-16.

[114]  REF. MAN. at 360.

[115]  Gadi Dep. at 186:9-14..

[116]  Singh Dep. at 43:16-45:17; Gadi Dep. at 186:9-189:16; Colditz Dep. 5/2/06 at 161:8-162:22.

[117]  Colditz Dep. 5/2/06 at 161:8-162:22.

[118]  Gadi Dep. at 189:9-16.

[119]  Brown Dep. at 136:24-137:9; Colditz Dep. 5/02/06 at 181:3-182:5; Deposition of Dr. Paul Michaels, *Gray v. Wyeth*, Apr. 7, 2008 ("Michaels *Gray* Dep.") at 48:1-5 (excerpts attached as Ex. 47); Singh Dep. at 91:2-20; Pritchard *Scharff* Dep. at 47:4-17.  Even Dr. Naftalis concedes there is no known error rate for her purported methodology.  Naftalis *Esposito* Hr'g at 151:2-10.

does not know of a validated method to determine what caused or contributed to an individual

woman's breast cancer:

> Q.    Do you know of any procedure that's been tested, shown to be reliable and has a known error rate for determining what caused or contributed to a particular woman's breast cancer?
>
> A.    A validated procedure for a particular woman?  No.
>
> Q.    And you yourself do not purport to have or know of a validated procedure for determining what caused or contributed to a particular woman's breast cancer.  And by validated procedure, I mean a procedure that's been tested, that's been shown to be reliable, and that has a known error rate of false positives and false negatives?
>
> A.    No.[120]

There is no test that can identify the cause of a woman's ER+/PR– breast cancer.[121]  As

another PSC expert, Dr. Gadi, explained, science has not yet developed to the point at which it is

possible to determine the primary pathway through which a cancer grows:[122]

> Q.    And is there -- would you be able to look at an individual woman who took Prempro, got ER-positive breast cancer, and determine whether or not she would have gotten it anyway?
>
> A.    Not on an individual basis. We know statistically, a lot [of] these women don't go on to get cancer.  Like I said, even with DCIS, 60 percent of those women would not have developed a cancer in the next ten years.  So for any given woman, we don't know that answer.  We just don't.
>
> Q.    Why not?

---

[120]  Pritchard *Scharff* Dep. at 47:4-17.

[121]  Singh Dep. at 91:2-20, Naftalis *Esposito* Hr'g at 148:5-11; Deposition of Dr. Elizabeth Naftalis, *Daniel v. Wyeth*, Mar. 21, 2006 ("Naftalis *Daniel* Dep.") at 210:10-16 (exceprts attached as Ex. 48); Michaels *Torkie-Tork* Supp. Dep. at 110:5-15.

[122]  Gadi Dep. at 93:20-94:13.

> A.      We're not there with our technology, our ability to analyze
>         those tumors, to make those types of predictions.[123]

There are no "individual markers of exposure at the tumor level to tell individual women which of their [risk] factors caused their cancer."[124]  Also, there are no markers or pathological features on a tumor that can show that a woman took hormone therapy[125] or that hormone therapy played a role in the growth of her ER+/PR– cancer.[126]

Moreover, after more than eight years of litigation, not a single treating doctor—in any Prempro lawsuit—has testified that he or she uses the breast cancer causation methodology that is discussed in more detail below.

## V.      THE PSC'S EXPERTS

### A.      Dr. Kathleen Pritchard

Dr. Kathleen Pritchard is an oncologist based in Toronto, Canada.  She offers a general causation opinion that Prempro causes ER+/PR– breast cancer, but she does not offer any specific causation opinion that Prempro caused Ms. Mitchell's ER+/PR– breast cancer.

*Qualifications.*  While Dr. Pritchard conducts some clinical research, she has no formal degree in epidemiology.[127]  She also is not a cancer biologist, and she does not conduct basic science research of any kind.[128]  Dr. Pritchard is not an expert on the different types of estrogens

---

[123]  Gadi Dep. at 299:1-14.

[124]  Colditz Dep. 5/02/06 at 181:3-182:10; *see also* Michaels *Gray* Dep. at 48:1-5.

[125]  Pritchard *Scharff* Dep. at 48:9-49:2.

[126]  Michaels *Gray* Dep. at 63:23-63:1.

[127]  Pritchard *Scharff* Dep. at 12:8-21.

[128]  Pritchard Dep. at 315:9-19.

and progestins, and she is unable to identify any of the specific estrogen or progestin components in Prempro.[129]

     ***Similarities with Dr. Colditz's Report.***   At her deposition, Dr. Pritchard testified that she wrote her expert report entirely on her own, without any help from PSC lawyers and without reviewing the reports of or communicating with the PSC's other experts.[130]   Despite this claim, Dr. Pritchard's primary analysis of studies that allegedly support her opinions is virtually identical to the general causation analysis contained in Dr. Colditz's report, right down to the same spelling and citation errors.   For instance, both Dr. Pritchard and Dr. Colditz cite a French study whose lead author is named Fabre, but they both misspell his name as "Farbre."[131]   They also both incorrectly cite the same study by an author named Li, even though that study contains no analysis of Prempro use and ER+/PR– breast cancer.[132]   Also, after drawing a distinction between studies involving Tamoxifen (which blocks estrogen receptors) and studies involving aromatase inhibitors (which block the production of internal estrogen), both Dr. Pritchard's and Dr. Colditz's reports incorrectly state that the Lamy and Elledge studies involve aromatase inhibitors, when they actually involve Tamoxifen.[133]   Dr. Pritchard could not explain these similarities.[134]

---

[129]   *Id*. at 315:9-19.

[130]   *Id*. at 136:17-140:16.

[131]   *Id*. at 144:15-146:1

[132]   *Id*. at 349:10-350:1.   At her deposition, Dr. Pritchard stated that she meant the other Li 2006 study, but that study also does not show an increase risk in the risk of ER+/PR– breast cancer.   *Id*. at 146:24-150:23.

[133]   *Id*. at 263:4-264:11; *see also* Report of Dr. Kathleen Pritchard, Apr. 18, 2011 ("Pritchard Rep.") at 8 (attached as Ex. 49); Colditz Rep. at 2; Lamy et al., BREAST CANCER RES. &

***Disregarding Formulation Differences.***   Dr. Pritchard cites five observational studies (Fabre, Fournier, Rosenberg, Chen, and Li) to support her claim that Prempro causes ER+/PR– breast cancer.[135]   Despite conceding that different formulations of hormone therapy have different effects, and that studies of Prempro—as opposed to other formulations—provide the most relevant data, three of her five studies (Fabre, Fournier, and Rosenberg) are European studies involving European formulations of hormone therapy.[136]   One of these studies (Fabre) did not involve combination hormone therapy at all, but instead examined the effects of progestin-only medications in premenopausal women.[137]   Of the two non-European studies cited by Dr. Pritchard, one of them (Chen) includes Prempro, but finds *no* increased risk of ER+/PR– breast cancer.[138]   The other (Li) does not even address the issue, as noted above.[139]

***Ignoring Contrary Data.***   Despite agreeing that analyses of drug safety should be based on the totality of available evidence, Dr. Pritchard admits that she "did not . . . conduct a formal

---

TREAT. 2002:76:65-71 (attached as Ex. 50); Elledge et al., INT. J. CANCER 2000;89:111-17 (attached as Ex. 51).

[134]   Pritchard Dep. at 144:15-146:1, 349:10-350:1.

[135]   Pritchard Rep. at 8.

[136]   Pritchard Dep. at 155:9-158:23 (relying on Fabre), 334:7-335:9 (relying on Rosenberg), 341:11-14 (relying on Fournier); Fabre et al., CANCER EPIDEMIOL. BIOMARKERS PREV. 2008;17:2723-28 ("Fabre 2008") (attached as Ex. 52); Rosenberg et al., CANCER EPIDEMIOL. BIOMARKERS PREV. 2006;15:2482-88 ("Rosenberg 2006") (attached as Ex. 53); Fournier et al., BREAST CANCER RES. TREAT. 2008;107:103-111 ("Fournier 2008") (attached as Ex. 54).

[137]   Fabre 2008 at 2723.

[138]   Pritchard Dep. at 176:19-178:10; Chen et al., CANCER 2004;101(7):1490-1500 ("Chen 2004") at 1495 (attached as Ex. 55).

[139]   Li et al., CANCER CAUSES CONTROL 2006;17:695-703 ("Li 2006") at 697 (attached as Ex. 56).

literature search in the way one might for a formal review article."[140]  Instead, she says that she chose studies because they had "positive data" or "were relevant to my point of view."[141]  By taking this approach, Dr. Pritchard ignores several Prempro studies that show no increase in risk:

| Studies Cited by and Relied on Dr. Pritchard | |
|---|---|
| Study | Medication Studied |
| Rosenberg 2006 | European formulations |
| Fournier 2008 | European formulations |
| Fabre 2008 | European formulations |
| Chen 2004 | Prempro |
| Li 2006 | (No analysis of ER+/PR–) |
| Studies Ignored by Dr. Pritchard | |
| Study | Medication Studied |
| Colditz 2004 | Prempro |
| Lee 2006 | Prempro |
| Li 2003 | Prempro |
| Li 2006 | Prempro |
| Saxena 2010 | Prempro |
| Setiawan 2009 | Prempro |

Notably, Dr. Pritchard cites one study (Saxena) to support her opinions on ER+/HER2+ breast cancer, but ignores its results on ER+/PR– breast cancer because it shows no increased risk and does not actually support her opinions.[142]  Dr. Colditz ignores the exact same studies in his expert report.[143]

---

[140]  Pritchard Dep. at 132:3-133:12.

[141]  *Id*. at 194:22-198:6.

[142]  *Id*. at 274:6-290:25.

[143]  *See* Colditz Rep. at 2-3.

***Testimony Contrary to Dr. Naftalis's Symptoms Methodology.***   As noted above, Dr. Pritchard does not offer any specific causation opinions.  However, as a practicing oncologist, she knows of no validated methodology to determine the cause of breast cancer in an individual woman.[144]  In addition, she does not believe that women who experience menopausal symptoms have insufficient internal hormones to get ER+ breast cancer:

> Q.   Do women who experience menopausal symptoms lack sufficient endogenous estrogen to develop an ER-positive breast cancer?
>
> MR. LEWIS:  Object to foundation.  Please answer.
>
> A:   *No.*  Women who – postmenopausal women do, can and do develop estrogen receptor and progesterone receptor positive breast cancers *without any endogenous estrogen.*[145]

According to Dr. Pritchard, ER+ breast cancers do not require estrogens to grow, and, for those that do, even miniscule amounts of internal estrogen are sufficient.[146]

Moreover, Dr. Pritchard testified that even if estrogen were required, it is only necessary "at some point" and that "point" could be during breast development in adolescence or as early as in the womb.[147]

## B.   Dr. Graham Colditz

Although Dr. Graham Colditz has not testified live in more than five years, in the past two months he has resurfaced, submitting an expert report in connection with this *Daubert* challenge, as well as two other reports submitted by the PSC in an effort to re-litigate this

---

[144]  Pritchard *Scharff* Dep. at 47:4-9.

[145]  Pritchard Dep. at 307:23-308:6 (emphasis added).

[146]  *Id*. at 307:23-309:3.

[147]  *Id*. at 207:2-16.

Court's rulings on estrogen-only and short-term use.[148]   Here, Dr. Colditz opines that Prempro

causes ER+/PR– breast cancer, but he offers no specific causation opinions.

   ***Failure to Appear for a Deposition.***   Wyeth sought a deposition of Dr. Colditz in order to

test the foundation of his new opinions.   The PSC failed to produce him by the agreed deadline.

As a result, Wyeth filed a motion to compel Dr. Colditz's appearance at a deposition by May 20,

2011 or to strike his report.[149]   The Court granted the motion.[150]   Because the PSC failed to

produce Dr. Colditz for deposition by May 20, 2011, Wyeth has moved to strike Dr. Colditz's

report and any opinions contained in it.

   ***Prior Statements on the Necessity of Progesterone Receptors.***   In previous statements

both in and out of this litigation, Dr. Colditz has maintained—contrary to the PSC's current

position—that progesterone receptors are necessary for Prempro to cause breast cancer.   For

example, in 2003, he wrote in the peer-reviewed journal *Breast Cancer Research* that "the

physiological effects of progesterone are *completely dependent on the presence of the human

PGR [progesterone receptor].*"[151]   Outside of litigation, he also has found that "risk factors for

breast cancer differ according to ER and PR status."[152]

---

[148]   *See generally* Amended Report & Declaration for Dr. Graham Colditz, Apr. 7, 2011 ("Colditz Rep. 4/7/11") (attached as Ex. 57); Amended Report & Declaration for Dr. Graham Colditz, Mar. 14, 2011 ("Colditz Rep. 3/14/11") (attached as Ex. 58); Second Amended Expert Report & Declaration of Dr. Graham Colditz, Apr. 14, 2011 ("Colditz Rep. 4/14/11") (attached as Ex. 59).

[149]   Motion to Compel the Deposition of Dr. Graham Colditz or to Strike His Report, MDL Doc. No. 2675.

[150]   Order, MDL Doc. No. 2682.

[151]   De Vivo 2003 at 5236 (emphasis added).

[152]   Colditz 2004 at 218.

Significantly, Dr. Colditz has published his own study (Colditz 2004 referenced in the chart above)—which neither he nor the PSC's other experts cite in their reports—showing no increased risk of ER+/PR– breast cancer among patients taking Prempro.[153]  As an expert in this litigation, Dr. Colditz has testified that "receptor negative tumors [] are not driven by hormones."[154]  And, if a cell does not have *both* an estrogen and progesterone receptor, "nothing happens to that cell" as a result of taking Prempro.[155]

**Same Methodological Flaws as Dr. Pritchard's Report.**  Because he did not appear for a deposition, Wyeth had no opportunity to ask Dr. Colditz why his general causation analysis of the ER+/PR– data is virtually identical to the analysis contained in Dr. Pritchard's report, or why the two reports make the same spelling mistakes and citation errors.  Nevertheless, Dr. Colditz's analysis violates the same methodological principles as Dr. Pritchard's analysis, including reliance on studies involving other formulations, and ignoring contrary studies showing no increase in risk (including one of his own studies).

**Testimony Contrary to Dr. Naftalis's Symptoms Methodology.**  Dr. Colditz's prior statements also contradict Dr. Naftalis's specific causation methodology.  Dr. Naftalis assumes that all ER+ breast cancers require estrogen to grow, but Dr. Colditz has testified that there are numerous other hormones and growth factors that can grow an ER+ tumor.[156]  He concedes that

---

[153]  *Id.*

[154]  Colditz Dep. 8/6/06 at 414:20-23; Colditz Dep. 12/29/06 at 878:1-4.

[155]  Colditz Test. 8/23/06 at 396:2-15.

[156]  Colditz Dep. 12/18/06 at 145:5-147:20 (discussing androgens, prolactin and insulin-like growth factors as other substances that and fuel tumor growth); *see also* Tr. Test. Dr. Graham Colditz, *Reeves v. Wyeth*, Aug. 24, 2006 ("Colditz Test. 8/24/06") at 485:22-487:3 (excerpts attached as Ex. 60).

there is "substantial variation in the levels of circulating estrogens in postmenopausal women."[157]  This is because menopausal women have numerous different internal sources of estrogen, which can fuel the growth of a tumor.[158]

### C.    Dr. Vijayakrishna K. Gadi

Dr. Vijayakrishan K. Gadi is a practicing oncologist based in Seattle, Washington.  His opinion is limited to general causation.  He offers no specific causation opinion regarding Ms. Mitchell's breast cancer.

*Qualifications.*  Dr. Gadi holds an M.D. and Ph.D. in physiology,[159] and he is the only PSC expert who conducts both clinical trials and laboratory research.[160]  He is not, however, an expert in estrogen, progesterone, or any of the different formulations of hormone therapy.[161] This is the first time that Dr. Gadi has ever evaluated a drug safety issue.[162]

*ER+/PR– Breast Cancer.*  Dr. Gadi acknowledges that ER+/PR– tumors represent a distinct phenotype of breast cancer, and that they have different characteristics, develop differently, and respond to treatment differently than ER+/PR+ tumors.[163]  He concedes that, if a tumor shows no evidence of progesterone receptors, that could indicate that the estrogen pathway

---

[157]  Colditz Test. 8/23/06 at 400:7-12.

[158]  Colditz Test. 9/14/06 at 5:23-9:9.

[159]  Curriculum Vitae of Dr. Vijayakrishna K. Gadi, Mar. 11, 2011 at 1 (attached as Ex. 61).

[160]  Gadi Dep. at 77:14-78:9.

[161]  *Id*. at 124:23-125:2, 153:24-154:9, 190:24-191:2, 193:24-194:2.

[162]  *Id*. at 124:17-22.

[163]  *Id*. at 204:4-10, 200:20-201:20.

is "not working."[164]   Dr. Gadi also relies on animal studies, which show that progesterone receptors must be present for the type of progesterone in Prempro (MPA) to have an effect on a cell.[165]

*Disregarding Formulation Differences.*   Dr. Gadi cites three observational studies (Fournier, Rosenberg, and Chen) in support of his opinion that Prempro causes ER+/PR– breast cancer.   Despite acknowledging that different formulations have different effects on breast cancer risk, and that studies of Prempro are most relevant,[166] two of the three studies cited by Dr. Gadi (Fournier and Rosenberg)—one of which was provided to him by a PSC attorney—are studies involving European formulations of hormone therapy.[167]   The only Prempro study (Chen) included in his report fails to show a statistically significant increase in the risk of ER+/PR– breast cancer.[168]   As a result, Dr. Gadi believes that these studies are "hypothesis generating" at best, and that they do not establish that Prempro causes ER+/PR– breast cancer.[169]

*Ignoring Contrary Data.*   Despite agreeing that drug safety analyses should be based on the totality of evidence, Dr. Gadi concedes that his ER+/PR– report was rushed and that he "did not have the opportunity to go through the literature."[170]   During his deposition, he admitted that

---

[164]   Gadi Dep. at 103:1-9.

[165]   *Id*. at 270:14-271:10.

[166]   *Id*. at 189:17-190:2.

[167]   *Id*. at 189:17-190:2.

[168]   *See generally* Expert Report of Vijayakrishna K. Gadi, Apr. 25, 2011 ("Gadi Rep.") at 2-3 (attached as Ex. 62); Chen 2004 at 1498.

[169]   Gadi Dep. at 256:7-257:17.

[170]   *Id*. at 234:1-14.

he had not looked at all the studies of Prempro and ER+/PR– breast cancer, that he did not know the total number of relevant studies, and that he did not know how many showed no increase in risk.[171]  As reflected in the chart below, Dr. Gadi ignores a number of Prempro studies.

| Studies Cited and Relied on by Dr. Gadi | |
| --- | --- |
| **Study** | **Medication Studied** |
| Rosenberg 2006 | European formulations |
| Fournier 2008 | European formulations |
| Chen 2004 | Prempro |
| **Studies Ignored by Dr. Gadi** | |
| **Study** | **Medication Studied** |
| Colditz 2004 | Prempro |
| Lee 2006 | Prempro |
| Li 2003 | Prempro |
| Li 2006 | Prempro |
| Saxena 2010 | Prempro |
| Setiawan 2009 | Prempro |

*Testimony Contrary to Dr. Naftalis's Symptoms Methodology.*  Similar to Dr. Pritchard, Dr. Gadi offers no specific causation opinions in this case.[172]  In fact, he testified that it is not possible to determine the cause of any individual woman's breast cancer.[173]

### D.    Dr. Paul Michaels

Dr. Paul Michaels is a community pathologist in Las Vegas, Nevada.[174]  He does not offer general or specific causation opinions on ER+/PR– breast cancer.  His report does contain a reference to ER+/PR– breast cancer, so he is included here for the sake of completeness.

---

[171]  Gadi Dep. at 231:5-232:7, 236:14-237:4.

[172]  *Id.* at 8:6-9:17.

[173]  *Id.* at 93:20-94:11.

[174]  Deposition of Paul Michaels, *Torkie-Tork v. Wyeth*, July 7, 2010 ("Michaels *Torkie-Tork*

*Limited Opinion on ER+/PR– Breast Cancer.*   Dr. Michaels submitted an expert report that primarily addressed the HER2 aspect of this *Daubert* challenge, devoting less than a paragraph to ER+/PR– breast cancer.[175]   He says that this paragraph was based on literature that he was provided by PSC lawyers, but, when asked whether he could provide a list of studies he reviewed, he said: "No. I delete them."[176]   The only data cited in support of his ER+/PR– opinion are studies of aromatase inhibitors, which are medications that block a woman's production of internal estrogen.[177]   At his deposition, Dr. Michaels conceded that these studies do not involve Prempro nor any analysis of progesterone receptors.[178]

*Testimony Contrary to Dr. Naftalis's Symptoms Methodology.*   Based on the totality of the evidence today, Dr. Michaels disagrees with Dr. Naftalis's symptoms methodology.   Asked whether he agreed with Dr. Naftalis's claim that women with menopausal symptoms lack enough internal estrogen to grow an ER+ tumor, Dr. Michaels answered, "I did not say that, nor do I think that."[179]   He also said that it is impossible tell what promotes the growth of any individual woman's breast tumor, and that even ER+ tumors "can be influenced by other growth factors."[180]

---

Dep.") at 7:11-14, 21:15-19 (excerpts attached as Ex. 63).

[175]   Expert Report of Dr. Paul Michaels, Mar. 24, 2011 ("Michaels Rep.") at 5 (attached as Ex. 64).

[176]   Michaels Dep. at 158:3-25.

[177]   Michaels Rep. at 5.

[178]   Michaels Dep. at 93:1-15.

[179]   Michaels *Torkie-Tork* Supp. Dep. at 67:12-19.

[180]   Michaels *Gray* Dep. at 114:10-13; Michaels Dep. at 109:22-101:1.

### E.     Dr. Elizabeth Naftalis

The PSC served Dr. Naftalis's specific causation report from *Scharff v. Wyeth,* 2:10-cv-220-WKW-WC, a case that has been remanded.  Dr. Naftalis did not review Ms. Mitchell's case facts or medical records.[181]   At the time of her deposition, Dr. Naftalis was not aware that the PSC had submitted this or any expert report related to the issue if ER+/PR– breast cancer.[182]  Dr. Naftalis also did not review Ms. Mitchell's medical records, but when asked at her deposition by PSC counsel how she would do a differential diagnosis of an individual woman with ER+/PR– breast cancer, Dr. Naftalis testified that she would employ her regular differential diagnosis methodology.[183]

*Lack of Qualifications in Epidemiology and General Causation.*  Dr. Naftalis has not practiced medicine in almost seven years.  She is not an epidemiologist, and she has said that she would need to defer to an expert in that field.[184]  When she testifies at trial, she opines on specific causation, and she is paired with an actual epidemiologist like Dr. Colditz.  When asked to define basic epidemiological terms such as "selection bias" or "recall bias", she cannot.[185]

*No Analysis of ER+/PR– Breast Cancer.*  Dr. Naftalis's opinions related to ER+/PR– breast cancer are based on a single sentence from the *Scharff* report, which says: "E+P has been

---

[181]  Naftalis Dep. at 9:20-10:22.

[182]  *Id*. at 10:24-11:19.

[183]  *Id*. at 9:20-11:6, 229:13-230:6.

[184]  Test. Dr. Elizabeth Naftalis, *Singleton v. Wyeth Frye* Hr'g, Jan. 19, 2010 at 181:12-182:18, 184:7-17, 188:8-11 (excerpts attached as Ex. 65); Naftalis Dep. at 15:10-18, 37:3-15; Naftalis *Esposito* Hr'g at 61:19-23; Deposition of Dr. Elizabeth Naftalis, *Kaufman v. Wyeth*, Feb. 16, 2011 ("Naftalis *Kaufman* Dep.") at 97:15-98:13 (excerpts attached as Ex. 66).  Dr. Naftalis is also not a general causation expert.

[185]  Naftalis *Kaufman* Dep. at 98:1-103:12.

associated with an increased risk of ER+/PR– breast cancers in the literature."[186]   The *Scharff* case does not involve an ER+/PR– breast cancer.

   ***Admissions on the Necessity of Progesterone Receptors.***   In her report, Dr. Naftalis agrees that a hormone like estrogen or progesterone "delivers its message by attaching to its receptor."[187]   She also agrees that progesterone receptors must be present at the time a woman is taking Prempro for the medication to have an effect.[188]   Consistent with these admissions, Dr. Naftalis also relies on the Oncolink website, which says: "the presence of estrogen *and progesterone receptors* means that the cancer requires estrogen for its growth."[189]

   ***Disregarding Formulation Differences and Ignoring Contrary Data.***   Dr. Naftalis cites four studies (Calle, Fournier, Li, and Chen) to support her opinion that Prempro causes ER+/PR– breast cancer.   One of these studies (Fournier) is a European study involving other formulations.[190]   While the other three studies she cites do involve Prempro, the Calle study does not separately examine ER+/PR– breast cancer, and the other two (Li and Chen) do not show an increased risk of ER+/PR– tumors.[191]   Like Dr. Pritchard, Dr. Colditz, and Dr. Gadi, Dr. Naftalis also ignores a number of other Prempro studies showing no increased risk:

---

[186]   Naftalis Rep. at 38.

[187]   *Id*. at 8.

[188]   Naftalis *Finn* Dep. at 51:9-21.

[189]   Naftalis Rep. at 17 n.52.

[190]   Fournier 2008 at 1261.

[191]   *See generally* Chen 2004; Li 2006; Calle 2009.

| Studies Cited and Relied on by Dr. Naftalis | |
|---|---|
| **Study** | **Medication Studied** |
| Fournier 2008 | European formulations |
| Chen 2004 | Prempro |
| Li 2006 | Prempro |
| Calle 2009 | (no analysis of ER+/PR–) |
| **Studies Ignored by Dr. Naftalis** | |
| **Study** | **Medication Studied** |
| Colditz 2004 | Prempro |
| Lee 2006 | Prempro |
| Li 2003 | Prempro |
| Saxena 2010 | Prempro |
| Setiawan 2009 | Prempro |

***Specific Causation Methodology.***  Dr. Naftalis did not evaluate Ms. Mitchell's medical records, but her *Scharff* report contains a description of her regular differential diagnosis methodology.[192]

## LEGAL ARGUMENT

Under *Daubert*, this Court has a vital "gatekeeping role" that requires it to determine "whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and . . . whether that reasoning and methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms.*, *Inc.*, 509 U.S. 579, 592-93 (1993). Rule 702 requires an expert's opinion to be:  (1) based upon sufficient facts or data; (2) the product of reliable methods; and (3) the result of an application of sound principles and methods reliably to the facts of the case. *Id.*  The Court, as a gatekeeper, must separate out "legitimate scientific inquiry from subjective speculation."  *In re Prempro*, 738 F. Supp. 2d at 889.  Plaintiffs have the burden to

---

[192] *See generally* Naftalis Rep. at 29-40.

prove the admissibility of any opinions on this issue.  *See id.* at 890; *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).

## VI.  THE COURT SHOULD EXCLUDE ANY OPINION THAT PREMPRO CAUSES ER+/PR– BREAST CANCER.

The PSC's experts' analysis of a few cherry-picked and largely irrelevant epidemiological studies cannot reliably support an opinion that Prempro increases the risk of ER+/PR– breast cancer.  Three of the six studies the PSC's experts rely on do not evaluate Prempro.  The three remaining studies that do evaluate Prempro found no increased risk of ER+/PR– breast cancer.  In addition, these experts systematically ignored five other studies, the totality of which show no reliable evidence that Prempro increases the risk of ER+/PR– breast cancer.  In the end, the PSC's experts fail to cite a single study showing a statistically significant relationship between exposure to Prempro and Ms. Mitchell's type of breast cancer.  Accordingly, the PSC's experts' general causation opinions should be excluded under Rule 702 and *Daubert*.

### A.  The PSC's Experts Ignored Differences in Formulation.

This Court has held that "when an expert summarily attributes the effects of one substance to another similarly classified substance, the expert's methodology is not reliable."  *In re Prempro*, 2011 WL 178574 at *10 (citing *McClain v. Metabolife Int'l, Inc*., 401 F.3d 1233, 1244-45 (11th Cir. 2005); *Hollander v. Sandoz Pharms. Corp*., 289 F.3d 1193, 1207 (10th Cir. 2002)); *see also In re Prempro*, 738 F. Supp. 2d at 893 (excluding expert opinion that "did not distinguish between CEE and estradiol, nor explain how the substances were equivalent").  Because "[e]ven minor deviations in molecular structure can radically change a particular substance's properties and propensities,"  *Glastetter v. Novartis Pharms. Corp*., 252 F.3d 986,

990 (8th Cir. 2001), it is important that experts consider studies that address the specific formulation of the drug at issue.

The PSC's experts agree that, when assessing the safety of a medication, they should first consider studies that evaluate the specific medication at issue.[193]   The PSC's experts also admit that there are key differences among the various types of hormone therapy.  Even Dr. Colditz, in his own research, has recognized that different progestin formulations have different effects.[194]  Thus, the most relevant studies regarding the risk of ER+/PR– breast cancer with Prempro are studies of women who actually took Prempro (or CEE plus MPA).

In evaluating whether Prempro increases the risk of ER+/PR– breast cancer, the PSC's experts do not follow their own methodological principles.  Of the six studies on which the PSC's experts rely, three (Fabre, Rosenberg, and Fournier) do not assess Prempro.[195]  All three took place in Europe where women take combination hormone therapy formulations different than Prempro.[196]  The Fabre study did not even evaluate combination hormone therapy, but a progestin product—not MPA—only given to premenopausal women.[197]  Rather than admit that she mistakenly cites this study (along with apparently lifting whole sections from Dr. Colditz's

---

[193]  Gadi Dep. at 189:17-190:2; Singh Dep. at 150:19-23 ("Q. So you would need to study the specific drug to really know exactly what it's doing in the body? A. Exactly, yes. You would have to study that one drug, yes.").

[194]  Colditz 2010 at 2501 ("In our study of triphasic preparations with levonorgestrel as the progestin was associated with particularly high risk, and these formulations accounted for nearly all of the excess risk.").

[195]  Pritchard Dep. at 155:5-19 (relying on Fabre), 334:7-335:9 (relying on Rosenberg), 341:11-14 (relying on Fournier); Gadi Dep. at 254:6-11 (relying on Fournier and Rosenberg).

[196]  Fabre 2008; Rosenberg 2006; Fournier 2008; Gadi Dep. at 250:17-252:7.

[197]  Fabre 2008 at 2723.

report), Dr. Pritchard claims that the Fabre study is somehow relevant because premenopausal women taking progestin-alone are the equivalent of menopausal women taking Prempro.[198]  She cannot cite any support for this contention, it is not validated anywhere in the scientific community, and it is not shared by any of the PSC's other experts.

In the Rosenberg study, the authors themselves point out that almost no patients in the study took CEE, and list the myriad of other formulations involved.[199]  Likewise, in the Fournier study, very few patients took Prempro or its equivalent.  The authors highlighted the differences in formulation: "In our analyses, the 'other progestagens' category encompasses a variety of progestins, the most used being promegestone and nomegestrol acetate"—not MPA.[200]  For estrogens, the Fournier study reported:  "Unopposed HT consisted almost exclusively in estradiol compounds (1.3% of women ever-used conjugated equine estrogens)."[201]  Further, the authors emphasized that different formulations carry different risk profiles: "Because they differ in their chemical structure, metabolism, pharmacokinetics, and potency, it is reasonable to expect them to induce different responses in the breast."[202]

---

[198]  Pritchard Dep. at 342:3-19.

[199]  Rosenberg 2006 at 2483 ("estrogen alone (mainly estradiol and to a lesser extent conjugated estrogens), use of estrogen-progestin (mainly estradiol combined sequentially or continuously with levonorgestrel or norethisterone acetate), use of orally administered estriol, or local estrogen treatment").

[200]  Fournier 2008 at 1262.

[201]  *Id*. at 1261.

[202]  *Id*. at 1262-63.

As explained above, different formulations of hormone therapy have different effects and risk profiles.[203]  Thus, these studies do not reliably evaluate whether Prempro increases the risk of ER+/PR– breast cancer, especially where, as here, there is ample evidence from studies involving Prempro.[204]

### B.    The PSC's Experts Cherry-Picked Studies to Support Their Views.

Expert opinions that are based on a subset of studies and ignore contrary findings are not reliable.  *In re Prempro*, 738 F. Supp. 2d at 891-92 (excluding expert that "selected study data that best supported her opinion, while downplaying contrary findings or conclusions"); *see also Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005) (excluding experts that "ignored or discounted without explanation the contrary epidemiological studies").  Experts must consider the totality of the available evidence and not cherry-pick studies that only support their opinions.  *See Norris*, 397 F.3d at 885; *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) (affirming district court's exclusion of expert who "cherry-picked the facts he considered to render an expert opinion . . . because such a selective use of facts fails to satisfy the scientific method and *Daubert*"); *In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (excluding as unreliable expert who "cherry-pick[ed] observational studies that support his conclusion and reject[ed] or ignore[ed] the great weight of the evidence that contradicts his conclusion").

The PSC's experts concede that, when determining whether a medication increases the risk of a specific disease, an expert must consider the totality of the relevant evidence and

---

[203]  *See supra* section I.A. Pritchard Dep. at 87:14-18; Gadi Dep. at 194:15-195:14.

[204]  Gadi Dep. at 189:17-20.

determine whether that evidence consistently points to the same conclusion.[205]   None of the PSC's experts, however, did so here.   None of them could identify the seven studies that evaluated ER+/PR– breast cancer in Prempro users, and none could identify how many of those studies showed no risk.   Dr. Pritchard conceded that she did not "approach this in the same way I would a formal review, which would always begin with a formal delineation of the literature."[206] Instead, she testified that she simply selected the studies that "had positive data or tending towards positive data," and kept no record of any studies showing the opposite of her position— that is, no increased risk for patients taking Prempro.[207]

Similarly, Dr. Gadi "did not have the opportunity to go through the literature with that detail for this particular second report."[208]   As a result, he also omits most of the relevant data.[209]

### C.   The Prempro Studies the PSC's Experts Rely on Lack Statistical Significance.

The PSC's experts' reliance on study results that lack statistical significance also undermines the reliability of their methods.   "[I]f an expert places undue emphasis on statistically insignificant evidence, it may indicate that the expert's methods are unreliable."   *In re Prempro*, 738 F. Supp. 2d at 892 (citing *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 380 & n. 23 (5th Cir. 2010); *Pritchard v. Dow Agro Scis.*, 705 F. Supp. 2d 471, 489-90 (W.D. Pa. 2010); *cf. Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 145-47 (1997)).   Other courts also have

---

[205]   *See supra* section I.B.

[206]   Pritchard Dep. at 135:14-24.

[207]   *Id*. at 194:22-195:20, 141:24-142:10.

[208]   Gadi Dep. at 234:5-8.

[209]   *Id*. at 234:1-14.

excluded expert opinions for lack of statistically significant evidence. *See In re Seroquel Prods. Liab. Litig.*, 6:06-md-1769, 2009 WL 3806434, at *12 (M.D. Fla. June 18, 2009) (finding that "the reliability of an expert's opinion should be seriously questioned, and perhaps even excluded altogether, when the expert can point to *no* evidence showing a statistically significant increased risk of disease"); *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 533-34 (W.D. Pa. 2003). Others have excluded expert opinions that selectively cited data that was not statistically significant while attacking other epidemiological findings as flawed. *See Caraker v. Sandoz Pharms. Corp.*, 188 F. Supp. 2d 1026, 1031-32 (S.D. Ill. 2007).

The PSC's experts concede that statistical significance testing is "standard practice" in the evaluation of epidemiological data,[210] but their only Prempro studies —Chen, Li and Calle— do not show a statistically significant increased risk of ER+/PR– breast cancer.[211]   In fact, the authors of the Li and Chen studies stated that their studies do not support a conclusion that Prempro increases the risk of ER+/PR– breast cancer:

- ***Li***: "Neither [E alone] nor [E+P] was related to risks of ER+/PR– or ER–/PR– tumors overall or within BMI categories."[212]

- ***Chen***: "Our finding that HRT was associated only with the development of ER-positive/PR-positive breast tumors supports the view that hormone receptor-positive tumors and hormone receptor-negative tumors are distinct entities."[213]

The Calle study did not separately evaluate ER+/PR– breast cancers, but looked at a mixed group of ER+/PR– and ER–/PR+ breast cancers.[214]   Similarly, Calle found no statistically

---

[210]   *See supra* section I.C.

[211]   *See* Chen 2004 at 1495; Li 2006 at 699; Calle 2009.

[212]   Li 2006 at 697.

[213]   Chen 2004 at 1498.

significant increased risk in this group of women, thus providing no reliable evidence that Prempro increases the risk of ER+/PR– breast cancer.[215]

The PSC's experts defend their methods by claiming that they show a "trend" of increased risk.[216]  When asked to define the criteria for a "trend," they cannot.[217]  Perhaps more importantly, Dr. Gadi and Dr. Pritchard admit that the trend they claim to see is merely "hypothesis-generating," meaning that further study is necessary to determine whether there is reliable evidence of an increased risk.[218]

> **D.**     **The Relevant Epidemiological Studies Do Not Provide Any Reliable Evidence That Prempro Increases the Risk of ER+/PR– Breast Cancer.**

The totality of relevant evidence demonstrates that Prempro is not associated with an increased risk of ER+/PR– breast cancer.  Because the PSC's experts did not identify or analyze the totality of studies evaluating Prempro use and ER+/PR– breast cancer, Wyeth submits with this brief the report of its epidemiology expert, Dr. Kurt Barnhart, who addresses the totality of data on ER+/PR– breast cancer and Prempro use.[219]

There is no dispute that ER+/PR– breast cancer is a unique disease, different from other types of breast cancer.  As Dr. Colditz wrote in the *Journal of the National Cancer Institute*, "[i]ncidence rates and risk factors for breast cancer differ according to ER and PR status.  Thus,

---

[214]  Calle 2009 at 942; *see also* Naftalis Dep. at 179:20-180:1.

[215]  Calle 2009 at 942.

[216]  Naftalis Dep. at 91:17-21, 155:15-22, 174:7-175:5, 177:23-178:18; Gadi Dep. at 256:7-257:11; Pritchard Dep. at 192:14-193:10.

[217]  Gadi Dep. at 257:2-11; Pritchard Dep. at 297:16-299:19.

[218]  Gadi Dep. at 256:7-257:13; Pritchard Dep. at 297:16-299:19.

[219]  *See* Report of Dr. Kurt Barnhart, May 26, 2011 ("Barnhart Rep.") (attached as Ex. 67).

to estimate breast cancer risk accurately, breast cancer cases should be divided according to ER and PR status of the tumor."[220]

Accordingly, when breast cancer cases are divided by ER and PR status of the tumor, the totality of epidemiologic data reveals a consistent body of studies that do not support an association between Prempro use and ER+/PR– breast cancers.

### 1.    WHI Shows No Increased Risk of ER+/PR– Breast Cancer.

WHI is the largest clinical trial ever conducted to assess the safety and efficacy of hormone therapy use in menopausal women.  Although the trial did not specifically evaluate the relationship between Prempro use and ER+/PR– breast cancer, the investigators did report data on the number of cancers that were ER+, ER–, PR+, and PR– in both the Prempro group and in the placebo group.  Based on these data, Dr. Barnhart calculated the relative risk of being diagnosed with a breast cancer that was ER+, ER–, PR+ or PR–.  The results show that women taking Prempro were only at increased risk of developing ER+ (RR 1.34, 95% C.I. 1.06-1.71) and PR+ (RR 1.50, 95% C.I. 1.14-1.96) breast cancers.  Prempro use was *not* associated with a statistically significant increased risk of either ER– or PR– breast cancers.

### 2.    The Relevant Observational Studies Show No Increased Risk of ER+/PR– Breast Cancer.

In addition to the WHI clinical trial, seven U.S. observational studies, where the majority of women can be assumed to have taken Prempro, assessed the relationship between combination hormone therapy use and ER+/PR– breast cancer risk.[221]   ER/PR status in all seven studies was

---

[220] Colditz 2004 at 218; *see also* Colditz Dep. 12/29/06 at 526:7-22 ("Lumping all hormones and all cancer together is really not biologically relevant at this stage of our understanding of the causes of breast cancer.").

[221] *See* Chen 2004; Colditz 2004; Lee et al., INT. J. CANCER 2006;118:1285-1291 (attached as Ex. 68); Li et al., JAMA 2003;289(24):3254-3263 (attached as Ex. 69); Li 2006; Saxena et

determined at diagnosis.  Of the seven studies, six found *no* evidence of an increased risk of ER+/PR– breast cancer with Prempro.  In contrast, all seven studies found a statistically significant increased risk for *ER+/PR+* breast cancer.  The authors of the Chen 2004 study, one of whom was Dr. Colditz, emphasized that "[o]ur finding that HRT was associated *only with the development of ER-positive/PR-positive breast tumors* supports the view that hormone receptor-positive tumors and hormone receptor-negative tumors are distinct entities."[222]

| U.S. Observational Studies – Risk of ER+/PR– Breast Cancer Among Prempro Users | |
|---|---|
| **Observational Study** | **Increased Risk of ER+/PR– Breast Cancer?** |
| Chen 2004 | **NO** |
| Colditz 2004 | **NO** |
| Lee 2006 | **NO** |
| Li 2003 | **NO** |
| Li 2006 | **NO** |
| Saxena 2010 | **NO** |
| Setiawan 2009 | Possible |

Only one of the seven studies (Setiawan 2009) showed a possible association between Prempro and PR– breast cancer.  It should be noted, however, that the Setiawan 2009 study did not control for frequency of mammographic screening, a significant confounder that biases

---

al., CANCER EPIDEMIOL. BIOMARKERS & PREV. 2010;19(9):OF1-OF13 (attached as Ex. 70); Setiawan et al., AM. J. EPIDEMIOL. 2009;169:1251–1259 ("Setiawan 2009") (attached as Ex. 71).  As discussed above, European studies in which the majority of women took hormone therapy formulations different from Prempro are not relevant and do not provide reliable evidence regarding the specific relationship between Prempro use and ER+/PR– breast cancer.

[222] Chen 2004 at 1498 (emphasis added).

estimates against the medication.[223]   The study also did not determine hormone therapy use for as long as 10.4 years before the diagnosis of cancer.[224]   The PSC's own expert, Dr. Colditz recognizes the importance of controlling for confounders[225] and that "[o]ne study on its own almost never will give causal interpretation in isolation."[226]

The data on ER+/PR– is consistent with the Premarin data.[227]   This is not surprising because ER+/PR– breast cancers lack PR receptors for the progesterone component of Prempro.[228]   Thus, for breast cancers without PR receptors, taking Prempro is the functional equivalent of taking Premarin.[229]   The data bears this out.   A recent publication from the Women's Health Initiative confirmed that women randomized to treatment with Premarin had a lower risk of breast cancer than those taking a placebo pill.   After a mean follow-up of 10.7 years, women who took Premarin had a statistically significant *decreased* risk of being diagnosed with breast cancer (HR 0.77, 95% CI 0.62-0.95).[230]   Furthermore, the PSC's own

---

[223]   *See* Setiawan 2009 at 1257, tbl. 3.   As Dr. Barnhart explains, "women who take hormone therapy are more likely to be screened for breast cancer and thus to be diagnosed more frequently."   Barnhart Rep. at 7.   Therefore, studies such as Setiawan 2009 "that do not control for the rate of mammographic screening are likely to overestimate the risk associated with hormone therapy use."   *Id.*

[224]   Setiawan 2009 at 1251.

[225]   Colditz Dep. 12/18/06 at 204:12-205:8.

[226]   Colditz Dep. 12/29/06 at 799:18-800:3.

[227]   Barnhart Rep. at 7-8.

[228]   *Id.* at 7.

[229]   *Id.* at 7-8.

[230]   LaCroix et al, JAMA 2011;305(13):1305-314 at 1305 (attached as Ex. 72).

experts concede that Premarin (CEE) may be protective.[231]   Thus, the most recent evidence both

supports the Court's order regarding Premarin and breast cancer, and contradicts the PSC's claim

that Prempro causes ER+/PR– breast cancer.

## VII.   THE COURT SHOULD EXCLUDE ANY OPINION THAT PREMPRO CAUSED OR OTHERWISE CONTRIBUTED TO MS. MITCHELL'S BREAST CANCER.

### A.   Dr. Naftalis's Menopausal Symptoms Methodology Is Not Valid Here.

Dr. Naftalis did not review Ms. Mitchell's case facts or medical records.   Instead, the

PSC served Dr. Naftalis's expert report from *Scharff v. Wyeth,* 2:10-cv-220-WKW-WC, which

does not involve a plaintiff with ER+/PR– breast cancer.   In her *Scharff* report, Dr. Naftalis

explains her specific causation methodology and the current data upon which it rests.   According

to Dr. Naftalis:   (1) all ER+ breast cancers are "hormone dependent" (regardless of PR status);

(2) women with menopausal symptoms lack sufficient hormones to grow and develop an ER+

breast cancer;   and (3) therefore, a plaintiff with menopausal symptoms would not have

developed breast cancer but for taking Prempro.   The methodology is premised on a series of

assumptions, which are not supported by the current science and are at odds with the factual and

scientific record in this case.

The record here is materially different than the record in *Scroggin*.   Unlike *Scroggin*, this

is not the case of a plaintiff with the classic ER+/PR+ breast cancer.   In *Scroggin*, Mrs.

Scroggin's breast cancer was 100% positive for both receptors, meaning that 100% of the tumor

cells stained positive for both estrogen and progesterone receptors.   *See In re Prempro*, 586 F.3d

at 566 ("Both the left and right tumors were one hundred percent positive for estrogen and

---

[231]   Gadi Dep. at 313:2-315:2, 157:15-20.

progesterone receptors."). Unlike Mrs. Scroggin, Ms. Mitchell's breast cancer was ER+(99%)/PR–(0%).[232]

Moreover, in *Scroggin*, the Eighth Circuit found that "[t]here was no dispute at trial that hormone-receptor-positive tumors are dependent upon hormones for their growth." *Id*.[233] Here, based on the current scientific record and the testimony of the PSC's own experts, Wyeth vigorously disputes that tumors like Ms. Mitchell's (PR– tumors) are dependent upon hormones for their growth.

Accordingly, Dr. Naftalis's specific causation methodology needs to be evaluated in the context of the current scientific record and this distinct fact pattern.

       **1.**     **There Is No Reliable Basis to Conclude That Ms. Mitchell's ER+/PR– Breast Cancer Was "Hormone-Dependent".**

As discussed above, the PSC's experts have not been able to identify any reliable evidence indicating that ER+/PR– breast cancers are "estrogen dependent." On the contrary, the PSC's experts concede that HER2 overexpression can both cause and promote the growth of ER+/PR– breast cancers in the absence of estrogen. Even Dr. Naftalis now admits that after the first cancer cell is present, ER+/PR– breast cancers can grow without estrogen.[234]

Nobody knows when the first cancer cell develops in an individual woman's breast.[235] According to Dr. Naftalis, however, the first cancer cell may be present 15 to 20 years before

---

[232] Sept. 25, 2002 Record of Dr. L. Gene Singleton, Pathology Labs of Arkansas, BMitchell-TSCCA-000039-40.

[233] In fact, Wyeth presented expert testimony that directly contested the issue.

[234] Naftalis *Esposito* Hr'g at 159:14-24.

[235] Gadi Dep. at 22:3-22:19, 303:5-22.

diagnosis.[236]   Thus, even if ER+/PR– breast cancers require estrogen to grow and develop at some point, *that point may have been years or even decades before those women ever took Prempro.*

> **2.      Dr. Naftalis Now Concedes That Only Women With No Detectable Estrogen Lack Sufficient Internal Estrogen to Develop ER+ Breast Cancer.**

To support her symptoms methodology, Dr. Naftalis relies primarily on data from a clinical trial known as the Multiple Outcomes of Raloxifene Evaluation or "MORE" trial, published by Cummings.[237]

*"Hormone Deficient" Means No Detectable Levels of Estrogen.*   Dr. Naftalis cites the Cummings study to support her claim that there are certain "hormone deficient" women who lack sufficient internal estrogen to grow an ER+ breast cancer.[238]   The Cummings study was a randomized, placebo-controlled clinical trial of an estrogen-blocker called raloxifene, and it involved 7,290 menopausal women with osteoporosis.[239]   As part of the analysis, the authors measured blood estrogen levels and assessed breast cancer risk according to the different levels.[240]   According to the Cummings data, the only patients that satisfy Dr. Naftalis's definition of "hormone deficient" are those patients who have no detectable levels of estrogen in their blood:

---

[236]   Naftalis *Finn* Dep. at 103:7-14.

[237]   Naftalis Rep. at 12, 20.

[238]   Naftalis Rep. at 20 n.58.

[239]   *See* Cummings et al., JAMA 2002;287:216-20 ("Cummings 2002") at 216 (attached as Ex. 73).

[240]   *See generally* Cummings 2002 at 218, tbl 2.

Q:     Okay.    And in your report, it's these women with *undetectable levels of natural estradiol* [estrogen] that you refer to as "hormone deficient"; is that right?

A:     That's correct.  In this particular report, that's correct.[241]

* * *

Q.     Okay. Now, going back to page 15, when you're referring to hormone-deficient women in this sentence, again, you're referring to those women in Dr. Cummings' study who had *undetectable levels of estradiol in the blood*; is that right?

A.     Hormone-deficient women . . .

(Witness reviews document.)

A.     Yeah, that would be – that would be true.[242]

**"Hormone Sufficient" Means Any Detectable Levels of Estrogen Above Zero.**  Dr. Naftalis also relies on the Cummings data to support her definition of "hormone sufficient" women, which are women with any detectable level of internal estrogen:

Q.     Okay.  Which group in the MORE trial do you consider to be hormone-sufficient?

A:     Well, it's women who have enough to – enough hormones in their body to drive a tumor.  Women that have enough that they're not getting any benefit from the Evista [raloxifene].

Q:     And in the MORE study, that would be any woman with *detectable levels of estradiol in the blood*, correct?

---

[241] Naftalis *Spinelli* Dep. at 35:1-6; *see also id.* at 35:7-14 ("Q. Now, when you use the term 'hormone deficient' to describe women who had a 6.8-fold lower risk of breast cancer, you are referring to women with *no detectable natural estradiol* in their bloodstream; is that right?  A.  In this particular study, that's correct."), 36:3-8 ("Q.  And, again, the women you refer to as hormone deficient are women with *no detectable natural estradiol in their bloodstream*; is that right?  A.  No detectable serum estradiol, in this particular study, that's right.") (emphasis added).

[242] Naftalis *Spinelli* Dep. at 42:9-19 (emphasis added).

A:     Well, those women did benefit from the raloxifene, so I would say yes.[243]

Indeed, Dr. Naftalis agrees that the Cummings data she relies on show that any detectable level of internal estrogen can have a dramatic impact on the risk of breast cancer:

Q.     Well, Dr. Cummings showed that raloxifene has dramatic benefits for women who have any level of natural estrogen, but no benefits for women who have no detectable levels of natural estrogen; so there is a big difference between undetectable and detectable, at least in his study, right?

MR. KETTERER:  Objection.  You can answer.

A.     Serum estradiol, yes.[244]

***Internal Estrogen Can Only Be Ruled Out in Women with Zero Detectable Estrogen.***

Based on the data that is the foundation of her methodology, Dr. Naftalis concedes that the only women who can be ruled out as "hormone deficient" are those women who have no detectable internal estrogen in the bloodstream:

---

[243] *Id*. at 49:13-50:1 (emphasis added); *see also id.* at 52:10-18 ("Q.  Now, in that sentence, which group in Dr. Cummings' study are you referring to as hormone-sufficient?  A.  Well, if you're using his measurements, it would be women that you could measure serum estradiol . . ."), 45:19-46:7 ("Q.  Now, in the Cummings study, what do you consider to be a higher level of hormones?  A.  Well, higher than undetectable.  I mean, as the estradiol went up, the risk went up. . . . Q.  Yes.  But when you say 'higher,' the baseline is zero; is that right?  A.  Or undetectable, yeah."), 51:5-12 ("Q.  Okay.  So the effect you're talking about is the effect that any detectable amount of natural estradiol can have on the risk of breast cancer; is that right?  A.  Well, talking about the preclinical lesions having a source of fuel, that's right.").

[244] *Id*. at 47:22-48:7; *see also id.* at 38:5-10 ("Q.  Now, in the same study, raloxifene dramatically reduced breast cancer risk in women who had any measurable amounts of estradiol in the bloodstream; is that correct?  A.  That's correct."), 39:6-14 ("QUESTION: Now, based on Dr. Cummings' data, would it be fair to conclude that natural levels of estradiol in the blood just barely above zero are still capable of promoting breast cancer in the absence of a blocker like raloxifene?  A.  It would depend, but I would say that would be a fair assumption.  Q.  Yeah.  And if you look at Table 2, which groups patients by baseline serum estradiol, you can see that raloxifene influenced breast cancer risk in every group with any levels above undetectable or zero levels; is that right?  A.  That's correct.").

54

> Q.      Now, in the MORE trial, the *only group where endogenous estradiol could be ruled out as a fuel source is the group with no detectable levels*; is that right?
>
> A.      That sounds right.  Serum estradiol levels, yeah.[245]

### 3.      The Presence of Menopausal Symptoms Cannot Reliably Identify Women Who Have No Detectable Estrogen.

Thus, according to Dr. Naftalis's own testimony and the data she cites in her report, it is clear that the only women who lack sufficient internal estrogen to develop ER+ breast cancers are those with undetectable estrogen levels in the blood, not those with "low levels of estrogen."[246]

But the fact that a woman has menopausal symptoms does not reliably establish that she has undetectable internal hormones.  On the contrary, the PSC's other experts clearly reject the idea that menopausal symptoms can be used to identify women who are "hormone deficient."[247] Dr. Michaels emphatically denied that women with menopausal symptoms have insufficient internal hormones to get breast cancer:

> Q.      My question is, you used the term "estrogen deficiency," and you defined that by making reference to a number of symptoms.   Do you believe that a person who has menopausal symptoms has insufficient estrogen to stimulate a breast cancer tumor?
>
> A.      *I did not say that, nor do I think that*.  I did not say that. That wasn't any part of my answer.[248]

---

[245]  Naftalis *Spinelli* Dep. at 51:13-18 (emphasis added); *see also* Naftalis Rep. at 20 ("There are menopausal women who never take E+P, but they still get breast cancer.  Hormone-sufficient women are at a substantially higher risk of breast cancer, especially as they get older.").

[246]  *Id*. at 38:11-17.

[247]  Michaels *Torkie-Tork* Supp. Dep. at 67:12-19; Pritchard Dep. at 307:11-308:6; Beck Dep. at 98:14-99:20, 295:15-21.

[248]  Michaels *Torkie-Tork* Supp. Dep. at 67:12-19 (emphasis added).

The PSC's experts admit that the only way to accurately assess a woman's estrogen level is to measure the estrogen in her blood.[249]  This is because there is considerable variability among women with menopausal symptoms.[250]  While women with menopausal symptoms may have lower estrogen levels than asymptomatic women, it is not possible to reliably predict whether a woman has insufficient estrogen to get breast cancer.[251]

Critically, Dr. Pritchard confirms that the presence of menopausal symptoms does not reliably establish that a woman has no detectable estrogen in her bloodstream or any other part of her body.[252]  Even Dr. Naftalis concedes that only a small fraction of women with menopausal symptoms—including vasomotor symptoms (hot flashes and night sweats) and urogenital symptoms (vaginal atrophy and dryness)—have no detectable estrogen in their body:[253]

> Q.    What symptoms are you talking about?
>
> A.    She had vasomotor symptoms as well as urogenital symptoms and menstrual symptoms.
>
> Q.    What percentage of women with those types of symptoms have no detectable natural estrogen in their bodies?
>
> A.    It's not a large percentage.  It's a small percentage.
>
> Q.    It's very small, isn't it?

---

[249]  Singh Dep. at 214:23-215:13; Pritchard Dep. at 199:15-22.

[250]  Naftalis *Finn* Dep. at 126:14-24; Colditz Test. 8/23/06 at 400:7-12 ("[W]e can look in populations and see quite substantial variation in the levels of circulating estrogens in postmenopausal women."); Beck Dep. at 288:17-289:1.

[251]  Pritchard Dep. at 304:13-305:15.

[252]  Pritchard Dep. at 307:11-22; Gadi Dep. at 224:8-19; *see also id.* at 225:9-226:3 (testifying that he has never told a patient, a colleague or a public forum that a woman who experienced menopausal symptoms is not at risk for developing ER-positive breast cancer).

[253]  Dr. Naftalis concedes the same is true for women with osteoporosis.  *See* Naftalis *Spinelli* Dep. at 92:5-14.

A.    Yes.[254]

Indeed, Dr. Naftalis's testimony is consistent with new data from studies evaluating blood estrogen levels in women with hot flashes and vaginal atrophy.  Those studies, discussed below, confirm that there is considerable variability in estrogen levels among women with hot flashes and vaginal atrophy, and that the vast majority of these women have detectable amounts of internal estrogen in their bodies.  Thus, the current scientific data shows that most menopausal women—even those who experience hot flashes and vaginal atrophy—are "hormone sufficient," meaning that they have sufficient internal estrogen to develop ER+ breast cancers.

a)    **Hot Flashes**

In August 2010, Alexander *et al.* published results of a study in which the investigators measured blood estrogen levels in women with and without hot flashes.[255]  Dr. Naftalis ignored this study.  In the group of 109 women with hot flashes, the mean blood estradiol level was 291 pmol/L, with a range from 11 to 1969 pmol/L.  Although estrogen levels varied widely, none of the women had undetectable estrogen levels.  By Dr. Naftalis's own definition, all 109 women in the study were "hormone sufficient" and, thus, had sufficient endogenous estrogen to develop ER+ breast cancers.

b)    **Vaginal Atrophy**

A similar study was conducted by Repše-Fokter *et al.* assessing the relationship between vaginal atrophy and blood estrogen levels.[256]  Again, Dr. Naftalis ignored this study.  Women with vaginal atrophy had a mean blood estradiol level of 25.6 pmol/L with a range from <18-274

---

[254]  Naftalis *Finn* Dep. at 130:16-131:16.

[255]  *See* Alexander et al., FERTIL. STERIL. 2010;94:1037-43 (attached as Ex. 74).

[256]  *See* Repše-Fokter et al., GYNECOL. ENDOCRINOL. 2008;24:339-404 (attached as Ex. 75).

pmol/L.   As the graphic from the study below indicates, there was tremendous variability in blood estradiol levels among the 51 women with vaginal atrophy.[257]   Significantly, more than 90% of the women with vaginal atrophy had detectable levels of estradiol.  Indeed, Dr. Naftalis admits that only 4 of the 51 women had undetectable levels.[258]



Dr. Naftalis's admissions and the new data from the Alexander and Repše-Fokter studies demonstrate that Dr. Naftalis has no basis—no reliable scientific methodology—to conclude that Ms. Mitchell is one of the very small percentage of women with menopausal symptoms who actually has undetectable levels of estrogen.  Absent a reliable methodology, Dr. Naftalis cannot reliably rule out internal estrogen as the cause of Ms. Mitchell's ER+/PR– breast cancer.

### CONCLUSION

For the foregoing reasons the Court should grant Wyeth's motion to exclude expert testimony that Prempro causes ER+/PR– breast cancer, and that Prempro caused Plaintiff Bobbie Mitchell's ER+/PR– breast cancer.

---

[257] *Id*. at 401.

[258]  Naftalis *Spinelli* Dep. at 100:6-10.

Respectfully submitted,

/s/ F. Lane Heard II

F. Lane Heard III (D.C. Bar #291724)

WILLIAMS & CONNOLLY LLP
725 12th Street, NW
Washington, DC 20005-5901
(202) 434-5000

Lyn P. Pruitt (Ark. Bar No. 84121)

MITCHELL, WILLIAMS, SELIG, GATES &
WOODYARD, PLLC
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201-3525
(501) 688-8800
*lpruitt@mwsgw.com*

Loren H. Brown (N.Y. Bar No. 2533529)

DLA PIPER LLP (US)

1251 Avenue of the Americas
New York, NY  10020-1104
(212) 335-4846 (T)
(212) 335-4501 (F)
E-mail: loren.brown@dlapiper.com

*Attorneys for Wyeth*

DATED:  May 27, 2011