**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | : | **MDL Docket No. 4:03-cv-01507-BRW** |
| | : | |
| **PREMPRO PRODUCTS LIABILITY** | : | *Lewis  v. Wyeth* |
| **LITIGATION** | : | **4:06-cv-01383-BRW** |
| | : | |
| | : | *Johnson v. Wyeth* |
| | : | **4:04-cv-02090-BRW** |
| | : | |
| | : | *Whatley v. Wyeth* |
| | : | **4:11-cv-00203-BRW** |
| | : | |
| | : | *Armstrong v. Wyeth* |
| | : | **4:04-cv-01193-BRW** |

**WYETH'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE
ANY MEDICAL CAUSATION OPINION THAT PREMPRO
CAUSES ESTROGEN-RECEPTOR-POSITIVE/ HER2-POSITIVE (ER+/HER2+)
BREAST CANCER**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

I.   THE PSC'S EXPERTS MUST RELIABLY RULE IN PREMPRO AND RULE OUT ALL OTHER POTENTIAL CAUSES OF PLAINTIFFS' ER+/HER2+ BREAST CANCERS ........................................................................................... 5

II.   THE PSC'S EXPERTS PROVIDE NO RELIABLE EPIDEMIOLOGICAL EVIDENCE TO ESTABLISH THAT PREMPRO IS CAPABLE OF CAUSING ER+/HER2+ BREAST CANCER ........................................................................ 6

III.   THE PSC'S EXPERTS HAVE NO RELIABLE METHODOLOGY TO RULE IN PREMPRO AS A POTENTIAL CAUSE OF ANY INDIVIDUAL PLAINTIFF'S ER+/HER2+ BREAST CANCER .......................................... 11

    A.   Dr. Naftalis Now Admits that ER+/HER2+ Breast Cancers Do Not Require Estrogen to Grow After the First Cancer Cell Is Present ...................... 11

    B.   No Methodology Exists to Establish that a Plaintiffs' Prempro Use Predated the Development of the First Cancer Cell............................................ 14

    C.   There Is No Reliable Basis to Conclude that the Form of Estrogen in Prempro—Conjugated Equine Estrogen—Has Any Effect on ER+/HER2+ Breast Cancer Development ................................................................ 16

IV.   THE PSC'S EXPERTS HAVE NO RELIABLE METHODOLOGY TO RULE OUT THE HER2 ONCOGENE, OTHER GROWTH FACTORS, AND INTERNAL ESTROGEN AS THE CAUSE OF PLAINTIFFS' ER+/HER2+ BREAST CANCER ................................................................................... 18

    A.   No Reliable Methodology Exists for Ruling Out the HER2 Oncogene as a Cause of Any Woman's ER+/HER2+ Breast Cancer........................................ 19

        1.   There Is No Dispute that the HER2 Oncogene Causes Breast Cancer ................................................................................................. 19

        2.   No Reliable Basis Exists to Conclude that Mutation of the HER2 Gene Is a "Late Event" in ER+/HER2+ Breast Cancers and, thus, to Rule Out the HER2 Oncogene as a Cause of Any ER+/HER2+ Breast Cancer ................................................................................. 20

    B.   No Reliable Methodology Exists to Rule Out Other Growth Factors and Pathways as a Cause of Any Woman's ER+/HER2+ Breast Cancer ................. 25

    C.   No Reliable Methodology Exists to Rule Out Internal Estrogen as a Cause of Any Woman's ER+/HER2+ Breast Cancer .................................................... 27

        1.   The Presence of Menopausal Symptoms Is Not a Reliable Method to Rule Out Internal Estrogen as the Cause of a Woman's Breast Cancer ................................................................................................. 27

**TABLE OF CONTENTS**
(continued)

**Page**

2.    Studies Reporting a Lower Risk of Breast Cancer in Women with Menopausal Symptoms Do Not Provide a Reliable Basis to Conclude that Any Individual Plaintiff Who Had Menopausal Symptoms Lacked Sufficient Internal Estrogen ..................................... 31

CONCLUSION.................................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Allen v. Pa. Eng'g Corp.*,
102 F.3d 194 (5th Cir. 1996) ..............................................................................22

*Barber v. United Airlines, Inc.*,
17 F. App'x 433 (7th Cir. 2001) ..........................................................................23

*Cano v. Everest*,
362 F. Supp. 2d 814 (W.D. Tex. 2005).................................................................9

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)......................................................................................25, 26

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) ..............................................................................11

*Gen. Elec. Co. v. Joiner Co.*,
522 U.S. 136 (1997)......................................................................................10, 14

*Glastetter v. Novartis Pharms. Corp.*,
252 F.3d 986 (8th Cir. 2001) ................................................................................9

*Haller v. AstraZeneca Pharms. LP*,
598 F. Supp. 2d 1271 (M.D. Fla. 2009)...............................................................12

*Happel v. Walmart Stores, Inc.*,
602 F.3d 820 (7th Cir. 2010) ..............................................................................10

*Huss v. Gayden*,
571 F.3d 442 (5th Cir. 2009) ..............................................................................10

*In re Bausch & Lomb, Inc. Contact Lens Solution Prods. Liab. Litig.*,
Civil Action No. 2:06-MN-77777-DCN, 2009 WL 2750462 (D.S.C. Aug. 26, 2009) ...........12

*In re Prempro Prods. Liab. Litig.*,
738 F. Supp. 2d 887 (E.D. Ark. 2010).................................................8, 9, 16, 17

*In re Prempro Prods. Liab. Litig.*,
765 F. Supp. 2d 1113 (W.D. Ark. 2011)............................................................9, 11

*In re Rezulin Prods. Liab. Litig.*,
369 F. Supp. 2d 398 (S.D.N.Y. 2005)..................................................................23

*Kumho Tire Co., v. Carmichael*,
    526 U.S. 137 (1999)................................................................................................7, 9

*McClain v. Metabolife Int'l, Inc.*,
    401 F.3d 1233 (11th Cir. 2005) .........................................................................9, 25

*Nelson v. Tenn. Gas Pipeline Co.*,
    No. 95-1112, 1998 WL 1297690 (W.D. Tenn. Aug. 31, 1998).............................16

*Perry v. United States*,
    755 F.2d 888 (11th Cir. 1985) ...............................................................................11

*Scroggin v. Wyeth*,
    586 F.3d 547 (8th Cir. 2009) ......................................................................... passim

## PRELIMINARY STATEMENT

This Court recently said that it is "dubious" about the reliability of Dr. Naftalis's methods.[1]   It should be even more dubious now.   Just last year, on direct examination, Dr. Naftalis told a Philadelphia judge and jury that a *negative* test for the HER2 oncogene was the basis for her opinion that combination hormone therapy caused Ms. Foust's ER+/PR+ breast cancer:

> Q.  Now, the fact that the tumor was hormone positive and the findings with regard to the percentages and the ki-67, and the fact that it was HER 2 negative, did those contribute to the basis for your opinion that this particular product was the but for cause of her breast cancer?
>
> A.  Yes, they did.
>
> Q.  And what impact did it have on your opinion?
>
> A.  Well, reviewing all the information, it was a hormone positive tumor. . . . *[T]he fact that it's HER 2 negative which means it didn't have any sort of way to grow by a different pathway*, and that it was a very aggressive tumor, all suggest that her E plus P played a significant role in the development of her cancer.[2]

In other words, as of 2010, Dr. Naftalis's methodology was based on her ability to rule out the HER2 oncogene as an independent cause of a plaintiff's ER+/PR+ breast cancer.

Dr. Naftalis's methodology was consistent with the methodology described by the Eighth Circuit in *Scroggin*. Unlike the plaintiffs in these bellwether cases, "Scroggin submitted to every available genetic test for breast cancer, all of which came back negative for the most common breast cancer genes."  *See Scroggin v. Wyeth*, 586 F.3d 547, 553, 566 (8th Cir. 2009).  Based in

---

[1]   Order, *Wilson v. Wyeth*, Docket No: 3:05-cv-00078-BRW (Sept. 23, 2010) (Doc. No. 113) ("*Wilson* Order") at 2 (attached as Ex. 99).

[2]   Tr. Test. of Dr. Elizabeth Naftalis, *Foust v. Wyeth*, Feb. 3, 2010 PM at ("Naftalis *Foust* PM Test.") at 63:18-64:14 (Ex. 48 to Mem. in Support of Wyeth's Mot. to Exclude Any General and Specific Causation Opinion That Prempro Causes Estrogen-Receptor-Positive/ HER2-

part on these negative genetic tests, the Eighth Circuit held that admitting Dr. Naftalis's testimony was not an abuse of discretion and that she "ruled out other possible causes of Scroggin's breast cancer." *Id.* at 567. Wyeth's request for this bellwether *Daubert* proceeding was based, in part, on this legal and factual history.

The PSC's Opposition ignores this history and abandons another premise of the *Scroggin* decision—the theory that breast cancers with estrogen and progesterone receptors "are dependent upon hormones for their growth." *Id.* at 566. Until now, Dr. Naftalis's theory has been that breast cancers with estrogen and progesterone receptors will lie dormant after menopause unless some form of estrogen or progesterone fuels them. The mistaken observation that Wyeth did not dispute this theory was another major reason that the Eighth Circuit found no abuse of discretion in *Scroggin*. *Id.* (stating that "[t]here was no dispute at trial that hormone-receptor-positive tumors are dependent upon hormones for their growth").

In cases that test positive for the HER2 oncogene, however, Dr. Naftalis now admits that the HER2 oncogene is fully capable of growing an ER+/PR+ breast cancer on its own—before or after menopause:

> Q. With regard to the HER2/neu protein I just want to be sure your testimony is clear on this. You were asked if it can promote the tumor by itself and if the tumor can grow on HER2/neu without hormones. Your testimony is based on the tumor once it becomes cancerous; is that correct?
>
> A. That's correct.
>
> Q. And at that time the HER2 protein by itself can cause the cancer to spread without hormones being involved?

---

Positive (ER+/HER2+) Breast Cancer, MDL Docket No: 4:03-cv-01507-BRW (May 27, 2011) (Doc. No. 2706) ("Wyeth's Br.")) (emphasis added).

> A.  It can cause it to grow and spread, correct.[3]
>
> ***
>
> Q.  *You do agree that the Her-2 growth factor can independently promote the growth of tumors that have estrogen or progesterone receptors on them*, don't you?
>
> A.  *Yes.*[4]

The PSC's Opposition does not attempt to reconcile these admissions with Dr. Naftalis's prior theory that "abnormal," "susceptible," "pre-cancerous," or cancerous breast cells will not grow after menopause unless a woman has a source of estrogen and progesterone to fuel them.[5]

Now we have a moving target.  In the face of positive tests for the HER2 oncogene in the four bellwether plaintiffs, as well as a concession that the HER2 oncogene can grow ER+/PR+ breast cancers on their own, Dr. Naftalis has a new theory that is at odds with both her methods in *Foust* and a premise of the decision in *Scroggin*.  This new theory is that, while the HER2 oncogene can promote the growth of breast cancer on its own, it cannot cause the initiation of the first cancer cells if those cells also happen to have some estrogen receptors on them.  In such cases, Dr. Naftalis claims that the HER2 oncogene is a "late event," occurring only after estrogen causes the first cancer cells in a woman's breast.  *This theory is based on Dr. Naftalis's interpretation of a single diagram from one article depicting a theoretical model of breast*

---

[3]   Testimony of Dr. Elizabeth Naftalis, *Esposito v. Wyeth Frye* Hearing, Apr. 8, 2010 ("Naftalis *Esposito* Hr'g") at 159:14-24 ( Ex. 4 to Wyeth's Br.).

[4]   Naftalis, *Singleton v. Wyeth Frye* Hearing, Jan. 19, 2010 ("Naftalis *Singleton* Hr'g") at 171:7-11 (emphasis added) (Ex. 5 to Wyeth's Br.).

[5]   Tr. Test. of Dr. Elizabeth Naftalis, *Kendall v. Wyeth*, Nov. 10, 2009 AM at 69:25-70:20, 105:23-106:2 ( Ex. 42 to Wyeth's Br.); Deposition of Dr. Elizabeth Naftalis, *Daniel v. Wyeth*, Mar. 23, 2006 at 180:9-181:2 (Ex. 43 to Wyeth's Br.); Tr. Test. of Dr. Elizabeth Naftalis, *Barton v. Wyeth*, Sept. 22, 2009 AM at 51:18-52:6, 57:22-58:25 (Ex. 44 to Wyeth's Br.); Tr. Test. of Dr. Elizabeth Naftalis, *Foust v. Wyeth*, Feb. 3, 2010 AM at 82:11-20 (Ex. 45 to Wyeth's Br.); Tr. Test. of Dr. Elizabeth Naftalis, *Scroggin v. Wyeth*, Feb. 11, 2008 at 1077:7-8 (Ex. 46 to Wyeth's Br.); Tr. Test. of Dr. Elizabeth Naftalis, *Singleton v. Wyeth*, Feb. 1, 2010 PM at 24:13-25 (Ex. 47 to Wyeth's Br.).

*cancer development.* In terms of scientific authority, the PSC's Opposition cites no actual data to support Dr. Naftalis's theory that the HER2 oncogene can be ruled out as initially causing breast cancer when a tumor also has some estrogen receptors on it. In terms of legal authority, the scientific validity of this theory has not been evaluated by this Court or the Eighth Circuit, and that is another reason why a bellwether *Daubert* proceeding is needed in these cases.

This Court also needs to evaluate the reliability of Dr. Naftalis's claim that Prempro, as opposed to the HER2 oncogene, is the so-called "early event" that causes breast cancer before the HER2 oncogene arrives on the scene. Dr. Naftalis has no reliable evidence to support this theory either. Dr. Colditz has stated that "any effect of hormone therapy is [] at most a late stage effect, very late in the process."[6] The PSC withdrew Dr. Colditz before producing him for a seven-hour deposition. Without a reliable method to establish that Prempro is the "early event" as opposed to HER2 or other cancer causing genes, Dr. Naftalis should be precluded from giving a specific causation opinion in these cases.

Different case facts, new expert admissions, and a materially different scientific record also warrant an updated evaluation of Dr. Naftalis's symptoms methodology. The current scientific record proves that the mere presence of menopausal symptoms is an unreliable basis to rule out internal hormones as the cause of any woman's ER+/HER2+ breast cancer. That record is based in part on data that Dr. Naftalis knew about but ignored.

In light of these unique factual and scientific issues, the PSC's experts' opinions require close scrutiny under *Daubert*. A *Daubert* hearing based on a full record that includes testimony from Dr. Naftalis is certain to assist the Court in exercising its "gatekeeping" role in these

---

[6]   Tr. Test. of Dr. Graham Colditz, *Nelson v. Wyeth*, Sept. 14, 2006 ("Colditz Test. 9/14/06") at 21:23-22:2 (excerpts attached as Ex. 100).

bellwether cases.  It also will help ensure that unreliable expert testimony does not have a place in federal courtrooms throughout the country.

## I.      THE PSC'S EXPERTS MUST RELIABLY RULE IN PREMPRO AND RULE OUT ALL OTHER POTENTIAL CAUSES OF PLAINTIFFS' ER+/HER2+ BREAST CANCERS.

While the Opposition suggests "[t]here is nothing new here" and relies on the Eighth Circuit's decision in *Scroggin*, these bellwether cases present unique scientific issues that distinguish them from *Scroggin*.[7]  In *Scroggin*, the plaintiff took combination hormone therapy for approximately 11 years and was diagnosed with breast cancer that was "one hundred percent positive for estrogen and progesterone receptors" and tested "negative for the most common breast cancer genes," such as the HER2 oncogene.  *Scroggin*, 586 F.3d at 553, 566.  Although the Eighth Circuit held that this Court did not abuse its discretion when it admitted Dr. Naftalis's causation opinion, that holding was based on this Court's finding that:

(1) Ms. Scroggin's breast cancer was "one hundred percent positive for estrogen and progesterone receptors" and tested "negative for the most common breast cancer genes";

(2) There was epidemiologic evidence that Prempro use for 11 years was capable of causing a breast cancer that was "one hundred percent positive for estrogen and progesterone receptors" and tested "negative for the most common breast cancer genes"; and

(3) There was no dispute at trial that breast cancers that are "one hundred percent positive for estrogen and progesterone receptors" and test "negative for the most common breast cancer genes" are "dependent upon hormones for their growth." *Id*. at 566-67.

Having "ruled out other possible causes" of Mrs. Scroggin's breast cancer, the Eighth Circuit found that this Court did not abuse its discretion when it allowed Dr. Naftalis to testify.  *Id*. at 567.

---

[7]    Pls.' Opp. at 2.

The case facts and the scientific record here are materially different than those in *Scroggin*. First, the type of cancer at issue is a breast cancer that is ER+/HER2+. The PSC's experts do not dispute that ER+/HER2+ breast cancer is a unique subtype of breast cancer (sometimes referred to as luminal B) caused by a known genetic mutation to the HER2 gene.[8] Second, the PSC's experts have not offered any reliable epidemiological evidence that Prempro is capable of causing ER+/HER2+ breast cancers. Third, the PSC's experts now concede that ER+/HER2+ breast cancers do not require estrogen or progesterone to grow—meaning they are not "hormone dependent"—once the first cancer cell is present in a woman's body.

The validity of any specific causation methodology depends on both the case facts and the current state of the science. There is no test, marker, or pathologic signature that can be used to prove that Prempro caused any individual woman's breast cancer. In these bellwether cases, where the breast cancer tested positive for the HER2 oncogene, Dr. Naftalis must have a reliable basis to rule in Prempro as a possible cause, and a valid methodology to rule out all other causes, including the HER2 oncogene, other growth factors and pathways, and internal hormones. Here, unlike in *Scroggin*, no reliable basis exists for ruling in Prempro or for ruling out other causes. Accordingly, any expert testimony that Prempro is capable of causing ER+/HER2+ breast cancer, and that it is the cause in fact of any bellwether plaintiff's ER+/HER2+ cancer, should be excluded under FED. R. EVID. 702.

## II. THE PSC'S EXPERTS PROVIDE NO RELIABLE EPIDEMIOLOGICAL EVIDENCE TO ESTABLISH THAT PREMPRO IS CAPABLE OF CAUSING ER+/HER2+ BREAST CANCER.

The PSC's experts cite a total of four epidemiological studies as evidence that Prempro use can cause ER+/HER2+ breast cancer: the follow-up results from the WHI clinical trial (Chlebowski 2010) and three observational studies (Saxena 2010, Phipps 2008, and Borgquist

---

[8]   *Id.* at 8.

2007).[9]   While PSC counsel now cite two additional studies (Goss 2011 and Prasad 2003) in

their Opposition,[10] none of these studies, whether taken individually or as a whole, provide

reliable evidence that Prempro use increases breast cancer risk.

      *Studies Reporting Non-Statistically Significant Findings*.   Two of the studies—

Chlebowski 2010[11] and Phipps 2008[12]—did not find a statistically significant association

between Prempro use and HER2+ breast cancer.   The Opposition argues that "evidence that falls

short of 'statistical significance' does not preclude an expert from relying on it."[13]   But this

argument suggests that the PSC's experts may employ a different "level of intellectual rigor" in

analyzing epidemiological data in the courtroom than they would in their work outside the

courtroom.   *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).   Dr. Colditz

confirmed that "[t]he assessment of statistical significance is standard practice" in

epidemiology.[14]   And Dr. Gadi testified that non-significant results are useful only for generating

hypotheses and confirmed that he would not rely on such results in his clinical practice.[15]   This

does not mean that such results should be ignored, but rather that non-significant results cannot

provide a reliable basis for concluding that a causal relationship exists.   As the Court recognizes,

"if an expert places undue emphasis on statistically insignificant evidence, it may indicate that

---

[9]   Wyeth's Br. at 52-53.

[10]  Pls.' Opp. at 26-27.

[11]  Chlebowski et al., JAMA 2010;304:1684-1692 at 1688, Table ($p=0.17$) ("Chlebowski 2010") (Ex. 81 to Wyeth's Br.).

[12]  Phipps, et al. CANCER 2008;113:1521-26 at 1523 ("*No statistically significant* associations between menopausal status, age at menopause, or hormone therapy use and risks of either HER-2-overexpressing or triple-negative tumors were observed.") ("Phipps 2008") (emphasis added) (Ex. 82 to Wyeth's Br.).

[13]  Pls.' Opp. at 24.

[14]  Deposition of Dr. Graham Colditz, *In re: Hormone Therapy Litig.*, May 2, 2006 ("Colditz Dep. 5/2/06") at 161:8-162:22 (Ex. 57 to Wyeth's Br.).

[15]  Deposition of Dr. Vijayakrishna K. Gadi, May 7, 2011 ("Gadi Dep.") at 188:23-189:16 (Ex. 7 to Wyeth's Br.).

the expert's methods are unreliable." *In re Prempro Prods. Liab. Litig.*, 738 F. Supp. 2d 887, 892 (E.D. Ark. 2010).

      ***Studies Lumping Together Different Types of Breast Cancer.***  The PSC's experts cite to a statistically significant increased risk for "luminal cancers" in the Phipps 2008 study, but that result is based on lumping together luminal A cancers (which are typically HER2–) with luminal B cancers (which are typically HER2+).[16]  The PSC's experts admit that luminal A and luminal B cancers are different diseases, have different prognoses, and require different treatments.[17] And, as Dr. Colditz explained, "[l]umping all hormones and all cancer together is really not biologically relevant at this stage of our understanding of the causes of breast cancer."[18]  Because the authors do not provide a specific risk estimate for luminal B cancers, these data do not provide reliable evidence regarding the alleged association between Prempro use and ER+/HER2+ breast cancers.

      ***Studies Reporting Risks for Hormone Therapy Formulations Other Than Prempro.*** The Borgquist 2007 study was conducted in Sweden where, as the PSC's experts admit, women were not taking Prempro.[19]  Studies involving other medications cannot establish that Prempro causes cancer.  As this Court recognizes, "'[e]ven minor deviations in molecular structure can

---

[16]  Pls.' Opp. at 25-26, 7 ("The hormone dependent cancers, or 'luminal' cancers, are classified as either Luminal A, which is typically both ER+ and generally progesterone-receptor positive (PR+); and Luminal B, which is ER+, sometimes PR+, and can also be positive for expression of Her2Neu.").

[17]  Wyeth's Br. at 17-19.

[18]  Deposition of Dr. Graham Colditz, *In re Prempro Prods. Liab. Litig.*, Dec. 29, 2006 ("Colditz Dep. 12/29/06") at 526:7-22 (Ex. 52 to Wyeth's Br.).  PSC Expert Dr. Donald Austin also testified that it is inappropriate to lump together data on different types of breast cancer: "For the same reasons that it is inappropriate to use all different formulations, for the same reason that it is *inappropriate to look at all different cell type*s, it is also inappropriate to look at all durations and lump them all together.").  Deposition of Dr. Donald Austin, Mar. 13, 2007, at 208:16-20 (emphasis added) (excerpts attached as Ex. 101).

radically change a particular substance's properties and propensities.'"  *See In re Prempro*, 738 F. Supp. 2d. at 893 (quoting *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 990 (8th Cir. 2001)); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1246-47 (11th Cir. 2005) (finding expert's opinion that attempted to extrapolate the effects of one medication to the effects of another speculative and overreaching).  Like the Fournier study, which this Court previously rejected because it did not involve Prempro, the Borgquist study does not provide relevant evidence regarding the relationship between Prempro use and ER+/HER2+ breast cancer.  *See In re Prempro Prods. Liab. Litig.*, 765 F. Supp. 2d 1113, 1122 (W.D. Ark. 2011).

While PSC counsel disagree, the PSC's own experts confirm that, when assessing whether a particular medication causes a particular type of outcome, it is proper to rely on studies that evaluate the medication in question rather than on studies of other medications.[20]  In relying upon the Borgquist study, the PSC's experts are thus not following their own methods and scientific standards.  *See Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814, 836 (W.D. Tex. 2005) (excluding expert who failed to follow his own methodology); *see also Kumho*, 526 U.S. at 152.

***Studies Have Significant Methodological Limitations that Preclude the Study Authors from Drawing Firm Conclusions.***   The Saxena 2010 study found an increased risk of ER+/HER2+ breast cancer,[21] but the study authors are more cautious than PSC counsel and their experts about drawing conclusions from that finding.[22]  The authors acknowledge that HER2 test

---

[19]   Borgquist, et al. INT. J. CANCER 2007;120:2202–2207 (Ex. 85 to Wyeth's Br.); Wyeth's Br. at 54-55.

[20]   Deposition of Dr. Baljit Singh, May 8, 2011, ("Singh Dep.") at 150:19-150:23 (Ex. 2 to Wyeth's Br.).

[21]   Saxena, et al. CANCER EPIDEMIOL. BIOMARKERS PREV. 2010;19:OF1–13 at OF11, table 6 ("Saxena 2010") ( Ex. 84 to Wyeth's Br.).

[22]   Wyeth's Br. at 54.

results were not available for more than half of the breast cancers in the study (1,533 of 2,857).[23] This led the authors to conclude that the HER2 results may be a "statistical fluke"—a conclusion that is directly at odds with the PSC's experts' interpretation of the same data.[24]

Drawing conclusions that the study authors are unwilling to draw is a red flag of unreliability. "It is axiomatic that causation testimony is inadmissible if an expert relies upon studies [or] publications, the authors of which were themselves unwilling to conclude that causation had been proven." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 826 (7th Cir. 2010) (quoting *Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009)); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 145 (1997) (holding that an epidemiologic study did not support an expert's opinions when the authors of the study refused to reach the same conclusion). One observational study alone—even if well designed—cannot reliably establish causation, as Dr. Colditz testified.[25] That is especially true when the researchers themselves recognize that their results are unreliable and may represent a "statistical fluke."

***Studies and Argument Introduced by PSC Counsel.*** Lacking any reliable expert testimony to establish that Prempro use causes ER+/HER2+ breast cancer, PSC counsel introduce their own interpretation of the science. First, shifting the burden of proof, PSC counsel claim that "there is not a single published epidemiological study which concludes that ER+/HER2+ cancers are not hormone-dependent and thus can be promoted to grow by E+P."[26]

---

[23]   Saxena 2010 at OF11 ("Analysis excludes 1,533 tumors with unknown HER2 status.").

[24]   *Id.* ("Interestingly, the point estimates were slightly higher for the subset of tumors that were ER+ or PR+ and HER2+, but this may be a *statistical fluke* as the numbers for this subtype-specific analysis were very limited because information on HER2 status was not recorded in the cancer registry records until the year 2000.") (emphasis added).

[25]   Colditz Dep. 12/29/06 at 799:18-800:3; *see also* Federal Judicial Center, REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 377 (2000) ("Rarely, if ever, does a single study conclusively demonstrate a cause–effect relationship.") (excerpts attached as Ex. 102).

[26]   Pls.' Opp. at 23.

But "[i]t is [the PSC's experts'] burden to prove there is an increased risk; it is not Wyeth's burden to establish the opposite." *In re Prempro*, 765 F. Supp. 2d at 1124.

Second, PSC counsel identify two additional studies, Goss 2011 and Prasad 2003. Counsel argue that these additional studies confirm that Prempro causes ER+/HER2+ breast cancer.[27]  But "'[t]he examination of a scientific study by a cadre of lawyers is not the same as its examination by others trained in the field of science or medicine.'"  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318, n. 8 (9th Cir. 1995), quoting *Perry v. United States*, 755 F.2d 888, 892 (11th Cir. 1985) (Johnson, J.).  Neither study, however, provides any reliable basis to conclude that Prempro use causes ER+/HER2+ breast cancer, because neither study assessed the relationship between Prempro use and this type of breast cancer.  The Goss 2011 study was a prevention study in which women were treated with anti-estrogen therapy, not Prempro or any other brand of hormone therapy.[28]  In the Prasad 2003 study, all the participants already had breast cancer when they entered the study.[29]  The authors did not assess whether Prempro caused any type of breast cancer, let alone ER+/HER2+ breast cancer.[30]

## III.   THE PSC'S EXPERTS HAVE NO RELIABLE METHODOLOGY TO RULE IN PREMPRO AS A POTENTIAL CAUSE OF ANY INDIVIDUAL PLAINTIFF'S ER+/HER2+ BREAST CANCER

### A.   Dr. Naftalis Now Admits that ER+/HER2+ Breast Cancers Do Not Require Estrogen to Grow After the First Cancer Cell Is Present.

The PSC's experts never have argued that Prempro initiates breast cancer—that is, that it causes a mutation in the DNA of a normal breast cell that sets off the cascade of events leading to clinically detectable breast cancer.   Instead, as PSC counsel explained in the *Esposito* case,

---

[27]   *Id.* at 26-27.

[28]   Goss et al., New Engl. J. Med. 2011;364:2381-91 at 2382-83 ("Goss 2011") (attached as Ex. 103).

[29]   Prasad et al. Cancer 2003;98:2539-46 at 2539 ("Prasad 2003") (attached as Ex. 104).

[30]   *Id.*

the PSC's causation theory always has been about "growth."[31]   For years, Dr. Naftalis has

testified that she can rule in Prempro as a potential cause of any ER+/PR+ breast cancer because

all such breast cancers *require hormones to grow*.[32]   Dr. Naftalis also has consistently testified

that ER+/PR+ breast cancers deprived of hormones after menopause will become dormant—stop

growing or even regress.[33]   To support this point, Dr. Naftalis has repeatedly relied on autopsy

studies showing that some post-menopausal women die with undetected breast cancers.[34]   On

this basis, along with her symptoms hypothesis, Dr. Naftalis allegedly ruled in Prempro as the

only fuel source for every plaintiff's breast cancer.[35]   This was the causation theory that the

Eighth Circuit upheld in *Scroggin*, which involved a HER2-negative breast cancer that was "one

hundred percent positive for estrogen and progesterone receptors."   *Scroggin*, 586 F.3d at 566.

Since then, however, Dr. Naftalis's causation theory has become "a veritable moving

target."   *Haller v. AstraZeneca Pharms. LP*, 598 F. Supp. 2d 1271, 1296 (M.D. Fla. 2009); *In re*

*Bausch & Lomb, Inc. Contact Lens Solution Prods. Liab. Litig.*, Civil Action No. 2:06-MN-

77777-DCN, 2009 WL 2750462, at *13 (D.S.C. Aug. 26, 2009).   Dr. Naftalis now admits that

ER+/HER2+ breast cancers can grow on their own without hormones, regardless of whether a

tumor has estrogen receptors or whether the plaintiff experienced symptoms.[36]   In the *Esposito*

case, a state court case in Florida, the plaintiff's tumor was ER+/HER2+.   Dr. Naftalis testified

last year:

> Q. With regard to the HER2/neu protein I just want to be sure
> your testimony is clear on this. You were asked if it can
> promote the tumor by itself and if the tumor can grow on

---

[31]   Naftalis *Esposito* Hr'g at 250:25-251:6 (additional excerpts attached as Ex. 105).
[32]   Wyeth's Br. at 19-20.
[33]   *Id*.
[34]   *Id*.
[35]   *Id*.
[36]   *Id*.

> HER2/neu without hormones. Your testimony is based on the tumor once it becomes cancerous; is that correct?
>
> A. That's correct.
>
> Q. And at that time *the HER2 protein by itself can cause the cancer to spread without hormones being involved?*
>
> A. *It can cause it to grow and spread, correct.*[37]

The Opposition now argues that Dr. Naftalis actually was referring only to HER2+ breast cancers that lack estrogen receptors.[38]   But Dr. Naftalis's testimony in other cases is equally unambiguous—once the first cancer cell is present, the HER2 oncogene and other growth factors can promote the growth of ER+/HER2+ breast cancers without estrogen and progesterone.   Also last year, in cases involving plaintiffs with estrogen receptors, she testified:

> Q. You do agree that the Her-2 growth factor can independently promote the growth of tumors that have estrogen or progesterone receptors on them, don't you?
>
> A. Yes.[39]
>
> ***
>
> Q. And once a cell is cancerous, a tumor with estrogen receptors on it can grow on its own without estrogen or progesterone; is that right?
>
> MR. KETTERER: Objection. You can answer.
>
> A. The estrogen and progesterone is going to act like fuel to have it to continue to grow. But it can continue to grow. *It can have mechanisms to make it continue to grow on its own.*[40]

To be sure, this does not mean that a woman's internal estrogen cannot play some role in the growth of ER+/HER2+ breast cancer cells.   Wyeth agrees that the anti-estrogen therapy

---

[37]   Naftalis *Esposito* Hr'g at 159:14-24 (emphasis added).
[38]   Pls.' Opp. at 9, 34.
[39]   Naftalis *Singleton* Hr'g at 171:7-11.
[40]   Deposition of Dr. Elizabeth Naftalis, *Spinelli v. Wyeth*, Nov. 10, 2010 ("Naftalis *Spinelli* Dep.") at 96:5-15 (Ex. 34 to Wyeth's Br.) (emphasis added).

studies that fill nearly seven pages of the Opposition provide evidence that some ER+/HER2+ breast cancers may respond to internal estrogen.[41]   But that does not mean, as Dr. Naftalis now acknowledges, that those cells *require* estrogen to grow.   On the contrary, as Dr. Singh explained, the fact that many ER+/HER2+ breast cancers do not respond to anti-estrogen therapy confirms that these cancers can grow, divide, and spread in the absence of estrogen.[42]

Unlike Dr. Naftalis's changing theory, Wyeth's position has been consistent on this issue. Wyeth and its experts have maintained throughout this litigation that there are many pathways for tumor growth, and that other factors such as the HER2 oncogene are sufficient to promote cancer growth, even in the absence of estrogen.   Dr. Naftalis's testimony since *Scroggin* confirms that fact.   Once the first cancer cell is present, ER+/HER2+ cancers do not *require* estrogen and progesterone to grow.

### B.   No Methodology Exists to Establish that a Plaintiff's Prempro Use Predated the Development of the First Cancer Cell.

As Wyeth explained in its opening brief, Dr. Naftalis's admissions show that "there is simply too great an analytical gap between the data and the opinion proffered."[43]   *Joiner*, 522 U.S. at 146.   No longer can Dr. Naftalis assume that a plaintiff's breast cancer required Prempro to grow to a detectable size.   After the first cancer cell is present, the "horse has left the barn."[44] Estrogen and progesterone are not required for growth because other factors are sufficient on their own to fuel growth.   Based on her post-2008 admissions, Dr. Naftalis needs a method to implicate Prempro before the "horse has left the barn"—a difficult proposition given that, as Dr. Colditz explained, "any effect of hormone therapy is [] at most a late stage effect, very late in the

---

[41]   Pls.' Opp. at 34-39.
[42]   Singh Dep. at 205:1-12.
[43]   Wyeth's Br. at 21, 48-52.
[44]   Wyeth's Br. at 20-21.

process."[45]  Indeed, Dr. Colditz admits it is merely a hypothesis that hormone therapy can play a role in malignant transformation.[46]

Is there a methodology for determining *when* the malignant transformation (the "promotion" of the abnormal cell into a cancer cell) occurred?  Dr. Naftalis does not describe any such methodology in any of her expert reports (and certainly not in the report produced for purposes of this *Daubert* proceeding), nor has she testified in any case that she can pinpoint the time when the transformation occurred.[47]  There was no reason for Dr. Naftalis to describe such a methodology before, when her opinion was that "hormone-dependent" cancers required estrogen to grow.  But now that her opinion is that hormone therapy is critical, not to growth, but to the malignant transformation of the first cancer cell, she must be able to say reliably whether that transformation occurred before or after a plaintiff began using hormone therapy.  But Dr. Naftalis has no validated methodology to determine when, in relation to taking hormone therapy, malignant transformation begins, changes in breast cells occur, or malignant transformation is complete.  There is no basis to conclude in all cases that the transformation must have occurred after a woman begins taking hormone therapy; after all, Dr. Naftalis has testified that the first cancer cells may be present in a woman's breast 15 to 20 years before diagnosis.[48]

Because Dr. Naftalis admits that ER+/HER2+ breast cancers can grow without estrogen and progesterone, has no methodology for determining when the first cancer cell was present, and admits that the first cancer cell may predate diagnosis by more than a decade, Dr. Naftalis cannot reliably conclude that any woman's ER+/HER2+ breast cancer required estrogen or

---

[45]   Colditz Test. 9/14/06 at 21:23-22:2 (additional excerpts attached as Ex. 100).

[46]   Deposition of Graham Colditz, *In re Hormone Therapy Litig.*,  Dec. 18, 2006 ("Colditz Dep. 12/18/06") at 231:24-232:8 (excerpts attached as Ex. 106).

[47]   Wyeth's Br. at 49-50, chart.

progesterone when she started taking Prempro.  Absent evidence of a temporal relationship between Prempro use and hormone dependence, there is no reliable basis to conclude that Prempro played any role in the bellwether plaintiffs' breast cancers.  *See* REF. MAN. at 376 ("A temporal, or chronological, relationship must exist for causation. . . . Without exposure before disease, causation cannot exist."); *Nelson v. Tenn. Gas Pipeline Co.*, No. 95-1112, 1998 WL 1297690, at * 6 (W.D. Tenn. Aug. 31, 1998).

C.     **There Is No Reliable Basis to Conclude that the Form of Estrogen in Prempro—Conjugated Equine Estrogen—Has Any Effect on ER+/HER2+ Breast Cancer Development.**

The PSC experts' HER2 opinions are premised on a theory that estrogen (not a combination of E+P), acting via the ER pathway, plays a critical role in the malignant transformation of ER+/HER2+ breast cancers.[49]   Therefore, even if Dr. Naftalis had a valid methodology to establish that Prempro use predated the onset of ER+/HER2+ breast cancer, she still needs to have reliable evidence that the form of estrogen in Prempro—conjugated equine estrogen—can play a role in the malignant transformation of ER+/HER2+ breast cancers.  Dr. Naftalis has none; her report and previous testimony are silent on the point.

As this Court recognizes, there are many different types of estrogens, and the effect of one type of estrogen cannot be imputed to another without a reliable basis.  *See In re Prempro*, 738 F. Supp. 2d at 893.  The PSC's experts concede that each type of estrogen is a different molecular compound, with a different chemical structure, different pharmacokinetic profile, different absorption rate, different metabolization rate, and different effects depending on the dose.[50]   Accordingly, they acknowledge that, in assessing whether one medication increases the

---

[48]   Deposition of Dr. Elizabeth Naftalis, *Finn v. Wyeth*, June 18, 2010 ("Naftalis *Finn* Dep.") at 103:7-14 (Ex. 1 to Wyeth's Br.).

[49]   Wyeth's Br. at 55-56.

[50]   Gadi Dep. at 155:11-156:18.

risk of breast cancer, it is scientifically in inappropriate to lump together data related to many different medications.[51]

None of the studies cited in the Opposition as evidence that estrogen is required for a normal breast cell to transform into an ER+/HER2+ breast cancer actually involved conjugated equine estrogen.[52]  And PSC counsel do not dispute that their experts did not perform an analysis to evaluate whether CEE is capable of activating the ER pathway before malignant transformation takes place.   This failure is particularly important, because the Court has determined already in its Premarin-only decision that CEE does not increase breast cancer risk. *See In re Prempro*, 738 F. Supp. 2d at 889.   And Dr. Gadi agrees.[53]   In fact, recent epidemiological data suggest that CEE may reduce the risk of breast cancer.[54]

The Opposition disregards this compelling evidence.   The stated reason is that the bellwether Plaintiffs took combination hormone therapy rather than CEE alone.[55]  But the PSC's experts' HER2 opinions relate specifically to estrogen and the ER pathway and rest on data regarding the effects of internal estrogen alone:

- "Dr. Gadi explains 'Her2 does not change the fundamental requirement by these luminal cancer cells' *dependence on ER-based growth*.'"[56]

- "Dr. Michaels concurs: Luminal B cancers 'are considered *estrogen-dependent* tumors, markedly influenced by downstream

---

[51]   Colditz Dep. 12/29/06 at 526:7-22 ("Lumping all hormones and all cancer together is really not biologically relevant [to] understanding the causes of breast cancer").

[52]   *See* Pls.' Opp. at 31-32 (citing Sircoulomb 2011, Han 2011, Liu 1995, and Kern 1994).

[53]   Gadi Dep. at 282:13-15.  Dr. Pritchard has also published an editorial in which she states "Now the WHI results have shown, with the robust methodology of a randomized trial, that estrogen alone does not clearly increase the risk of breast cancer."  Pritchard, *Should Observational Studies Be a Thing of the Past?,* J. NATL. CANCER INST., 2008;100:451-52 at 451 (attached as Ex. 107).

[54]   Wyeth's Br. at 57-59.

[55]   Pls.' Opp. at 68.

[56]   Pls.' Opp. at 31 (emphasis added).

actions of the *estrogen receptor*.'   He explains that '*estrogen receptor positive tumors progress in an* estrogen dependent way, whereas if *estrogen* wasn't there during that progression, they would not have progressed to that point of carcinoma.'"[57]

- "Dr. Brown plainly states: 'if the breast cancer is positive for estrogen and progesterone receptor then the beast [sic] cancer *developed along the estrogen dependent pathway.*'"[58]

Tellingly, none of the PSC's experts opined that progesterone had anything to do with malignant transformation, and, in fact, many of those same experts testified that Prempro causes breast cancer that lacks receptors for progesterone.[59]   Virtually every piece of evidence cited by PSC counsel—from anti-estrogen therapy studies to animal models—relates to the effects of internal estrogen *alone* on breast cancer risk.[60]

In other words, it is the PSC's experts' HER2 causation theory itself that makes the CEE data directly relevant to the *Daubert* question before this Court.   Therefore, absent any reliable evidence that CEE is capable of causing malignant transformation, and in the face of "gold standard" epidemiological data showing that CEE does not cause cancer Dr. Naftalis has no reliable methodology to rule in Prempro as a potential cause.

## IV.   THE PSC'S EXPERTS HAVE NO RELIABLE METHODOLOGY TO RULE OUT THE HER2 ONCOGENE, OTHER GROWTH FACTORS, AND INTERNAL ESTROGEN AS THE CAUSE OF PLAINTIFFS' ER+/HER2+ BREAST CANCER

Unlike the plaintiff in *Scroggin*, the bellwether Plaintiffs have breast cancers that are positive for the HER2 oncogene, a gene that causes breast cancer.[61]   Also unlike in *Scroggin*, Dr. Naftalis has now conceded that ER+/HER2+ breast cancers are not "hormone dependent" after

---

[57]   *Id.* (emphasis added).

[58]   *Id.* (emphasis added).

[59]   *See generally* Pls.' Response to Def. Wyeth's Mot. to Exclude Any General and Specific Causation Opinion That Prempro Causes Estrogen Receptor-Positive/Progesterone Receptor-Negative (ER+/PR-) Breast Cancer, MDL Docket No: 4:03-cv-1507-BRW (July 6, 2011) (Doc. No. 2755) ("Pls.' PR- Opp.").

[60]   *See* Pls.' Opp. at 30-39.

the first cancer cell is present—they can grow and develop as a result of growth factors and pathways independent of hormones.[62]   Furthermore, even if ER+/HER2+ breast cancers did require hormones at some point, those hormones can be the internal hormones produced naturally within every woman's body.[63]

To be admissible, Dr. Naftalis's methodology had to "rule out the other possible cause of Scroggin's breast cancer."   *Scroggin*, 586 F.3d at 567.   In these bellwether cases, that includes ruling out:  (1) the HER2 oncogene, (2) other growth factors and pathways, and (3) a plaintiff's own internal hormones.   Dr. Naftalis has no reliable basis to rule out any of these factors and to conclude that Prempro is the cause in fact of any bellwether plaintiff's ER+/HER2+ breast cancer.[64]

### A.   No Reliable Methodology Exists for Ruling Out the HER2 Oncogene as a Cause of Any Woman's ER+/HER2+ Breast Cancer.

#### 1.   There Is No Dispute that the HER2 Oncogene Causes Breast Cancer.

Both sides agree that breast cancer is a genetic disease caused initially by genetic mutations.[65]   Although the Opposition suggests that HER2 "has no genetic or family component and is not even a mutation of the cell," the PSC's experts have repeatedly testified that HER2 overexpression is in fact caused by a genetic mutation in the HER2 gene.[66]   Indeed, they concede that the HER2 gene is an oncogene—a type of gene which, when mutated, causes breast cancer

---

[61]   Wyeth's Br. at 11-12.
[62]   Wyeth's Br. at 20-21.
[63]   Naftalis Rep. at 29.
[64]   For similar reasons, Dr. Naftalis's specific causation methodology is equally flawed in the context of ER+/PR– breast cancer.   *See* Wyeth's Reply In Support of Motion to Exclude Any Medical Causation Opinion that Prempro Causes Estrogen-Receptor-Positive/Progesterone-Receptor-Negative (ER+/PR–) Breast Cancer.
[65]   Wyeth's Br. at 11.
[66]   Pls.' Opp. at 69; Wyeth's Br. at 11-14.

in women.[67]  While it is not known what causes the HER2 gene to mutate, there is no evidence that internal hormones (such as estrogen or progesterone) or exogenous hormones (such as Prempro) play any role in that process.[68]

It is generally accepted that the HER2 oncogene causes cancer by causing overexpression of HER2 receptors on a breast cell.  The PSC's experts admit that HER2 overexpression plays a "critical" role in malignant transformation.[69]  HER2 overexpression promotes uncontrolled growth, metastatic spread, angiogenesis (development of new blood vessels that directly supply the tumor), and inhibits cell death.[70]  Thus, the HER2 oncogene not only causes cancer to develop initially, but also serves as fuel, promoting the continued growth and spread of the cancer.  None of these facts are disputed by the PSC's experts—at least insofar as they apply to HER2+ breast cancers that do not have estrogen receptors.

> **2.      No Reliable Basis Exists to Conclude that Mutation of the HER2 Gene Is a "Late Event" in ER+/HER2+ Breast Cancers and, Thus, to Rule Out the HER2 Oncogene as a Cause of Any ER+/HER2+ Breast Cancer.**

The PSC's experts do not dispute that the HER2 oncogene is capable of both causing and promoting the growth and development of HER2+ breast cancers.  Dr. Naftalis contends, however, that this only happens when HER2+ breast cancers do not have estrogen receptors.[71] In HER2+ breast cancers that have estrogen receptors, she opines that the HER2 oncogene plays no role in the malignant transformation—it is just additional fuel that feeds the cancer once the first cancer cell is present.[72]  The theory pushes the bounds of reason:  a known cancer-causing gene plays a "critical role" in transforming a normal breast cell into a cancer cell if no estrogen

---

67  Wyeth's Br. at 12.
68  *Id.*
69  *Id.*
70  *Id.* at 15-16.
71  Pls.' Opp. at 9, 42-44.

receptors are present, but plays no role in that transformation if estrogen receptors are present.  In other words, the mere presence of estrogen receptors somehow protects breast cells against cancer-causing oncogenes such as HER2.

The alleged basis for this theory is a belief that HER2 overexpression happens early in ER–/HER2+ breast cancers, but is always a "late event" in ER+/HER2+ breast cancers, occurring only after the first cancer cell is present.[73]  It is this "late event" theory that supposedly allows Dr. Naftalis to "rule out" the HER2 oncogene as the cause of any plaintiff's ER+/HER2+ breast cancer.

***Data Relied on by PSC Counsel and Dr. Naftalis: Lopez-Garcia Article***.  The only data cited by the Opposition in support of the "late event" theory—and the only evidence Dr. Naftalis identified in her expert report on this issue—is a single diagram from a 2010 article by Lopez-Garcia.[74]  The diagram represents a theoretical, working model of how breast cancer *may* develop, many parts of which, the study authors acknowledge, are as yet unsupported by any scientific evidence.[75]  PSC expert Dr. Singh said about the model:  "This is experimental. This is not medicine. . . . You investigate more.  You have more evidence, and you change your model."[76]  Both Dr. Singh and Dr. Gadi concede that the model does not indicate that HER2 overexpression is a late stage event in the development of all ER+/HER2+ breast cancers.[77]  Even Dr. Naftalis admits that the model does not include the type of breast cancer (ER+/HER2+

---

[72]   *Id*. at 42-44.

[73]   Pls.' Opp. at 42-44.  As explained in Wyeth's opening brief, all of the PSC's experts except for Dr. Naftalis at least concede that HER2 overexpression may be an early event in some ER+/HER2+ breast cancers.  Wyeth's Br. at 16.

[74]   Lopez-Garcia et al., Histopathology 2010;57:171-192 ("Lopez-Garcia 2010") at 186, Fig. 4 ( Ex. 11 to Wyeth's Br.); Pls.' Opp. at 42-49; Naftalis Rep. at 38.

[75]   Wyeth's Br. at 45.

[76]   Singh Dep. at 234:25-235:12.

ductal cancer) diagnosed in the bellwether plaintiffs.[78]   Yet Dr. Naftalis ignores the limitations of

the Lopez-Garcia model and the testimony of Dr. Singh and Dr. Gadi, and relies *solely* on the

experimental model as the basis of her opinion that HER2 overexpression only occurs after the

first cancer cell is present.[79]   *See Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 197 n.4 (5th Cir. 1996)

(cautioning against an expert "embark[ing] upon a sea of scientific uncertainty").

The Opposition says what PSC counsel always say when their experts are quoted—that

Dr. Gadi's testimony was taken out of context—and argue that he actually did a "total review of

the literature" and concluded that more likely than not HER2 overexpression is a "late event."[80]

But if Dr. Gadi did a "total review of the literature," neither his report nor his deposition

confirms that fact.  His expert report does not contain the opinion that HER2 overexpression is a

"late event" in ER+/HER2+ breast cancers and, more importantly, does not reference a single

study demonstrating that HER2 overexpression is a "late event."[81]

***Data Dismissed by PSC Counsel and Dr. Naftalis***.   PSC counsel also selectively omit

data that do not support Dr. Naftalis's position.  Other PSC experts cited to Bombonati 2011 to

support their opinions.[82]   But after Wyeth pointed out the author's diagram showing that HER2

overexpression is *the first step* in the transition from a normal cell to an invasive HER2+ cancer

in both ER+ and ER– breast cancers, the Opposition ignored the study.

---

[77]   Gadi Dep. at 323:9-16; Singh Dep. at 258:8-13; *see also* Expert Report of Lewis A. Chodosh,
       May 27, 2011 ("Chodosh Rep.") at 12-13 ( Ex. 61 to Wyeth's Br.).
[78]   *See* Naftalis Dep. at 209:7-210:22.
[79]   Dr. Naftalis is also unqualified to assess this study because she is not qualified in cell biology
       and has admitted a lack of basic knowledge regarding HER2 breast cancer.  *See* Wyeth's Br.
       at 32-33.
[80]   Pls.' Opp. at 46-47.
[81]   *See generally* Gadi Rep.; *see generally* Gadi Dep.
[82]   Wyeth's Br. at 15 n.71.



In fact, PSC counsel and their experts systematically ignored numerous other studies where researchers found that HER2 overexpression is an early event in breast cancer development.[83] This "selective use of facts fails to satisfy the scientific method and *Daubert*." *Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001); *see also In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 425 & n.164 (S.D.N.Y. 2005) ("[C]ourts have excluded expert testimony 'where the expert selectively chose his support from the scientific landscape.'").

---

[83]   Xiao-Feng Le and Robert C. Bast, *Molecular and Cellular Alterations Produced by HER2 Overexpression and Modified by HER2 Inhibition in Cancer Cells* in ONCOGENE PROTEINS: STRUCTURE, FUNCTIONS, ANALYSES 223, 224 (2008) ("Le & Bast 2008") ("Clinical studies also indicate that *HER2* amplification and/or overexpression is a relatively early event in the clinical pathogenesis of human breast cancer based on its frequent occurrence in preinvasive DCIS.") (Ex. 21 to Wyeth's Br.); Stark, et al. J. CLIN. ONCOL. 2000;18:267-274 ("Stark 2000") at 273 ("Our findings provide additional evidence that genetic alterations, including *HER-2/neu* amplification, may occur as relatively early events in the development of breast cancer.") (Ex. 22 to Wyeth's Br.); Wilson et al., BREAST CANCER RES. 2005,7:R1058-R1079 at R1059 ("*HER-2* amplification is a relatively early event in the clinical pathogenesis of human breast cancer based on its frequent occurrence in the pre-invasive lesion, ductal carcinoma *in situ* (DCIS).") (Ex. 19 to Wyeth's Br.); Alroy & Yarden, BREAST DIS. 2000;11:31-48 ("Alroy & Yarden 2000") at 35 (Ex. 23 to Wyeth's Br.); Xu, et al., MODERN PATHOLOGY 2002;15:116-124 ("Xu 2002") at 122 (Ex. 24 to Wyeth's Br.); Coleman, *The Molecular Basis of Human Cancer* 524 (2002) (Ex. 25 to Wyeth's Br.).

Similarly, the PSC and their experts improperly dismiss the Marchio 2008 article, written by the same group of investigators as the Lopez-Garcia paper.  That article states that "HER2 gene amplification may be *the main biological driver* of HER2-positive disease, *overriding the influence of hormone receptors*, or indicate that in HER2-positive disease, acquisition or loss of ER expression may be a late event in pathogenesis."[84]   The article directly contradicts Dr. Naftalis's theory that HER2 overexpression is a "late event" and that estrogen is the primary driver in ER+/HER2+ breast cancers.  The only reason given for dismissing the study—in which the authors directly address the relative importance of HER2 overexpression vis-à-vis hormone receptors—is the fact that it was published earlier than the Lopez-Garcia paper.[85]   But the fact that a study predates another publication does not mean that its findings are no longer valid or somehow have been overridden by a subsequent paper that addresses very different issues.  The Lopez-Garcia paper proposed a hypothetical model of how breast cancers may develop generally, but did not focus specifically on ER+/HER2+ breast cancers.[86]   The Marchio article, on the other hand, specifically analyzed the genetic profile of ER+/HER2+ and ER–/HER2+ breast cancers.  On the basis of their genetic similarity (98.5% of common genes), the authors concluded that HER2 overexpression is the dominant factor in both types of breast cancer and that estrogen receptor status is not significant.[87]   The Opposition both ignores these aspects of the articles and fails to identify any language in the Lopez-Garcia study indicating that its findings contradict the earlier findings in the Marchio 2008 study.

---

[84]   Marchio et al., J. PATHOL. 2008; 216; 399-407 ("Marchio 2008") at 404 (Ex. 32 to Wyeth's Br.) (emphasis added).
[85]   Pls.' Opp. at 47-48.
[86]   Lopez-Garcia 2010 at 186; Wyeth's Br. at 45.
[87]   Marchio 2008 at 399-401, 404.

***The Opposition's Misinterpretation of the Testimony of Wyeth's Experts.***   The Opposition makes much of Dr. Chodosh's and Dr. Come's testimony that HER2 overexpression is not seen in precancerous lesions, suggesting that this means that HER2 overexpression must be a "late event."[88]   But as Dr. Singh explained, the reason we do not see HER2 overexpression in benign cells has nothing to do with the timing of HER2 overexpression during breast cancer development.[89]   Rather, HER2 overexpression has such a powerful effect on a breast cell that, once it occurs, the breast cell ceases to be normal and becomes a cancer cell.[90]

In summary, none of the PSC's experts identify a single study in which the authors conclude that HER2 overexpression is a "late event" in ER+/HER2+ breast cancers.  Indeed, the authors of the Lopez-Garcia paper—the only article cited by PSC counsel and Dr. Naftalis— never say or present data showing that HER2 overexpression is a "late event" in the type of ER+/HER2+ breast cancers at issue here.[91]   Consequently, Dr. Naftalis has no reliable basis to conclude that HER2 overexpression is a "late event" in all ER+/HER2+ breast cancers, and thus, no reliable methodology to rule out the HER2 oncogene in these cases.  *See Daubert*, 509 U.S. at 592-93; *McClain*, 401 F.3d at 1251.

> **B.**    **No Reliable Methodology Exists to Rule Out Other Growth Factors and Pathways as a Cause of Any Woman's ER+/HER2+ Breast Cancer.**

Dr. Naftalis also has no methodology for ruling out growth factors and pathways other than HER2.  The PSC's experts concede that, in addition to estrogen and HER2, there are numerous growth factors and pathways that can play a role in breast cancer development.  These include insulin-like growth factor, human growth hormone, prolactin, androgens, and many

---

[88]   Pls.' Opp. at 43.
[89]   Singh Dep. at 106:19-107:12, 109:19-24.
[90]   *Id.*
[91]   *See generally* Lopez-Garcia 2010.

others that are as yet unknown.[92]   Indeed, the PSC's ER+/PR– Opposition now suggests that the androgen pathway plays a significant role in the growth and development of ER+ breast cancers.[93]   Dr. Gadi testified that breast cancer is "like al-Qaeda" in the sense that "just because you take out one leader doesn't mean other people won't step up to the plate and try to complete their mission . . . these cancers behave the same way."[94]

These alternative growth factors and pathways become particularly important in the context of Dr. Naftalis's admission that, after the first cancer cell is present, ER+/HER2+ breast cancers can grow and spread through a number of different pathways that do not involve estrogen or progesterone.[95]   Thus, unlike in *Scroggin*, where the Eighth Circuit said it was undisputed that "hormone-receptor-positive tumors are dependent upon hormones for their growth," here it is undisputed that ER+/HER2+ breast cancers are *not* dependent on hormones for growth.   *See Scroggin*, 586 F.3d at 566.   In sum, Dr. Naftalis presents no reliable methodology to rule out any of these other growth factors and pathways.   Without a validated methodology to do that, Dr. Naftalis cannot reliably conclude that Prempro caused any bellwether plaintiff's ER+/HER2+ breast cancer.   *See Daubert*, 509 U.S. at 592-93.

---

[92]   Colditz Dep. 12/18/2006 at 145:20-147:20; Gadi Dep. 209:18-22; Deposition of James Foster Beck, M.D., *Wilson v. Wyeth*, Sept. 16 & 21, 2010, at 137:1-20, 138:24-139:16, 173:1-24 ("Beck Dep.") (testifying that there are many other pathways for a breast cancer to grow, independent of estrogen and progesterone) (additional excerpts attached as Ex. 108).

[93]   Pls.' PR– Opp. at 6-8.

[94]   Gadi Dep. at 318:6-14.

[95]   Naftalis *Spinelli* Dep. at 95:20-96:4 (admitting that once a cell is cancerous, many different hormones and growth factors in the human body can influence the growth of that breast cancer, even if it has estrogen receptors on it.)

### C.     No Reliable Methodology Exists to Rule Out Internal Estrogen as a Cause of Any Woman's ER+/HER2+ Breast Cancer.

The Opposition mistakenly claims that Dr. Naftalis's menopausal symptom methodology has "nothing to do with Her2Neu amplification."[96]   But this assertion ignores that the PSC submitted her expert report in the *Scharff* case for purposes of this proceeding—a report which, like earlier reports, set forth her usual menopausal symptoms methodology.[97]   During her deposition for this proceeding, she confirmed that she uses the same methodology in an ER+/HER2+ case.[98]   Because that methodology is the basis of her causation opinion, it has everything to do with Wyeth's *Daubert* challenge.

Recently, this Court expressed doubts regarding Dr. Naftalis's testimony, noting that "Defendants expose many questionable issues with Dr. Naftalis and her report."[99]   Just this past September, this Court stated that it is "dubious of Dr. Naftalis's methodology."[100]   That was in the context of a breast cancer that tested negative for the HER2 oncogene and without the benefit of the current scientific record and expert testimony.   Based on the specific facts of this case and the current scientific record, the Court has reason to be even more dubious.

### 1.     The Presence of Menopausal Symptoms Is Not a Reliable Method to Rule Out Internal Estrogen as the Cause of a Woman's Breast Cancer.

Dr. Naftalis repeatedly has relied on data from the MORE clinical trial, reported by Cummings et al., as the basis of her opinion that women who experience menopausal symptoms, such as hot flashes or vaginal atrophy, lack sufficient internal estrogen to grow an ER+/PR+

---

[96]   Pls.' Opp. at 64.
[97]   *See generally*, Naftalis Rep. at 9-12, 30-31, 40.
[98]   Naftalis Dep. at 229:13-230:6.
[99]   Order, *LaFerrara v. Wyeth*, Docket No: 4:04-cv-02271-WRW (June 30, 2010) (Doc. No. 114) ("*LaFerrara* Order") at 8 (attached as Ex. 109).
[100]   *Wilson* Order at 2-3.

breast cancer.[101]   But, when Dr. Naftalis was questioned in detail about this study,[102] she admitted that:

- The only women who are "hormone deficient" are those women with no detectable levels of estrogen in their blood.[103]

- Women with any level of estrogen above zero are "hormone sufficient," i.e., have *sufficient* internal estrogen to get ER+/PR+ breast cancer.[104]

- The only women in whom it is possible to rule out internal estrogen as a cause of an ER+/PR+ breast cancer are women who have no detectable estrogen in the blood.[105]

These concessions regarding the very data on which she relies mean that a reliable methodology must include a step for determining whether a woman's estrogen level at menopause was zero or something higher.  Absent a determination of that critical fact, Dr. Naftalis cannot rule out internal estrogen as a cause.

The Opposition's only response (predictably) is that Wyeth took Dr. Naftalis's testimony out of context.[106]  The Opposition does not explain how her testimony was taken out of context or what other evidence there is to support a different conclusion.[107]  We have submitted the testimony and invite the Court to read it in context.   While PSC counsel try to distance themselves from the Cummings study and argue "[t]here is no requirement that plaintiff's experts establish exactly how much natural hormones were present or prove that plaintiff had no natural hormones,"[108] Dr. Naftalis's own testimony and supporting evidence makes it clear that

---

[101]   Wyeth's Br. at 62-64.
[102]   *See generally*, Naftalis *Spinelli* Dep.
[103]   Wyeth's Br. at 63.
[104]   *Id*. at 64.
[105]   *Id*. at 65.
[106]   Pls.' Opp. at 66-67
[107]   *Id*.
[108]   *Id*. at 67.

she relies heavily on that study for her symptoms methodology.[109]  It is also clear that the women

who meet Dr. Naftalis's definition of "hormone deficient," and therefore lack sufficient internal

estrogen to grow an ER+/PR+ breast cancer, are those women who had no detectable internal

estrogen in their blood.[110]

But both Dr. Naftalis and other PSC experts confirm that menopausal symptoms do not

reliably predict whether a woman has no detectable internal estrogen in her blood.[111]  Indeed,

studies that measured estrogen levels in women with menopausal symptoms clearly show that

estrogen levels vary dramatically among symptomatic women.   Very few, if any, of those

women have no detectable estrogen in the blood[112]—a fact that even Dr. Naftalis concedes.[113]

In its *LaFerrara* ruling, this Court questioned the reliability of hot flashes as an indicator

of a woman's internal estrogen level, but allowed Dr. Naftalis to testify based on her unrebutted

opinion "that vaginal atrophy in a menopausal woman is attributed solely to the absence of

estrogen, and that this particular Plaintiff suffered from vaginal atrophy."[114]   But the Repše-

Fokter study, proves that the presence of vaginal atrophy does not reliably predict an individual

---

[109]  Naftalis *Spinelli* Dep. at 31:14-35:6; Naftalis Rep. at 20;

[110]  Naftalis *Spinelli* Dep. at 51:13-18; *see also* Naftalis Rep. at 20 ("There are menopausal women who never take E+P, but they still get breast cancer.  Hormone-sufficient women are at a substantially higher risk of breast cancer, especially as they get older.").

[111]  *See* Wyeth's Br. at 65-66; Beck Dep. at 288:17-289:1 (PSC's expert oncologist testifying that when a woman has menopause her estrogen levels fluctuate); *id.* at 98:14-99:20 (PSC's expert oncologist testifying that he has never heard anyone concludes that if a woman has vaginal atrophy, it is very unlikely that she will get estrogen-receptor positive breast cancer); *id.* at 293:6-295:21 (testifying that he could not tell which women had sufficient estrogen to feed a breast cancer tumor based on the presence of vaginal atrophy) (additional excerpts attached as Ex. 108).

[112]  Wyeth's Br. at 67-69.

[113]  *See* Naftalis *Spinelli* Dep. at 92:5-14, Naftalis *Finn* Dep. at 130:16-131:3.

[114]  *LaFerrara* Order at 6.

woman's estrogen status.[115]   As the graphic from the study indicates, there was tremendous variability in blood estradiol levels among the 51 women with vaginal atrophy and 90% of those women (47 out of 51) had detectable estrogen in their blood.[116]



The Repše-Fokter study indicates that the majority of women with vaginal atrophy have detectable estrogen in the blood and are "hormone sufficient," by Dr. Naftalis's definition.[117] Accordingly, vaginal atrophy is not a reliable indicator of an individual woman's estrogen status.

Absent a reliable methodology for identifying which of the women with vaginal atrophy (or hot flashes) have no detectable estrogen, Dr. Naftalis has no basis to conclude that menopausal symptoms reliably predict whether a woman had insufficient internal estrogen to get breast cancer.   Neither PSC counsel nor Dr. Naftalis offer such a methodology.   *See Daubert*, 509 U.S. at 592-93.

---

[115]  Wyeth's Br. at 68-69; s*ee also* Beck Dep. at 98:14-99:20 (PSC's expert oncologist testifying that he has never heard anyone conclude that if a woman has vaginal atrophy, it is very unlikely that she will get estrogen-receptor positive breast cancer); *id.* at 293:6-295:21 (testifying that he could not tell which women had sufficient estrogen to feed a breast cancer tumor based on the presence of vaginal atrophy); Supplemental Deposition of Dr. Paul Michaels, *Torkie-Tork v. Wyeth*, Sept. 25, 2010 at 67:12-19 (denying that women with menopausal symptoms have insufficient internal hormones to get breast cancer) (Ex. 12 to Wyeth's Br.).

[116]  Wyeth's Br. at 68-69.

2. **Studies Reporting a Lower Risk of Breast Cancer in Women with Menopausal Symptoms Do Not Provide a Reliable Basis to Conclude that Any Individual Plaintiff Who Had Menopausal Symptoms Lacked Sufficient Internal Estrogen.**

Rather than present a reliable methodology for identifying women who are truly "hormone deficient," the Opposition simply argues that women with menopausal symptoms are *on average* at lower risk of breast cancer.[118] But the studies cited for this lower risk, such as the Huang study, show that many women with menopausal symptoms do develop ER+/PR+ breast cancers. In that study, 148 out of 307 women with lobular cancers, which "are more frequently hormone receptor positive," had symptoms of vaginal atrophy.[119] As this example illustrates, studies that show a lower breast cancer risk in a population of women with menopausal symptoms do not provide a reliable basis to rule out internal estrogen as a sufficient growth source.

In sum, the PSC's experts have not produced any evidence showing that the presence of menopausal symptoms—whether hot flashes or vaginal atrophy—provides a reliable basis to rule out internal estrogen as sufficient to fuel the growth of any bellwether Plaintiff's breast cancer. In contrast, the current scientific record clearly establishes that the vast majority of women with menopausal symptoms have detectable levels of estrogen in the blood, which Dr. Naftalis considers "sufficient" to promote breast cancer.[120] Accordingly, Dr. Naftalis cannot validly rely on menopausal symptoms as the basis to rule out internal estrogen as the cause of any bellwether plaintiff's breast cancer.

---

[117] *Id.*
[118] Pls.' Opp. at 65-66.
[119] *See* Huang et al., CANCER EPIDEMIOL. BIOMARKERS PREV. 2011;20:379–88 at 380, 385, Tbl. 3 (attached as Ex. 110).
[120] Wyeth's Br. at 62-69.

## CONCLUSION

For the foregoing reasons the Court should grant Wyeth's motion to exclude any expert testimony that Prempro causes ER+/HER2+ breast cancer, and that Prempro is the cause in fact of any plaintiff's ER+/HER2+ breast cancer.

Respectfully submitted,

/s/ F. Lane Heard III

F. Lane Heard III (D.C. Bar #291724)

WILLIAMS & CONNOLLY LLP
725 12th Street, NW
Washington, DC 20005-5901
(202) 434-5000

Lyn P. Pruitt (Ark. Bar No. 84121)

MITCHELL, WILLIAMS, SELIG, GATES & WOODYARD, PLLC
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201-3525
(501) 688-8800
*lpruitt@mwsgw.com*

Loren H. Brown (N.Y. Bar No. 2533529)

DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY  10020-1104
(212) 335-4846 (T)
(212) 335-4501 (F)
E-mail: loren.brown@dlapiper.com
*Attorneys for Wyeth*

DATED: July 15, 2011