**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | **MDL Docket No. 4:03-cv-01507 BRW** |
| | : | |
| **PREMPRO PRODUCTS LIABILITY** | : | **ALL CASES** |
| **LITIGATION** | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF
MOTION FOR RECONSIDERATION OF
<u>MOTION TO BAR ALL TESTIMONY OF DR. BRUCE PATSNER</u>**

We respectfully ask the Court to reconsider its decision that Wyeth's motion is premature. We believe that the Court can best serve the purposes of multidistrict coordination by considering the motion, and we believe that we have acted in accordance with past practice by presenting this *Daubert* challenge to the Court.

1.      Plaintiffs have designated Dr. Patsner in 37 remanded cases. Those 37 cases are pending before approximately 30 judges. The alternative to this Court's consideration of the *Daubert* challenge is for those 30 judges to do so independently. If this Court hears the motion, it will do so with the benefit of nine years' experience in the litigation and a thorough familiarity with the legal and scientific issues, the factual background, and how the proposed testimony "fits" into the trial of the cases. Let's be honest: lacking that deep experience—lacking even the familiarity with the case that comes with overseeing discovery—and typically faced with thirty or more pretrial motions, the remand courts cannot give the motions the thorough and understanding consideration this Court is capable of.

The Manual for Complex Litigation recommends that MDL courts conduct a *Daubert* hearing on generic issues (it mentions general causation issues), leaving case-specific issues to the transferor courts on remand. *See* Manual § 22.87 at 441-42. The same rationale applies to generic liability issues and experts. Other MDL courts have ruled on *Daubert* motions addressed

to "generic expert witnesses," apart from any particular trial.  *In re Avandia Marketing, Sales Practices and Prod. Liab. Litig.*, 2011 WL 13576 at *1 (E.D. Pa.); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 1998 WL 118060 at *7-9 (E.D. Pa.) (final pretrial order summarizing expert witness rulings as to generic experts).  And remand courts have deferred to MDL *Daubert* rulings in this and other litigation.  *See Burton v. Wyeth-Ayerst Lab. Division of American Home Products Corp.*, 513 F. Supp.2d 708, 711 (N.D. Tex. 2007) ("The transferee court found Avorn's testimony regarding Wyeth's corporate intent to be inadmissible. . . .  This court will not displace the ruling of the transferee court."); *Skibniewski v. American Home Products Corp.*, 2004 WL 5628157 at * 7 (W.D. Mo.) (granting motion to exclude testimony of several plaintiffs' experts on the ground that "the MDL court excluded certain testimony of these generic experts in its *Daubert* rulings").

It might be argued that, when the MDL court denies a *Daubert* challenge, the movant will urge the motion again in the remand courts.  Certainly Wyeth will do so, because it must to preserve the issue for appeal.  But our experience is that the remand courts expect this Court to have addressed the generic issues and lean on this Court's rulings even when they express a need to give the issues independent consideration.

That we say this in connection with a *Daubert* motion concerning Dr. Patsner should speak to our good faith.  We submit that the admissibility of Dr. Patsner's opinions should be determined by the reliability of ***his*** analysis and that the Court's rulings as to Drs. Parisian and Blume do not dictate what the ruling should be as to Dr. Patsner.  But we understood both that plaintiffs would argue that the ruling should be the same (as they do not feel constrained by the current ruling) and that the Court might well agree.  Forum shopping in the remand courts might

well have been to Wyeth's advantage, but we thought past practice—and better practice—instructed us to begin by filing the *Daubert* motion here.

2.      Past practice has been that, when the Plaintiffs' Steering Committee identifies new generic experts, Wyeth deposes them in the MDL proceeding and presents any *Daubert* challenge to this Court.  That has been true for all the experts who are plaintiffs' "regulars"—Drs. Colditz, Austin, Naftalis, Blume and Parisian—for experts who retired—Drs. Klimberg, Guerguian and Sackett—and for experts who never testified—Drs. Beck, Waldron (as to his causation opinions), Hollon, Fugh-Berman, Bundred and Maloney.  Here, the process began with an email from the Steering Committee that attached an expert report for Dr. Patsner and advised us to "consider this service in all MDL cases."  Wyeth then deposed Dr. Patsner, and the deposition transcript bears the MDL caption alone.

The Court may recall that before Wyeth deposed Dr. Patsner, it moved to strike him on the ground that the time had passed for naming new generic experts.  Plaintiffs' response to that motion is significant, for it shows that when Wyeth proceeded to depose Dr. Patsner and to file a *Daubert* challenge, we were doing precisely what plaintiffs expected us to do—and, indeed, what they invited us to do.  The final three sentences of plaintiffs' opposition to the motion to strike say:

> It is impossible to reconcile that admission with defendants' claim that plaintiffs' designation has somehow increased defendants' work requirements.  Defendants merely need to depose Dr. Patsner, just as they deposed Drs. Blume and Parisian.  ***If Dr. Patsner testifies in some manner that gives them pause, defendants will undoubtedly file a motion regarding their concern before the Curtis trial***.[1]

---

[1]    Plaintiffs' Opposition to Motion to Strike Expert Report of Bruce Patsner, M.D., J.D. [Doc. No. 2636] at 8 (emphasis added).

Plaintiffs were not saying that Wyeth would move to bar Dr. Patsner from testifying *in*

the *Curtis* trial, for Ms. Curtis did not name him as an expert for that trial; plaintiffs were simply

predicting that the *Daubert* motion would come soon enough and in due course.  Now that

Wyeth has filed the expected motion, plaintiffs claim that the Court "has never entertained

random *Daubert* motions that were tied to neither a case nor a specific scientific issue."[2]

This characterization of how the Court has proceeded, we think, is both *post hoc* and not

particularly helpful in determining what *Daubert* motions the Court **should** hear.  The Court first

heard *Daubert* motions in *Reeves* and *Rush*—specific cases, to be sure—but bellwether cases.

The fact that they were bellwether cases meant that the *Daubert* challenges concerned experts

that defendants could expect to confront, not just in those two cases, but over and over.  And that

has been the case.  It was the expectation that plaintiffs would rely repeatedly on those experts—

and, in addition, that those experts addressed generic subjects or employed generic

methodologies—that warranted consideration by this Court.  The same rationale applies to Dr.

Patsner:  plaintiffs intend to use him in trial after trial, as demonstrated by the fact that almost 40

plaintiffs have already designated him as a trial expert.

3.      Plaintiffs argue that Wyeth's *Daubert* motion should be considered premature

because Wyeth argued that plaintiff's motion *in limine* concerning Dr. Patsner's personnel file

was premature.  But that argument overlooks an important point and misses an important

distinction.  First, Wyeth argued that the motion *in limine* was premature in part because, **if the**

**Court granted Wyeth's Daubert motion**, the motion *in limine* would be moot.  Second, when an

MDL court is considering what matters it should decide, there is a difference between *Daubert*

---

[2]     Plaintiffs' Response in Opposition to Motion to Bar All Testimony of Dr. Bruce Patsner
[Doc. No. 2863] at 1.

motions, which have a broad impact across cases, and *in limine* motions, which are presumptively the business of the trial court.

4.      As for plaintiffs' assertion that the challenge to Dr. Patsner is no different from the challenge to Drs. Parisian and Blume, it is incorrect.  Dr. Patsner gives his own reasons for opining that Wyeth should have conducted more or better tests, and the admissibility of his opinions must stand or fall based on the reliability of ***his*** analysis.  Moreover, Dr. Patsner also gave his own reasons for claiming that Wyeth could have done certain studies and that Wyeth failed to provide an accurate warning based on the existing science.  Given his admissions on those subjects in his deposition, he cannot use the tickets issued to Drs. Parisian and Blume in order to take a seat at trial.

These comments go to the merits of the *Daubert* motion, however.  The issue at hand is whether the Court should hear the motion now.  It should, because doing so serves the larger interests of the litigation.  Nothing good comes of leaving the issue to 30 different judges, for each of whom it is a question of first impression.

Respectfully submitted,

/s/   *F. Lane Heard III*
John W. Vardaman, Jr. (D.C. Bar #13391)
F. Lane Heard III (D.C. Bar #291724)

WILLIAMS & CONNOLLY LLP
725 12th Street, NW
Washington, DC 20005-5901
(202) 434-5000

Lyn P. Pruitt (Bar No. 84121)

MITCHELL, WILLIAMS, SELIG, GATES &
WOODYARD, PLLC
425 West Capitol Avenue, Suite 1800
Little Rock, AR 72201-3525
(501) 688-8800
*lpruitt@mwsgw.com*

DATED:  December 19, 2011          *Attorneys for Wyeth*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of December 2011 a true and correct copy of the foregoing Memorandum in Support of Motion for Reconsideration of Motion to Bar All Testimony of Dr. Bruce Patsner was filed with the Clerk of Court using the CM/ECF system.  I certify that service will be accomplished by the CM/ECF system on all participants that are registered CM/ECF users in this case and electronically mailed to the parties listed below.

Mr. Richard Lewis
HAUSFELD LLP
rlewis@hausfeldllp.com

Mr. Shawn Khorrami
KHORRAMI POLLARD & ABIR, LLP
skhorrami@kpalawyers.com

Christopher T. Kirchmer
PROVOST UMPHREY
ckirchmer@provostumphrey.com

Mr. Ted Meadows
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
ted.meadows@beasleyallen.com

Ms. Ellen Presby
MILLER WEISBROD
epresby@millerweisbrod.com

Mr. Gary Holt
GARY EUBANKS & ASSOCIATES, LTD
holtg@garyholtlaw.com

Mr. Tobias L. Millrood
POGUST BRASLOW MILLROOD
tmillrood@pbmattorneys.com

Mr. Erik B. Walker
HISSEY, KIENTZ & HERRON, P.L.L.C.
erik@hkhlaw.com

Mr. Mike Williams
WILLIAMS DAILEY O'LEARY CRAINE
AND LOVE, P.C.
mwilliams@wdolaw.com

Mr. Ralph M. Cloar Jr.
ralph.cloar@cloarlawfirm.com

Mr. Irwin B. Levin
COHEN & MALAD, LLP
ilevin@cohenandmalad.com

Ms. Zoe Littlepage
LITTLEPAGE BOOTH
zoe@littlepagebooth.com

/s/     F. Lane Heard III
F. Lane Heard III

WILLIAMS & CONNOLLY LLP
725 12th Street, NW
Washington, DC 20005-5901
(202) 434-5000
*lheard@wc.com*